**GEORGE K. CHEBAT (034232)**
George@EnaraLaw.com
**JOSEPH J. TOBONI (031385)**
Joseph@EnaraLaw.com
**Enara Law PLLC**
7631 East Greenway Road, Suite B-2
Scottsdale, Arizona 85260
Telephone: (602) 687-2010
*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Valentino Dimitrov, individually, and on behalf of all others similarly situated;<br><br>               Plaintiffs,<br><br>vs.<br><br>Stavatti Aerospace, Ltd, a Minnesota corporation; Stavatti Aerospace, Ltd, a Wyoming corporation; Stavatti Corporation, a Minnesota corporation; Stavatti Immobiliare, Ltd, a Wyoming corporation; Stavatti Industries, Ltd, a Wyoming corporation; Stavatti Niagara, Ltd, a New York corporation; Stavatti Super Fulcrum, Ltd, a Wyoming corporation; Stavatti Ukraine, a Ukrainian business entity; Stavatti Heavy Industries Ltd, a Hawaii corporation; Christopher Beskar and Maja Beskar, husband and wife; Brian Colvin and Corrina Colvin, husband and wife; John Simon and Jean Simon, husband and wife; William Mcewen and Patricia Mcewen, husband and wife; Rudy Chacon and Jane Doe Chacon, husband and wife; and DOES 1 through 10, inclusive,<br><br>               Defendants. | Case No.:<br><br>**COMPLAINT FOR RICO VIOLATION OF 18 U.S.C. §§ 1961-1976; BREACH OF CONTRACT; FRAUD; FRAUD IN THE INDUCEMENT; CONVERSION; BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; BREACH OF FIDUCIARY DUTY; NEGLIGENCE; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION; UNJUST ENRICHMENT; TORTIOUS INTERFERENCE WITH CONTRACT; AND CIVIL CONSPIRACY.**<br><br>**JURY TRIAL IS DEMANDED** |

/ / /

**INTRODUCTION**

1.      Valentino Dimitrov ("Plaintiff") brings this Complaint individually, and on behalf of all others similarly situated, for RICO Violation of 18 U.S.C. §§ 1961-1976; Breach of Contract; Fraud; Fraud in the Inducement; Conversion; Breach of Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Negligence; Intentional Misrepresentation; Negligent Misrepresentation; Unjust Enrichment; and Tortious Interference with Contract; and any other available legal or equitable remedies, resulting from the illegal actions of Stavatti Aerospace, Ltd, a Minnesota corporation ; Stavatti Aerospace, Ltd, a Wyoming corporation ; Stavatti Corporation, a Minnesota corporation; Stavatti Immobiliare, Ltd, a Wyoming corporation ; Stavatti Industries, Ltd, a Wyoming corporation ; Stavatti Niagara, Ltd, a New York corporation ; Stavatti Super Fulcrum, Ltd, a Wyoming corporation ; Stavatti Ukraine, a Ukrainian business entity; Stavatti Heavy Industries Ltd, a Hawaii corporation; Christopher Beskar and Maja Beskar, husband and wife; Brian Colvin and Corrina Colvin, husband and wife; John Simon and Jean Simon, husband and wife; William Mcewen and Patricia Mcewen, husband and wife; Rudy Chacon and Jane Doe Chacon, husband and wife; and DOES 1 through 10, inclusive, ("Defendants"), in negligently and fraudulently inducing Plaintiff into an investment venture agreement with Defendants for which Defendants never provided their agreed-upon adequate assurances to their liquidity, and never intended to repay Plaintiff his $1,000,000 investment nor the five times return on investment, as per the terms under the Agreement.

2.      Stavatti Aerospace, LTD, and all other Stavatti entities ("Stavatti"), regularly outwardly seek investors under the guise of funding their multiple perceived business ventures within the aerospace industry.  Likewise, Plaintiff invested $1,000,000 cash with Stavatti Aerospace, LTD as an angel investor and entered into a Promissory

Note ("Contract") with Stavatti for repayment of that investment on or before May 1, 2022, however Stavatti have failed to perform under the terms of the Agreement by failing to repay Plaintiff's investment as agreed.

## JURISDICTION AND VENUE

3.    Jurisdiction is proper under *28 U.S.C. § 1331* as Plaintiff's claims arise under the law of the United States of America.

4.    Jurisdiction is proper under *18 U.S.C. 1965(b)* as Defendants transact their affairs within this judicial district as the Defendants targeted the District of Arizona when soliciting funds from the Plaintiff, an Arizona citizen, and the underlying investment Contract was executed and performed by Plaintiff within this District.

5.    Without limiting the generality of the foregoing, each Defendant (directly or through agents who were at the time acting with actual or apparent authority and within the scope of such authority has:

  a.  Transacted business in Arizona;

  b.  Availed themselves intentionally of the benefits of doing business in Arizona;

  c.  Caused tortious damage by act or omission in Arizona;

  d.  Caused tortious damage in Arizona by acts or omissions committed outside such jurisdiction while (i) regularly doing business or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction;

  e.  Committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did cause damage) in Arizona to Plaintiffs and members of the Class while (i) regularly doing or

soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction;

f. Engaged in a conspiracy with others that caused tortious damage in Arizona; and

g. Otherwise had the requisite minimum contacts with the state of Arizona such that it is fair and reasonable to require Defendants to come to Court to defend this action.

