Terrance D. Dunmire, Esq. (9964)
Law Offices of Terrance D Dunmire
8701 E. Vista Bonita Drive, Suite 220
Scottsdale, Arizona 85255
Phone (602) 264-1300
tdunmire@parkwestpartners.com
Attorney for Defendants (except Brian and Corrina Colvin and Rudy and Jane Doe Chacon)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Valentino Dimitrov, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>Stavatti Aerospace. Ltd, a Minnesota corporation; Stavatti Aerospace Ltd, a Wyoming corporation; Stavatti Corporation, a Minnesota corporation; Stavatti Immobileare. Ltd. A Wyoming corporation; Stavatti Niagara, Ltd. A New York corporation; Stavatti Super Fulcrum, Ltd, a Wyoming corporation; Stavatti Ukraine, a Ukrainien business entity; Stavatti Heavy Industries Ltd. a Hawaii corporation; Christopher Beskar and Maja Beskar, husband and wife; Brian Colvin and Corrina Colvin, husband and wife; John Simon and Jean Simon husband and wife ; William Mcewen and Patricia Mcewen, Husband and wife; Rudy Chacon and Jane Doe Chacon. Husband and wife; and DOES 1-10, inclusive<br><br>Defendants. | Case No. CV-23-00226-PHX-DJH<br><br>**Defendants Motion to Set Aside Entry of Default Pursuant To Rule 55** |

All of the Defendants with the exception of Brian and Corrina Colvin and Rudy and Jane Doe Chacon (hereinafter sometimes the "Represented Defendants") make this Motion to Set Aside Entry of Default as follows:

I.   **Background**

Plaintiff's case involves his enforcement of a promissory note against the alleged maker of the note, Defendant Stavatti Aerospace Ltd. The note specifies at the outset that it is a promise to pay the principal sum of one million dollars within a forty-eight-month term. Plaintiff had the option to collateralize/convert the note with one million shares of preferred stock in Stavatti

Aerospace Ltd. It was later discovered that repayment of the principal amount of the loan was set to be two months from the date of the loan. None of the Represented Defendants had any involvement in creation of the note.

Stavatti Aerospace Ltd acknowledges having received a copy of a cash deposit of $900,000 on March 1, 2022 with the identity of the depositor undisclosed; this deposit was apparently from the loan proceeds although the details of the transaction were not disclosed by Mr. Colvin to anyone at Stavatti. None of the defendant companies or individuals except possibly the Colvins and the Chacons had any knowledge or involvement with the loan and certainly have no personal liability for it. None of the Represented Parties know or have met Plaintiff.

The note was apparently negotiated by Plaintiff and Defendant Brian Colvin who at one time had been associated with Stavatti Aerospace Ltd having been appointed Vice President for one of its divisions, Stavatti UAS (Unpiloted Autonomous Systems) and as Director of that division which essentially focused on drone technologies and products. His responsibilities among other things included business development with a specific emphasis upon drone technologies and products in the aerospace defense industry market segment. His appointment granted authorization to represent Stavatti to strategic partners and investors and to assist Stavatti in marketing and project financing. In this instance it appears Mr. Colvin was assisting in project financing for Stavatti Aerospace Ltd but primarily for his own interests as opposed to those of Stavatti. It would make no sense for Stavatti to borrow $1 million for its long term needs and obligate itself to repaying such a loan in two months. It appears likely that Plaintiff did not want to or was not capable of making a long term loan and that Mr. Colvin wanted or needed $100,000 immediately, resulting in this unauthorized and fraudulent note. Discovery during litigation will get to the bottom of these fact questions.

Mr. Colvin was secretive with his investor contacts and never introduced Mr. Dimitrov to anyone in the company (Stavatti Aerospace Ltd). None of the Represented Defendants ever met Plaintiff including Christopher Beskar, the founder and President of Stavatti who normally meets all the company's investors and partners. It appears Mr. Colvin intentionally concealed and kept from introducing Mr. Dimitrov to anyone in the company to keep them from scrutinizing and vetting the legitimacy of the transaction and the source of the loan.

We do not know the substance of the communications between Plaintiff and Mr. Colvin but we know from Plaintiff's complaint that Mr. Colvin was apparently pitching Plaintiff for funding of the Stavatti SM-29 aircraft upgrades project for which Stavatti had put together a Private Placement Memorandum; Stavatti had been (and still is) working with an investment banking firm named DelMorgan and had provided them with a template for a PPM for their use, it was not a finalized PPM but Brian Colvin apparently represented projections in it as guaranteed returns which then somehow made their way to the note as a set $5,000,000 profit participation. Mr. Colvin was not authorized to make those representations and Mr. Dimitrov should have known such an investment was too good to be true.