6. Venue is proper in the United States District Court for the District of Arizona pursuant to *28 U.S.C. § 1391(b)(2)* because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff is, and at all times mentioned herein was, a natural person and citizen and resident of the State of Arizona. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8. At all relevant times, Defendant Stavatti Aerospace, Ltd, is a Minnesota corporation, with its principal place of business located in Ramsey County, Minnesota.

9. At all relevant times, Defendant Stavatti Aerospace, Ltd, is a Wyoming corporation, with its principal place of business located in San Bernardino County, California.

10. At all relevant times, Defendant Stavatti Corporation, is a Minnesota Corporation, with its principal place of business located in Ramsey County, Minnesota.

11. At all relevant times, Defendant Stavatti Immobiliare, Ltd, is a Wyoming corporation, with its principal place of business located in Niagara County, New York.

12. At all relevant times, Defendant Stavatti Industries, Ltd, is a Wyoming corporation, with its principal place of business located in Niagara County, New York..

13.     At all relevant times, Defendant Stavatti Niagara, Ltd, is a New York corporation, with its principal place of business located in Niagara County, New York.

14.     At all relevant times, Defendant Stavatti Super Fulcrum, Ltd, is a Wyoming corporation, with its principal place of business located in Niagara County, New York.

15.     At all relevant times, Defendant Stavatti Ukraine, is a Ukrainian business entity, with its principal place of business located in Vinnytsia, Ukraine.

16.     At all relevant times, Defendant Stavatti Heavy Industries Ltd, a Hawaii corporation, with its principal place of business located in San Bernardino County, California.

17.     The aforementioned Defendants, and their subsidiaries and agents, are collectively referred to as "Stavatti." The true names and capacities of the Stavatti sued herein as Doe Stavatti 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Stavatti by fictitious names. Each of the Stavatti designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Stavatti when such identities become known.

18.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Stavatti and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Stavatti. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Stavatti.

19.     Upon Information and Belief, Defendants Christopher Beskar and Maja Beskar, husband and wife, ("Beskar") at all times relevant hereto, are residents of San

Bernardino, California and any actions described herein were taken on behalf of the marital community.

20.   At all relevant times, Christopher Beskar was the Chairman and CEO of Stavatti and CEO of Stavatti Aerospace Ltd.

21.   Upon information and belief, Defendants Brian Colvin and Corrina Colvin, husband and wife, ("Colvin") at all times relevant hereto, are residents of Riverside, California and any actions described herein were taken on behalf of the marital community.

22.   At all relevant times, Brian Colvin was the President of Stavatti Aerospace Ltd.

23.   Upon information and belief, Defendants John Simon and Jean Simon, husband and wife, ("Simon") at all times relevant hereto, are residents of East Amherst, New York and any actions described herein were taken on behalf of the marital community.

24.   At all relevant times, John Simon was the President and CEO of Stavatti Niagara Ltd, as well as the Chief Strategic Development and Asset Officer of Stavatti.

25.   Upon information and belief, Defendants William ("Bill") Mcewen and Patricia Mcewen, husband and wife, ("Mcewen") at all times relevant hereto, are residents of Ravensdale, Washington and any actions described herein were taken on behalf of the marital community.

26.    At all relevant times, William Mcewen was the Chief Operating Officer of Stavatti.

27.   Upon information and belief, Defendant Rudy Chacon and Jane Doe Chacon, husband and wife, ("Chacon") at all times relevant hereto, are residents of San

Pedro, California and any actions described herein were taken on behalf of the marital community.

28.     The aforementioned Beskar, Colvin, Simon, Mcewen, and Chacon Defendants, and their subsidiaries and agents, are collectively referred to as "Individuals." The true names and capacities of the Individuals sued herein as Doe Defendants 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Individual by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

29.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Stavatti and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Individuals. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Individuals.

## **FACTUAL ALLEGATIONS**

30.     Stavatti Aerospace, LTD, and all other Stavatti entities (collectively "Stavatti"), regularly outwardly seek investors under the guise of funding their multiple perceived business ventures within the aerospace *industry*. Likewise, Valentino Dimitrov invested $1,000,000 cash with Stavatti Aerospace, LTD as an angel investor and entered into a Promissory Note ("Contract") with Stavatti for repayment of that investment on or before May 1, 2022. *See* Stavatti Promissory Note attached hereto as **Exhibit A**.

31.     According to the Stavatti website, "Stavatti generates revenues and net shareholder earnings through the design and production of major fixed wing aircraft and

aerospace vehicles, like Lockheed Martin and Boeing." *See* Stavatti Approach website page attached hereto as **Exhibit B**.

32.     As an angel investor, Dimitrov was presented with a Business Capitalization Structure with Stavatti Super Fulcrum outlining five times the return on investment on a quarterly basis, however this promised return on investment, or "ROI", was never realized.