Stavatti has purchase contracts with the Ukrainian government for $192 million and is in the process of obtaining export licenses and obtaining funding for the project from the United States Defense Department. All of this is above board and well documented; nothing like the imagined Ponzi scheme alleged by Plaintiff.

The problem that arose here stems from the fact that Mr. Colvin took to representing himself as the President of Stavatti Aerospace Ltd and negotiated loan terms that had not been and would not have been approved by the company. Pursuant to the dictates of the security laws and as set forth in the above referenced Private Placement Memorandum the investment opportunity was to be given only to accredited investors and would utilize forms to document the transactions that had been approved by the company. Mr. Colvin however created a Frankenstein note to use with Plaintiff which had a two-month maturity for the principal repayment, a fact concealed from and unknown to Mr. Beskar and the other officers and directors of the company until a company auditor requested a copy of the note some months later.

Mr. Beskar did not sign the note and did not authorize it. The note was apparently created by Mr. Colvin using a fraudulent transfer of Mr. Beskar's signature lifted from a blank form non-disclosure agreement. Upon completion of the loan Mr. Colvin took an undisclosed and unauthorized fee of $100,000 which was contrary to any previous understanding or agreements with Stavatti.

3

When the two-month maturity date on the principal repayment came and went, Mr. Colvin, unbeknownst to Mr. Beskar or others in the company, continued to communicate with Plaintiff referring to himself as President of Stavatti Aerospace Ltd and perpetuating the deception that the two-month maturity date had been acknowledged by the company and providing excuses and promises that were apparently intended to keep the unauthorized loan from scrutiny by the company.

Upon receipt of Plaintiff's demand letter on or around October 10, 2022 Mr. Beskar finally learned of the note and its default; until that time Mr. Colvin had been interfacing with Plaintiff without keeping Stavatti abreast of the true state of affairs. Mr. Beskar wrote to Plaintiff with the intention of making things right but by then Plaintiff and his counsel were wed to the narrative they had come to believe and showed no interest in engaging in workout arrangements. Instead, Plaintiff filed the complaint in this matter on February 3, 2023. Service was made upon some of the defendants on March 28, 2023, and on the others on April 14, 16 and 26, 2023. Notably, Christopher Beskar was served on April 16, 2023. Responsive pleadings were to have been filed within 20 days thereafter.

Mr. Beskar is the principal shareholder and officer of all the Defendant companies and was the point person for the defendant companies and the person the other individual defendants expected would coordinate a proper response to the complaint. Stavatti Aerospace Ltd of Wyoming is the only Stavatti company involved in this transaction and it owns all the rights to the company's aircraft designs and owns the hanger and manufacturing facility in New York. Plaintiff has gone on a paranoid flight of fancy regarding a wholesale conspiracy among all the other corporate and individual defendants but the other defendant companies have little or no involvement with the functioning of Stavatti Aerospace Ltd.

On April 18, 2022, upon authority of the Stavatti Board, Abdihamid Mao, Stavatti's Interim Chief Counsel and a Canadian licensed attorney, called and emailed Plaintiff's counsel, Mr. Chabat to discuss the matter in hopes of obtaining an extension of 90 days to reply to the summons. Mr. Chabat refused to discuss the matter with Mr. Mao because he was not licensed to practice law in Arizona. At that point Mr. Beskar began efforts to locate legal counsel in Arizona but had difficulty finding a lawyer or firm willing to take on the defense of this matter given the inflammatory allegations in the complaint about an imagined Ponzi scheme and the number of named party defendants.

On April 25, 2023, nine days after being served, Mr. Beskar hired Robert Andrew who he had been referred to by a trusted source and who represented himself to be an Arizona licensed attorney and paid Mr. Andrew a retainer fee to deal with the complaint as necessary. Mr. Andrew however did not answer the complaint or otherwise make an appearance with the court but he regularly assured Mr. Beskar and his referral source that all was in order and that he was taking care of the matter. When it was becoming clear that Mr. Andrew was not addressing the complaint, Mr. Beskar again began seeking out Arizona legal counsel and ultimately called undersigned counsel in late June and soon learned that Mr. Andrew was <u>not</u> an attorney licensed in Arizona. Mr. Andrew had taken Defendants money under false pretenses and put them in the situation they are now in. Upon learning the true state of affairs Mr. Beskar acted promptly to hire undersigned counsel. The allegations of Plaintiff's complaint were so inflammatory that undersigned counsel first agreed to look into the matter to ascertain that good cause existed to set aside the entry of default and furthermore to ascertain that the Represented Defendants had a meritorious defense to the complaint. Having made those determinations in the affirmative, this motion was filed expeditiously.