33.     Stavatti have never returned any of the capital investment by Plaintiff and are currently in breach of the terms pursuant to the Agreement and have never provided Plaintiff adequate assurances as to Stavatti's liquidity or intent to repay Plaintiff under the terms of the Agreement. *See* Stavatti SM-29E Super Fulcrum Confidential Private Placement Memorandum attached hereto as **Exhibit C**.

34.     As a result, on numerous occasions Plaintiff has requested an immediate return of his investment totaling approximately $1,000,000 from Stavatti to be repaid.

35.     On June 4, 2022, Plaintiff received email correspondence from Brian D. Colvin ("Colvin"), President, Chairman, and CEO of Stavatti, affirming his understanding of Stavatti' delinquency in repaying Plaintiff's owed funds and attaching a status report outlining additional investment opportunities they were waiting to receive a return on in order to repay Plaintiff's owed funds. This outline provided a timeline for repayment to Plaintiff.  *See* email correspondence dated June 4, 2022, from Brian D. Colvin attached hereto as **Exhibit D**.

36.     On June 30, 2022, Plaintiff received additional email correspondence from Brian D. Colvin stating his understanding of being "one day away" from their agreed-upon deadline for returning Plaintiff's funds, however instead notified Plaintiff they would not be able to meet said deadline.

37.     Colvin again listed a series of investment opportunities he assured Plaintiff would "come in" and produce the capital that would allow him to repay Plaintiff his

principal payment of $1,000,000. Colvin provided Plaintiff a one page "Teezer" [sic] that he advised "went out to market" he was confident would soon produce the needed capital. *See* Stavatti's Teaser dated June 2022 attached hereto as **Exhibit E.**

38.     Colvin not only assured Plaintiff that upon receipt of this supposed capital from the listed additional investment opportunities that he would be repaying Plaintiff's principal payment of $1,000,000, but also assured Plaintiff he would receive payment on Plaintiff's profit participation once they were able to start their project.  *See* email correspondence dated June 30, 2022, from Brian D. Colvin attached hereto as **Exhibit F.**

39.     On June 30, 2022, Plaintiff received an additional email correspondence from Chacon, stating he had spoken with Colvin regarding the status of the impending financing to Stavatti and "advising one of Stavatti' investment opportunities received "two brokerage firm response 17 million each" [sic] and believed the funding would occur within the next week, however stated the investor would not provide a firm date. *See* email correspondence dated June 30, 2022, from Rudy Chacon attached hereto as **Exhibit G**.

40.     Despite this assurance from Chacon of Stavatti' supposed windfall, Plaintiff did not receive repayment on his $1,000,000 investment.

41.     On July 1, 2022, Plaintiff received another email correspondence from Colvin stating his understanding of Plaintiff's request to see the deposit of the capital he invested with Stavatti.  Colvin attached two ledger excerpts from Stavatti' Bank of America checking account statement; the first showing a "Counter Credit" of $912,500.00 made on March 1, 2022, and a second "Counter Credit" in the amount of $100,000.00 made on April 20, 2022. *See* email correspondence dated July 1, 2022, from Brian D. Colvin attached hereto as **Exhibit H**, and *see* Bank of America Checking Account statements showing "Counter Credit" deposits from March 1, 2022, and April 20, 2022, attached hereto as **Exhibits I and J**.

42.     Additionally, over the course of the months of delinquency by Stavatti, Colvin sent numerous text messages to Plaintiff providing misleading or unsubstantiated claims of upcoming funds expected to be received by Stavatti as a result of other Stavatti investors or business dealings, all of which have never come to fruition and were mere statements intended to continue to mislead Plaintiff.

43.     Stavatti has provided an extended trail of written correspondences to Plaintiff, furthering their deceptive practices, making representations that among other matters, that Stavatti was in receipt of impending funding and an ability and willingness to repay the Plaintiff.

44.     When Plaintiff's counsel sought documentary evidence to substantiate the claims of impending liquidity from Defendants, Stavatti continued to provide deceptive reasons such as "confidentiality" in an effort to continue to mislead the Plaintiff.

45.     Upon information and belief, none of the Defendants hold an active security clearance which would validate the pretense of inability to produce information based on "confidentiality."

46.     Furthermore, Stavatti deceptively represents to the public that it engages in the business of aircraft and aerospace production despite never producing any aircraft.

47.     It seems a common business practice of Stavatti and all Defendants to seek investor funds in order to continue their deceptive business practices.

48.     Stavatti intends for such business practices to appear to be legitimate to the public and third-party investors, yet upon information and belief, are nothing more than a mechanism for the Stavatti founders and corporate executives to operate an entity for their personal benefit.

49.     Despite producing a voluminous amount of "information" sheets, designs, agreements, and other forms of literature, in an attempt to continue to mislead the public

as to the legitimacy of their business endeavors, "Stavatti doesn't currently produce *any* planes." *See* Vice Article attached hereto as **Exhibit K**.

50.     Third-party journalistic sources have referred to Stavatti as "A Company That's Never Made a Plane", despite being in business for nearly 20 years, and finding that *"So far, Stavatti's airplanes are all the aerial equivalent of vaporware. All hype."* (*See* Vice Article, Exhibit K).