## II.     Legal Authority and Argument

Arizona law favors resolution on the merits and resolves all doubts in favor of the party moving to have entry of default vacated and set aside. *Richas v. Superior Court of Arizona In and For Maricopa County*, 133 Ariz. 512, 652 P.2d 1035 (Ariz. 1982). Reasonable opportunity should be given to parties to litigate their claims or defenses on the merits so that any doubt existing as to whether default should be set aside should be resolved in favor of the application to set aside. *Ramada Inns, Inc. v. Lane & Bird Advertising, Inc.* 102 Ariz. 127, 426 P.2d 395 (1967). Any discussion of the "good cause" standard of Rule 55 (c) must begin with a consideration of its relationship to Rule 60(b), which provides relief from final judgments or orders upon grounds such as "mistake, inadvertence, surprise, or excusable neglect." The last clause of rule 55(c) states that a default judgment may be set aside "in accordance with Rule 60(b)." Given this language, the majority of courts have recognized that Rule 55(c) "good cause" is a standard exclusively governing requests for relief from default entries. The grounds enumerated in Rule 60(b) becoming applicable when the default has ripened into a default judgment which is sought to be set aside. In view of the similarity between the two procedures, however, it is not surprising that in a few isolated decisions, motions to vacate default judgments have been entertained under the good cause test of Rule 55(c).

Although the more specific grounds for relief set forth in Rule 60(b) have frequently been regarded as included within the concept of "good cause" for purposes in Rule 55(c), the courts have generally acknowledged that "good cause" is a broader and more liberal standard than anything found in Rule 60(b), and that, consequently, something less may be required to warrant the opening of an entry of default than would be necessary to set aside a default judgment. Thus, while "excusable neglect" has often been considered a reason for inaction sufficient to satisfy the good cause test, several courts have recognized that relief may be granted under Rule 55(c) even when the neglect giving rise to the default cannot, strictly speaking, be characterized as excusable. <u>See</u> *Provident Secur. Life Ins Co. v Gorsuch*, 323 F2d 839, cert den 376 US 950, 11 L Ed 2d 970, 84 S Ct 966 (1963, CA9 Ariz.) (Rule 60(b) excusable neglect sufficient); Madsen v *Bumb*, 419 F2d 4 (1969, CA9 Cal) (appearing to recognize that excusable neglect would be sufficient); *Savarese v Edrick Transfer & Storage, Inc.*, 513 F2d 140 (1975, CA9 Ariz.) (appearing to recognize that Rule 60(b) excusable neglect would be sufficient). It has been uniformly recognized the determination of whether good cause exists under Rule 55(c) is a matter resting largely within the discretion of the trial judge, although some courts have added the proviso that in situations of doubt, defaults should be set aside so that cases may be decided on their merits. <u>See</u> *Republic of Kazakhstan v. Stati*, 325 F.R.D. 507 (D.D.C. 2018).

A court may grant a motion to set aside entry of default upon a showing of good cause. Fed. R. Civ. P. 55(c); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000). In determining whether there is good cause, the court should generally (1) the prejudice to plaintiff if the default is set aside, (2) the existence of a meritorious defense, and (3) the defendant's culpable conduct. *Gilmore*, 943 F.3d at 966; *Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010); <u>see</u> *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). The court may also consider other relevant factors. *Gilmore*, 843 F.3d at 966; *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 n.7 (11th Cir. 2014); *Indigo Am., Inc.*, 597 F.3d at 3.

There is good cause to set aside the default in this case for the following reasons:

a. Setting aside the entry of default in this case will not prejudice plaintiff. *JMB Mfg., Inc. v Child Craft, LLC*, 799 F. 3d 780, 792-93 (7th Cir. 2015); *Indigo Am., Inc.*, 597 F.3d at 4; *Lacy*, 227 F.3d at 293. Upon learning of Plaintiff's lawsuit, Stavatti's Interim Chief Counsel called and emailed Plaintiff's counsel in an attempt to explain the reasons why the filing of the complaint was not

6

necessary and not in Plaintiff's best interests. Mr. Chabat however would not talk with him, insisting that he would only talk to Arizona counsel. Plaintiff neglected to capitalize on that opportunity to begin reasonable work out arrangements with Stavatti and instead chose to litigate. It is ironic because Plaintiff's complaint is in itself contrary to Plaintiff's express desire to be made whole on his loan to/investment into Stavatti Aerospace Ltd. because the lawsuit is prejudicial to that effort.