51.     Stavatti not only failed to provide the assured return on investment these capital contributions were intended to procure for investors, but also as a practice, Stavatti provides false assurances to said investors of additional investment opportunities they are waiting on to pay out in order to repay said investors, further interfering with the Agreement in place and further fraudulently inducing investors and the public.

52.     These supposed investment opportunities never seem to provide any type of substantial return, therefore causing Stavatti to falter on their contractual agreements with their investors.

53.     Defendants have acknowledged receipt of Plaintiff's investment funds in a letter authored by Stavatti stating, "The $1 Million loan provided by Mr. Dimitrov as an Angel Investor/Lender was received on March 1, 2022 by Stavatti," *See* Letter from Christopher R. Beskar dated October 24, 2022 attached hereto as **Exhibit L.**

54.     The United States Securities and Exchange Commission defines a Ponzi Scheme as:

"A Ponzi scheme is an investment fraud that pays existing investors with funds collected from new investors. Ponzi scheme organizers often promise to invest your money and generate high returns with little or no risk. But in many Ponzi schemes, the fraudsters do not invest the money. Instead, they use it to pay those who invested earlier and may keep some for themselves."

55.     On numerous occasions, the Defendants have represented to Plaintiff that he would be repaid on his investment once Stavatti has been able to acquire additional investment funds from new investors, including, but not limited to, in the letter authored by Beskar.

56.     In furtherance of this endeavor to continue to perpetrate this scheme, Stavatti has engaged an investment banking firm, DelMorgan & Co. in an effort to attract new investors and pay off early investors like the Plaintiff.

57.     Upon information and belief, to date, no investors, including, but not limited to, those similarly situated to the Plaintiff, have been repaid on their investment.

58.     Upon information and belief, based on the representations of Defendants, Stavatti has not raised funds from new investors to pay existing investors like the Plaintiff, and those similarly situated.

59.     Each of the Defendants involved in the Stavatti enterprise conspired with one another to design and promote the public image of a capability to produce and sell aircraft, for the purpose of receiving funds from unassuming investors, despite never having produced a single aircraft.

60.     Furthermore, the amount of equity obligated by Stavatti to investors, was never in line with a capitalization table or true proportional ownership of any Stavatti business entities; rather, the encumbered share values were just random and immaterial.

61.     The Defendants put their scheme into action aggressively, regularly creating fraudulently deceptive literature, design formulations, and other false documentation in an attempt to offer the outward appearance of legitimacy.

62.     Stavatti has even acquired an aircraft hangar in Eerie County, New York in an attempt to continue their fraudulent public image of producing aircraft.

63.     The Defendants, directly or through agents, fraudulently solicit investment from successful individuals who have little knowledge of the aircraft industry or formal corporate governance, by presenting the voluminous amount of deceptive information created by the Defendants, to foster confidence in unassuming investors and fraudulently induce them into making an investment.

64.     The receipt of funds from investment into the Stavatti entities, in order to effectuate the personal pecuniary gain of the individuals involved in the scheme, was the primary motive of the Defendants' conduct.

65.     The Defendants had a financial, business and property interest in inducing the Plaintiff, and those similarly situated, to enter into an investment into the Stavatti business entities, and to do so, fraudulently promised, opined and assured investors like the Plaintiff of their impending additional investment and revenue-generating activity.

66.     The Defendants entered into a scheme whereby they agreed and had a meeting of the minds that they would solicit investment from individuals all under the guise of the Stavatti enterprise.

67.     The Defendants conspired to perpetrate a fraud on the Plaintiff, and others similarly situated, each with knowledge of the object of the conspiracy. Each of the Defendants had particular roles and responsibilities in connection with the design, market, and strategy of the scheme. In addition, the Defendants authorized, ratified, and/or affirmed the fraudulent misrepresentations and/or omissions made by each of the other Defendants. Each Defendant committed at lease one overt act in furtherance of the unlawful conspiracy.

## COUNT ONE
## RICO VIOLATION OF 18 U.S.C. §§ 1961-1976

68.     Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

69.     Arizona RICO allows a private cause of action for racketeering.

70.     Pursuant to A.R.S. §13-2314.04(A), a person who sustains a reasonably foreseeable injury to his business or property by a pattern of racketeering activity may file an action in superior court for the recovery of up to treble damages and attorneys' fees.

71.     A.R.S. §13-2301 defines racketeering as any act that would be chargeable or indictable under the laws of Arizona, including acts committed for financial gain, including, but not limited to; intentional or reckless fraud in the purchase or sale of securities; intentional or reckless sale of unregistered securities; and a scheme or artifice to defraud.

72.     The Supreme Court has ruled that where "the public interest is involved … those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Porter v. Warner Holding, Co.*, 328 U.S. 395, 398 (1946). *Accord Virginian Ry. Co. v. Sys. Fed'n. No. 40*, 300 U.S. 515, 552 (1937) ("Courts of equity may, and frequently do go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved."); *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179-80 (1973) (same). *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960) ("As the Courts have long recognized, 'there is inherent in the Courts of Equity a jurisdiction to. . . give effect to the policy of legislature.' *Clark v. Smith*, 38 U.S. (13 Pet.) 195, 203, 10 L. Ed. 123.").