Stavatti has multiple orders for its airplanes and upgrades to MIG-29s and is awaiting export approval for these orders. In the aerospace industry, manufacturers do not manufacture airplanes to sit on a lot waiting for buyers to come along to purchase them. The process begins with obtaining purchase orders followed by issuance of export licenses and the financing of the purchase, in this case coming from the United States Department of Defense. Stavatti is a straight up bona fide enterprise which started out in 1994 and has been progressing forward ever since. The company in its current iteration is in pre-revenue status and raising capital is part of its business plan. The fact that it has never been sued by a lender or investor belies the wildly fantastical and unfounded allegations in Plaintiff's complaint. The best thing for Plaintiff will be to get the defaults set aside so the negative implications of the lawsuit can be minimized and so that Stavatti can continue with its efforts to fulfill its orders that are so close to fruition.

Setting aside the entry of default will subject Plaintiff to no greater delay than would be ordinarily expected in litigation. Even if there had been no technical default on the note, it had a forty-eight-month term and Plaintiff would not be expecting his investment to be repaid until 2026. Any delay that Plaintiff now might complain of is present in all litigation, and thus is a fair and reasonable delay under the law.

b. Defendants have a meritorious defense as alluded to above and defendants will file a responsive pleading upon the setting aside of entry of the entry of default. *Parker v. Scheck Mech. Corp.*, 772 F.3d 402, 595 (7th Cir. 2014); *Signed Pers. Check No. 730*, 615 F.3d at 1094; *Indigo Am., Inc.*, 597 F.3d at 4-5. Specifically, the loan was not approved by Stavatti Aerospace Ltd and was fraudulent created and concealed from Stavatti by Mr. Colvin for what now appears to be obvious reasons, namely Brian Colvin's self-interest. Stavatti is willing to make good on the note but its terms need to reformed to reflect the sort of realistic terms that would have been approved by the company had it been involved in the creation of the note. Additionally, the bulk of Plaintiff's claims are based on invalid assumptions without basis in fact.

c. Defendant's failure to appear was not willful. Signed Pers. Check No. 730, 615 F.3d at 1092-93. Indigo Am., Inc., 597 F.3d at 3-4; Gray v. Staley, 310 F.R.D. 32, 25-26 (D.D.C. 2015).

The Represented Defendants made reasonable efforts to communicate with Plaintiff and his counsel and made it clear that they were doing what they could to deal with the problem and would make every effort to make things right for Plaintiff and would respond to the litigation as necessary. However, instead of responding to Defendants' outreach, Plaintiff's counsel remained unresponsive and continued to press forward with his claims.

      d. Entry of default would lead to a harsh and unfair result, and defendant acted expeditiously to correct the default. See *Perez,* 774 F. 3d at 1337 n.7; Indigo Am., Inc., 597 F.3d at 3; *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2nd Cir. 1993). Failure to file a responsive pleading was not the fault of the Represented Defendants. The standard to be met in setting aside a default judgment for mistake, inadvertence, surprise, or excusable neglect is whether the conduct causing the entry of default might be the act of a reasonably prudent person under the same circumstances. *Ramada Inns, Inc. v. Lane & Bird Advertising, Inc.,* 102 Ariz. 127, 426 P.2d 395 (1967), supra. That standard applies and is satisfied here.

### III. CONCLUSION

The Court should grant the motion to set aside entry of default because the Represented Defendants timely expressed their intent to defend the suit, requested and were refused a 90-day extension to answer the complaint and thereafter took reasonable steps to timely answer the complaint. Specifically, they attempted to engage with Plaintiff and then with his legal counsel and made attempts to resolve the issues between the parties. When those efforts were rebuffed the Represented Defendants timely hired counsel reasonably believing he was a licensed Arizona attorney to answer the complaint. When that fallacy was uncovered they expeditiously took steps to correct the problem and have filed this motion,

WHEREFORE, for good cause as set forth above, the Represented Defendants request that the Court Grant their Motion to Set Aside Entry of Default and allow them to proceed to try the case on its merits.

**RESPECTFULLY SUBMITTED** THIS 14th day of July 2023.

BY _____
Terrance D. Dunmire

8

ORIGINAL of the foregoing E-filed
this 14th day of July, 2023 with:

United States District Court, District of Arizona

Copy of the forgoing mailed
this 14th day of July 2023 to:

HONORABLE DIANE J. HUMETEWA
United States District Court Sandra Day O'Connor U.S. Courthouse, Suite 625
401 West Washington Street, SPC 81
Phoenix, AZ 85003