73.     To establish a private claim for civil racketeering, the plaintiff must prove: (1) the defendant engaged in a pattern of unlawful activity for the purpose of financial gain; (2) the defendant's pattern of unlawful activity caused the plaintiff's damages; and (3) the plaintiff's damages were a reasonably foreseeable result of the defendant's pattern

of unlawful activity. RAJI Commercial Torts 31 Racketeering (Elements). See also *Rosier v. First Fin. Capital Corp.*, 181 Ariz. 218, 889 P.2d 11 (Ct. App. 1994).

74.     According to the Stavatti website "Stavatti generates revenues and net shareholder earnings through the design and production of major fixed wing aircraft and aerospace vehicles, like Lockheed Martin and Boeing."

75.     Upon information and belief, Stavatti has never generated any revenue or shareholder earnings from the design and production of any aircraft.

76.     The various Stavatti entities and Individuals collectively operate as an association-in-fact enterprise.

77.     Stavatti and Individual Defendants violated 18 USC §1962(c) by forming, directing, managing, and operating an Association-in-Fact that engaged in a pattern of racketeering whose common purpose was to carry out a scheme to defraud investors, like the Plaintiff.

78.     Upon information and belief, Stavatti and Individual Defendants' first known violation of a predicate act set forth in 18 U.S.C. §1961 on or about July 1994

79.     Upon information and belief, Stavatti and Individual Defendants' last known violation of a predicate act set forth in 18 U.S.C. §1961 on or about May 2022.

80.     Defendants' violation of 18 U.S.C. §1962(c) resulted in damages to the Plaintiff in excess of $1,000,000 of embezzlement and conversion of the Plaintiff's funds.

81.     As previously established, the Defendants concealed the existence of the unlawful association-in-fact and their wrongful acts from the Plaintiff and other similarly situated investors.

82.     Defendants continue to conceal information in their possession that would establish the full scope of the association-in-fact and its wrongful and unlawful acts.

/ / /

## COUNT TWO
### BREACH OF CONTRACT

83.     Plaintiff hereby alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

84.     Under Arizona law, "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia Villas LLC*, 232 Ariz. 92 (Ariz. 2013). "A valid contract requires an offer, acceptance of the offer, consideration, and the intent of both parties to be bound by the agreement." *Murphy v. Woomer*, 250 Ariz. 256, (Ariz. App. 2020).

85.     Plaintiff and Stavatti entered into a Contract via the Promissory Note for the purpose of funding Stavatti's multiple perceived business ventures and, in turn, providing Plaintiff with not only a return on his capital investment, but also a five-times, quarterly return on his investment through the Business Capitalization Structure through Stavatti Super Fulcrum.

86.     Plaintiff accepted the offer.

87.     Defendants acknowledge receipt of Plaintiff's funds under the Contract.

88.     Plaintiff and Stavatti intended to be bound by the Contract.

89.     Funds were paid as a capital investment by Plaintiff to Stavatti pursuant to and in reliance upon the Contract.

90.     Stavatti have breached the Contract by failing to return Plaintiff's capital investment and future promised quarterly Business Capitalization.

91.     Plaintiff has been damaged in an amount no less than his capital investment of $1,000,000, in an amount to be determined at trial.

92.     This action arises out of contract, therefore, Plaintiff is entitled to recover his reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and costs pursuant to A.R.S. § 12-341.

## **COUNT THREE**
### **FRAUD**

93.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

94.    The elements of Fraud are well established and include: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. *Carrel v. Lux*, 101 Ariz. 430, 434, 420 P.2d 564, 568 (1966).

95.    Plaintiff had a written contract with the Stavatti via a Promissory Note wherein Stavatti made a material, false representation to Plaintiff that he would be paid a return of his capital investment on or before May 1, 2022, and a five-times, quarterly Business Capitalization on that investment.

96.    Defendants also represented that they "generate revenues and net shareholder earnings through the design and production of major fixed wing aircraft and aerospace vehicles, like Lockheed Martin and Boeing" knowing that they had never produced any revenue generating aircraft.

97.    Each of these statements represents a false present statement of fact, or a false present statement of intent to perform pursuant to the terms of the Contract.

98.    Stavatti were aware that these representations were false when made and knew them to be false when made.

99.    Stavatti were aware that these misrepresentations were material when made.

100.    Plaintiff reasonably and justifiably relied on the truth of Stavatti's representations.

101.   As a result of Stavatti' false representations, Plaintiff incurred damages in an amount to be proven at trial.

**COUNT FOUR**
**FRAUD IN THE INDUCEMENT**

102.   Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

103.   Fraud in the inducement requires: (1) a fraudulent misrepresentation of material fact; (2) that the party making the representation knew it was false; (3) that the party to whom the representation was made did not know of the falsity; (4) that the representation was made with the intent it would be acted upon; and (5) that the representation cause damages. *Dillon v. Zeneca Corp.*, 202 Ariz. 167, 172, (App. 2002).

104.   Stavatti falsely represented to Plaintiff that they had the expertise, experience, and resources required to execute their Contract by May 1, 2022, reasonably in line with the terms provided therein.

105.   Stavatti further falsely represented that they "generate revenues and net shareholder earnings through the design and production of major fixed wing aircraft and aerospace vehicles, like Lockheed Martin and Boeing" with knowledge that they have never produced any aircraft.

106.   Plaintiff reasonably relied on the representations of Stavatti in agreeing to their Contract and had no reason to suspect that Stavatti' representations were false.

107.   Plaintiff reasonably relied on the representations of Stavatti when they assured Plaintiff that he would be reimbursed his capital investment on or before May 1, 2022, and would receive the benefit of five-times, quarterly Business Capitalization on said investment.

108.   Stavatti falsely represented their expertise, experience, and resources for being able to reimburse Plaintiff's capital investment and provide payment for five-times

the Business Capitalization paid on a quarterly basis for the purpose of inducing Plaintiff to agree to their Contract.

109.   Plaintiff was and continues to be severely damaged by Stavatti in an amount to be determined at trial.

**COUNT FIVE**
**CONVERSION**

110.   Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

111.   The elements of Conversion are well established and include: (1) the plaintiff's ownership or right to possession of the property; (2) defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; (3) and damages to the Plaintiff.

112.   Plaintiff has a claim to ownership for property including the capital investment paid to Stavatti and the promised five-times, quarterly Business Capitalization on his investment pursuant to the Contract.

113.   Stavatti have wrongfully failed to relinquish the money rightfully owed and/or due to the Plaintiff.

114.   Stavatti have no reasonable explanation for failing to deliver the Plaintiff's property.

115.   Plaintiff continues to be harmed by the continual deprivation of the return of his capital investment, and the further deprivation of the five-times, quarterly return on that capital investment as agreed to.

116.   Plaintiff has been damaged in an amount to be determined at trial.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## COUNT SIX
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

117.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

118.    The law implies a covenant of good faith and fair dealing in every contract. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985); *see also* Restatement (Second) of Contracts § 205 (1981); 5 Williston on Contracts § 670 at 159 (3rd ed., Jaeger ed. 1961). The duty arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship. 154*154 *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. At 383, 710 P.2d at 1038.

119.    Plaintiff had a written contract with the Stavatti collectively as an angel investor via a Promissory Note with required repayment of Plaintiff's investment on or before May 1, 2022.

120.    Stavatti breached their duty to Plaintiff by failing to repay Plaintiff's $1,000,000 investment and further depriving Plaintiff his Business Capitalization with Stavatti Super Fulcrum which was supposed to have provided Plaintiff five times the return on his investment quarterly.

121.    Stavatti' failure to perform under the terms of the Contract entered into with Plaintiff has diminished Plaintiff's ability to not only receive the benefit of the return of his capital investment, however, has also further diminished Plaintiff's ability to capitalize on the promised quarterly Business Capitalization he was promised.

122.    Plaintiff has been damaged in an amount to be determined at trial.

/ / /

/ / /

## COUNT SEVEN
### BREACH OF FIDUCIARY DUTY

123.   Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

124.   To establish a breach of fiduciary duty claim, the plaintiff must prove: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached the fiduciary duty; (3) the defendant's breach was a cause of the plaintiff's damages; and (4) the plaintiff's damages. RAJI (Civil) 4ᵗʰ Commercial Torts 1A-1D; *Hurst v. Hurst*, 1 Ariz. App. 603, 607, 405 P.2d 913, 917 (1965); *Ohaco Sheep Co. v. Heirs of Mike Ohaco*, 148 Ariz. 142, 145, 713 P.2d 343, 346 (App. 1986).

125.   Arizona case law distinguishes a fiduciary relationship from an arm's length relationship. *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 24, 945 P.2d 317, 335 (Ct. App. 1996) (citations omitted). A fiduciary relationship "is a relation of parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other." *Rhoads v. Harvey Publications, Inc.*, 145 Ariz. At 149, 700 P.2d at 847 (quoting *In re McDonnell's Estate*, 65 Ariz. 248, 253, 179 P.2d 238 (1947)).

126.   Stavatti owed a fiduciary duty to Plaintiff as an investor in Stavatti' business practices. "The burden is on the persons occupying such fiduciary relations to show that the transaction has been fair, open, and conducted in the utmost good faith." *Hughes v. Caden De Cobre Mining Co.*, 13 Ariz. 52, 63, 108 P. 231, 236 (1910).

127.   Stavatti breached their fiduciary duty to Plaintiff when they knowingly and willfully made representations to Plaintiff they knew they would not fulfill, therefore denying Plaintiff of his benefit under the Contract.

128.   Stavatti further failed to provided Plaintiff adequate assurances as to Stavatti's liquidity or intent to repay Plaintiff under the terms of the Agreement therefore,

failing to "show that the transaction has been fair, open, and conducted in the utmost good faith."

129.    Plaintiff has been damaged in an amount to be determined at trial.

130.    Stavatti acted with fraud, malice, oppression, and with the intent to damage Plaintiff, therefore entitling Plaintiff to an award of punitive damages in an amount sufficient to punish said Stavatti.

**COUNT EIGHT**
**NEGLIGENCE**

131.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

132.    The elements of negligence include: (1) duty of care; (2) that the defendant breached their duty by failing to exercise reasonable care; (3) that the defendant's breach was the cause of the plaintiff's injury(ies); and (4) the plaintiff's damages as a result of that breach.

133.    Stavatti owed a duty of care to Plaintiff as a prospective investor in Stavatti to properly inform Plaintiff of business practices and revenue-generating aircraft production capabilities.

134.    Stavatti owed a duty of care to Plaintiff as an investor in Stavatti' business to act in conformity with the terms and conditions of the Contract.

135.    Stavatti breached their duty of care to Plaintiff by misinforming Plaintiff of Stavatti's revenue generation from aircraft production.

136.    Stavatti breached their duty by failing to perform under the Contract when Plaintiff's capital investment was not returned on or before May 1, 2022.

137.    Stavatti further breached their duty when they failed to pay Plaintiff the five-times, quarterly Business Capitalization as structed with Stavatti Super Fulcrum.

138.    As a direct and proximate result of Stavatti's failure to perform under the Contract, as well as misinformation to Plaintiff, Plaintiff has been directly damaged by not having received the return of his capital investment on or before May 1, 2022 and being deprived in not having received the five-times, quarterly Business Capitalization as promised.

139.    As a result of Stavatti's breach of their duty of care, Plaintiff has and continues to be damaged in an amount to be determined at trial.

## COUNT NINE
### INTENTIONAL MISREPRESENTATION

140.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

141.    The elements of intentional misrepresentation are (1) The defendant made a false representation of a past or existing material fact susceptible of knowledge; (2) The defendant did so knowing the representation was false, or without knowing whether it was true or false; (3) The defendant intended to induce the plaintiff to act in reliance on that representation; (4) The plaintiff acted in reliance on the defendant's false representation; and (5) The plaintiff suffered pecuniary damage as a result of that reliance.

142.    Stavatti falsely represented to Plaintiff that they had the ability and resources required to execute under the Contract and repay Plaintiff his initial capital investment on or before May 1, 2022, and that Plaintiff would further receive a five-times, quarterly Business Capitalization on that investment.

143.    Stavatti were aware that these representations were false when made and knew them to be false when made.

144.    Stavatti were aware that these misrepresentations were material when made.

145.    Stavatti intended for Plaintiff to rely on these materially false representations in order to induce their assent into the Contract.

146.    Plaintiff reasonably relied on the materially false representations of Stavatti in agreeing to their Contract and had no reason to suspect that Stavatti' representations were false.

147.    Plaintiff was and continues to be severely financially damaged by Stavatti in an amount to be determined at trial.

## COUNT TEN
### NEGLIGENT MISREPRESENTATION

148.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

149.    To succeed on a claim for negligent misrepresentation, a plaintiff must prove, (1) the existence of a duty of care based on a "special relationship" between the representor and the representee; (2) the representation in question was untrue, inaccurate, or misleading; (3) the representor acted negligently in making the misrepresentation; (4) the representee relied in a reasonable manner on the misrepresentation; and (5) the reliance was detrimental to the representee in the sense that damages resulted from that reliance.

150.    Stavatti owed a duty of care to Plaintiff based on their special relationship as an investor in Stavatti' business practices.

151.    Stavatti falsely and negligently represented to Plaintiff that they had the ability and resources required to execute under the Contract and repay Plaintiff his initial capital investment on or before May 1, 2022, and that Plaintiff would further receive a five-times, quarterly Business Capitalization on that investment.

152.    Plaintiff reasonably relied on the materially false representations of Stavatti in agreeing to their Contract and had no reason to suspect that Stavatti' representations were false.

153.   As a result of Stavatti knowingly false representations, and Plaintiff's reasonable reliance on those representations, Plaintiff was and continues to be severely financially damaged by Stavatti in an amount to be determined at trial.

## COUNT ELEVEN
## UNJUST ENRICHMENT

154.   Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

155.   "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." To claim unjust enrichment, "a plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy at law." *Span v. Maricopa Cty. Treasurer*, 246 Ariz. 222, 227, ¶15 (App. 2019).

156.   As a result of the breaches by and wrongful acts of Stavatti, they have been unjustly enriched at the expense of Plaintiff.  Stavatti have derived and retained benefits obtained at the expense of Plaintiff.

157.   Plaintiff made the capital investment payment of $1,000,000 to Stavatti under the reasonable belief that Stavatti would repay said capital investment on or before May 1, 2022 and would further provide Plaintiff with five-times Business Capitalization payments on a quarterly basis.

158.   Stavatti have no reasonable explanation for failing to repay Plaintiff as agreed to in the Contract.

159.   Stavatti are under an obligation to repay Plaintiff forthwith all amounts by which they have been unjustly enriched, in an amount to be determined at trial.

/ / /

/ / /

## COUNT TWELVE
## TORTIOUS INTERFERENCE WITH CONTRACT

160.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

161.    The elements of Tortious Interference of Contract include: (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Antwerp Diamond Exchange*, 130 Ariz. At 530, 637 P.2d at 730 (quoting *Calbom v. Knudtzon*, 65 Wash.2d 157, 162-63, 396 P.2d 148, 153-54 (1964)).

162.    Plaintiff has a Contract related to a return of and on investments wherein a viable business expectancy of transferring assets and interest exists.

163.    Plaintiff is the beneficiary of an investment as an agnel investor via the terms of the Promissory Note entered into with Stavatti wherein he has a viable expectancy of a return of his capital investment, as well as an expectancy of a return on the five-times, quarterly Business Capitalization on said capital investment.

164.    Stavatti intentionally interfered with that business expectancy of transferring assets and interest to Plaintiff when they failed to act under the Contract by failing to repay Plaintiff his capital invested on or before May 1, 2022, and further failing to make a single five-times, quarterly Business Capitalization payment to Plaintiff as agreed.

165.    Stavatti were aware of their business expectancy with Plaintiff and have wrongfully in intentionally failed to relinquish the money rightfully owed and/or due to Plaintiff for which they knowingly have no reasonable explanation for failing to deliver to Plaintiff.

166.    Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial.

**COUNT THIRTEEN**
**CIVIL CONSPIRACY**

167.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

168.    In Arizona, a civil conspiracy occurs when, "two or more people agree to accomplish an unlawful purpose, or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers*, *Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (en banc) (quoting *Baker v. Stewart Title & Trust of Phx.*, 197 Ariz. 535, 542, 5 P.3d 249, 256 (Ct. App. 2000)).

169.    Further, "liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agreed to commit.'" *Wells Fargo*, 201 Ariz. at 498, 38 P.3d at 36 (quoting *Baker*, 197 Ariz. at 545, 5 P.3d at 259). In other words, "[t]o establish liability on the basis of conspiracy, a plaintiff must show by clear and convincing evidence that the defendant and at least one other person agreed to accomplish an unlawful purpose or a lawful purpose by unlawful means, and accomplish[ed] the underlying tort, which in turn caused damages." *Dawson v. Withycombe*, 216 Ariz. 84, 103, 163 P.3d 1034, 1053 (Ct. App. 2007).  Additionally, "a claim for civil conspiracy must include an actual agreement, proven by clear and convincing evidence." *Wells Fargo*, 201 Ariz.at 499, 38 P.3d at 37.

170.    Here, Defendants willfully and falsely represented to Plaintiff they had the expertise, experience, and resources required to execute under their Contract by May 1, 2022, reasonably in line with the terms provided therein.

171.    Defendants further falsely represented that they, "generate revenues and net shareholder earnings through the design and production of major fixed wing aircraft and

aerospace vehicles, like Lockheed Martin and Boeing" with knowledge that they have never produced any aircraft.

172.   Defendants collectively agreed to utilizing these false representations for the purpose of acquiring Plaintiff's capital investment for use into an investment venture agreement with Stavatti for which Stavatti never provided their agreed-upon adequate assurances to their liquidity, and never intended to repay Plaintiff his $1,000,000 investment as per the terms under the Agreement.

173.   The Defendants collectively conspired to defraud Plaintiff out of his capital investment of $1,000,000, and further out of his expectancy of a return on the five-times, quarterly Business Capitalization on said capital investment.

174.   Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

WHEREFORE, Plaintiff Valentino Dimitrov, prays for judgment against  Stavatti Aerospace, Ltd, a Minnesota corporation; Stavatti Aerospace, Ltd, a Wyoming corporation; Stavatti Corporation, a Minnesota Corporation; Stavatti Immobiliare, Ltd, a Wyoming corporation; Stavatti Industries, Ltd, a Wyoming corporation; Stavatti Niagara, Ltd, a New York corporation; Stavatti Super Fulcrum, Ltd, a Wyoming corporation; Stavatti Ukraine, a Ukrainian business entity; Stavatti Heavy Industries Ltd, a Hawaii corporation; Christopher Beskar and Maja Beskar, husband and wife; Brian Colvin and Corrine Colvin, husband and wife; John Simon and Jean Simon, husband and wife; William Mcewen and Patricia Mcewen, husband and wife; Rudy Chacon and Jane Doe Chacon, husband and wife; and DOES 1 through 10, inclusive as follows:

A.    For compensatory damages in an amount to be proven at trial;

B.    For consequential damages in an amount to be proven at trial;

C.    For pre-judgment and post-judgment interest on the foregoing sum at the highest rate permitted by law;

D.    For punitive damages in an amount sufficient to punish Stavatti for their wrongful conduct and to deter others from engaging in similar misconduct in the future;

E.    For treble damages pursuant to 18 U.S.C. §1964(c);

F.    For costs incurred in bringing this action pursuant to A.R.S. § 12-341;

G.    For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 or where otherwise allowed by law; and

H.    For all other relief that this Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 2nd day of February 2023.

**ENARA LAW PLLC**

By: */s/ George K. Chebat*
George K. Chebat
Joseph J. Toboni
Attorneys for Plaintiff

**ORIGINAL** of the foregoing e-filed
within the Arizona District Court
this 2nd day of February 2023.

By: */s/ Shelly N. Witgen, ACP*