Terrance D. Dunmire, Esq. (9964)
Law Offices of Terrance D Dunmire
8701 E. Vista Bonita Drive, Suite 220
Scottsdale, Arizona 85255
Phone (602) 264-1300
tdunmire@parkwestpartners.com
Attorney for Defendants (except Brian and Corrina Colvin)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Valentino Dimitrov, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>Stavatti Aerospace. Ltd, a Minnesota corporation; Stavatti Aerospace Ltd, a Wyoming corporation; Stavatti Corporation, a Minnesota corporation; Stavatti Immobileare. Ltd. A Wyoming corporation; Stavatti Niagara, Ltd. A New York corporation; Stavatti Super Fulcrum, Ltd, a Wyoming corporation; Stavatti Ukraine, a Ukrainien business entity; Stavatti Heavy Industries Ltd. a Hawaii corporation; Christopher Beskar and Maja Beskar, husband and wife; Brian Colvin and Corrina Colvin, husband and wife; John Simon and Jean Simon husband and wife ; William Mcewen and Patricia Mcewen, Husband and wife; Rudy Chacon and Jane Doe Chacon. Husband and wife; and DOES 1-10, inclusive<br><br>Defendants. | Case No. 2:23-CV-00226-DJH<br><br>**Defendants Reply to Plaintiff's Response to Defendants' Motion to Set Aside Default** |

Defendants Stavatti, Beskar, Simons and Mcewen (hereinafter sometimes the "Represented Defendants") hereby reply to Plaintiff's Response to Defendants' Motion to Set Aside Default as follows:

I.  **Additional Factual Allegations and Background**

Plaintiff's response repeats his unfounded allegations of Defendants' wholesale conspiracy to defraud Plaintiff. He also alleges concerted efforts to evade service by Brian Colvin and Rudy Chacon as part of the scheme. The Represented Defendants have had no contact with Mr.

Colvin since his severance from the company in November of 2022 and know nothing of his whereabouts. Similarly, they have never been in communication with Mr. Chacon and know nothing of his whereabouts.

Represented Defendants take offense at Plaintiff's unfounded allegations about Stavatti and want to address those allegations without getting side tracked from the issues before the Court. To that end Mr. Beskar has prepared the attached Exhibit A addressing the company's organization and the order from the Ukrainian government that Plaintiff chooses to believe is fantasy. Stavatti is a very real and impressive organization with very promising prospects.

Plaintiff argues that because Defendant Colvin had been associated with Stavatti, Stavatti must have been aware of what he was up to with respect to his dealings with Plaintiff. The Represented Defendants have already detailed the rogue, unauthorized and fraudulent actions by Mr. Colvin in connection with creation of the note but some of Plaintiff's allegations in his response warrant a response and explanation.

Mr. Colvin was appointed Vice President for Unpiloted Autonomous Systems (UAS) and Director of Stavatti UAS for Stavatti Aerospace Ltd on April 8, 2020. See Exhibit B attached hereto. His duties included business development, marketing and project financing. Stavatti was indeed engaged in raising investment capital for company operations. The company's focus had always been to work with FINRA registered investment bankers to raise that capital. The investment by Mr. Dimitrov orchestrated by Mr. Colvin deviated from the company's proposed investment structure and was not authorized by the board; it purported to obligate Stavatti to terms it could not meet. Mr. Colvin's misrepresentations and unauthorized dealings were not limited to those with Mr. Dimitrov; he also misrepresented the company to US State and Defense Departments officials and had put the company in a difficult and embarrassing situation. Based on explanations and representations by Mr. Colvin about his actions and with the intention of stemming the damage done by his misrepresentations, the company agreed to designate him Deputy President on August 29, 2022.  See Exhibit C attached hereto. Unfortunately, however, when information about other detrimental and dishonest communications by Mr. Colvin and the full scope of his violations of his fiduciary obligations and his corporate business ethics became known, the need to sever ties with him

became obvious and he was terminated by unanimous consent of the Board on November 23, 2022. See Exhibits D and E attached hereto.

The misrepresentations and unauthorized conduct by Mr. Colvin with respect to his dealings with Mr. Dimitrov in early 2022 predated his short lived term as Deputy President. The Represented Defendants have already pointed out that upon making the loan to Stavatti Aerospace Ltd. Mr. Dimitrov had been provided with the PPM informing him that Mr. Beskar was president of the company, not Mr. Colvin. Additionally, in February every year Stavatti updates its leadership team and posts it on its website under the Stavatti Aerospace Briefing. Please see the leadership team set forth in the February 2022 briefing showing Mr. Colvin to be Vice President and Director of UAS, not as President as Mr. Colvin represented himself to be. See Exhibit F attached hereto. Exhibit F also shows that in February 2023 Mr. Colvin is no longer on the leadership roster. Before Mr. Dimitrov made a million-dollar investment into the company he should have taken precautions to be aware of who he was dealing with. And as previously stated, he should have known the proposed investment was too good to be true and needs to take his share of responsibility for his lack of due diligence. Mr. Dimitrov's negligence in this regard was at least a contributing cause leading to this lawsuit and has greatly damaged the Stavatti.

Addressing the allegations regarding Mr. John Simon made on page 9 of the response, please be advised of the following which is also illustrative of and applicable to the situation for all of the Stavatti leadership team. Mr. Simon has a lengthy and impressive resume. His position with Stavatti is one without a written contract and without compensation. The Stavatti companies have no employees and no payroll. Everyone on the team is working on their various individual contributions to advancement of the whole without any current compensation. This applies throughout the organization all the way to Mr. Beskar, the president of Stavatti Aerospace Ltd. All members of the leadership team understand the potential of the company and that when the company gets to the position of having revenue all concerned will be given written employment agreements and will begin receiving income from the company accordingly. The company has a dedicated and hardworking leadership team that participates in a board meeting almost every Thursday as they have done since incorporation in 2014. It is noteworthy that Mr. Colvin participated in these board meetings

during his time with the company and especially noteworthy that during the time periods pertinent to Plaintiff's loan to the company he never mentioned the investment he was negotiating with Mr. Dimitrov and actively concealed the fact that the note has a two-month maturity date and that he had taken an unauthorized $100,000 for his conflicted efforts.

Plaintiff's wild accusations notwithstanding, there has never been a lawsuit filed by an investor before the one filed by Plaintiff in February of this year, or since. If there was any truth to Plaintiff's allegations in his complaint this would not be the case.

**II Legal analysis and argument:**

Legal authority and pertinent inquiries with respect to setting aside the entry of default in this case are summarized below.

<u>Setting aside the default will not prejudice Plaintiff:</u>

The Court must determine whether Plaintiff's ability to purse his claim will be hindered as per Falk, 739 F.2d at 463. Plaintiff will have every opportunity to pursue his claims once the default has been set aside. Setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Mesle, 615F.3d at 1095. Here the only harm to Plaintiff would be a simple delay in resolution of the case. Plaintiff could have avoided all the problems he is experiencing here if his counsel had agreed with Stavatti's Canadian general counsel's request to grant a 90-day extension within which to answer the complaint. In any event, a mere delay in reaching a final judgment is not enough to constitute prejudice.

<u>Meritorious Defense:</u>

Defendants must show that a meritorious defense exists and must present specific facts that would constitute a defense. Mesle at 1094. In this analysis it is not the role of the Court to assess the veracity of the facts alleged but it must find that the facts presented if true constitute the basis for a meritorious defense. Ultimately, the burden on defendants "is not extraordinarily heavy" Id. Here the Represented Defendants have alleged facts that show that unauthorized actions were taken by Defendant Colvin to enter into a loan which the company would never have approved or agreed to and he did it for his own selfish motives conflicting with those of the company. Stavatti Aerospace Ltd and the other Represented Defendants have been damaged by Mr. Colvin and possibly Mr. Dimitrov and their clandestine, reckless,

unauthorized and fraudulent conduct. Discovery should uncover the true nature of the relationship between Mr. Colvin and Mr. Dimitrov and whether they conspired to intentionally undermine Stavatti. At a minimum, Mr. Dimitrov's negligence in connection with this too good to be true investment, coupled with Mr. Colvin's fraud in connection with the note deserve a proper forum to permit a fair resolution for all concerned under the court's jurisdiction.

Culpable conduct:

In assessing culpability, courts must look to whether the failure to answer was done in bad faith. Mesle. 615 F.3d at 1092. If a defendant "has received actual or constructive notice of the filing and *intentionally* failed to answer [,]" his conduct is culpable. Id. (emphasis in original). To be deemed culpable for not answering defendant must have purposefully failed to answer in order to "take advantage of the opposing party, interfere with judicial decisions making, or otherwise manipulate the legal process." Id. Mere failure to respond by itself is not enough.

In this case, the Represented Defendants acted reasonably and took steps to properly respond to Plaintiff's demands and ultimately to the summons and complaint. Plaintiff suggests that Defendants knowingly ignored his demands and states on page 4 of his response: "Defendants fail to acknowledge the demand letter sent to Stavatti and their legal counsel in October 2022, nearly four months before ever initiating this lawsuit." This is demonstrably false. Mr. Beskar as President and CEO of the company wrote a comprehensive six-page response to Plaintiff's counsel on October 24, 2022 including multiple exhibits to help Plaintiff understand the situation. See Exhibit H attached hereto. This is not a response of someone ignoring the problem and unwilling to discuss the matter, quite the contrary.

Represented Defendants have already explained that Mr. Beskar, on behalf of all of them, timely hired who he reasonably believed to be licensed Arizona legal counsel to answer the complaint. As it turned out however, Mr. Andrew was not licensed to practice law in Arizona and did not answer the complaint. This failure to answer the complaint might be characterized as excusable neglect but it certainly was not intentional.

Plaintiff however suggests skepticism about Mr. Beskar having unknowingly hired an unlicensed individual and speculated that undersigned counsel may not have fulfilled his ethical obligations of reporting the unauthorized practice of law to the State Bar of Arizona. The fact is that Mr. Beskar reported the unlicensed practice of law himself. See Exhibit G attached hereto. Furthermore, undersigned counsel would never make such allegations without first making proper inquires to be in compliance with Rule 11.

Complications regarding service of process naturally arose and became extenuated because Plaintiff named around 16 companies and individuals as defendants in the case on the unfounded assumption that there was a Ponzi scheme in play. None of the Represented Defendants except Stavatti Aerospace Ltd. were parties to the transaction and their inclusion as named defendants has greatly added to the confusion in the case. With respect to Mr. Simon for example, he notified Plaintiff's counsel that there was a mistake in his inclusion as a defendant in the case. See Doc 23 #8 (Exhibit G to Plaintiff's response). His lack of "legal sophistication" is evidenced by his not understanding that his wife had not been served with legal process which Plaintiff acknowledges did not occur until late April 2022 when a number of the other Represented Defendants were served. Those parties and the other Represented Defendants, through Mr. Beskar, sought to answer in a timely fashion as previously set forth. Mr. Simon was not a "legally sophisticated entity or individual" for purposes of intentionality as per the Mesle analysis. 615 F.3d at 1093. Mr. Simon did not intentionally fail to respond to the complaint by any means; a six-million-dollar judgment against him or indeed any of the other Represented Defendants, would obviously be a manifest injustice.

Prior to undersigned counsel's involvement in this case none of the Represented Defendants were represented by counsel but they made reasonable efforts to contact Plaintiff's counsel who unfortunately refused to engage with them. When Mr. Beskar learned that Mr. Andrew was not an Arizona licensed attorney and had not answered the complaint as he had been paid to do, Mr. Beskar expeditiously hired an attorney and arranged for the filing their motion to set aside the entry of default.

It is noteworthy that Represented Defendants did not "avoid participation in the legal process right up to the point where a default judgment became imminent" as alleged by

Plaintiff on page 9 of his response. In addition to the other previously mentioned outreach to Plaintiff's counsel, undersigned counsel called to talk with Mr. Chabat on July 13 and left a message explaining his involvement in the case and asked for a return call hoping to reach a stipulation to set aside the defaults. Not having received a return call, undersigned counsel completed the motion to set aside the entry of default and filed it the next day. Rather than return the call Mr. Chabat apparently decided to advance his procedural advantage by filing Plaintiff's motion for judgment. Once again, that legal maneuver has only served to complicate this matter.

### III Conclusion:

The Represented Defendants have never taken the position that they have no responsibility for the loan from Plaintiff, quite the contrary. They have however been clear that the investment was not an authorized transaction and that the terms of its repayment will have to be negotiated. Reformation of the note under reasonable and equitable terms is clearly warranted under the circumstances of this case. Represented Defendants have shown they have a meritorious defense and otherwise have shown good cause to set aside the entry of defaults in the case.

**WHEREFORE, for good cause as set forth above and in Defendants' previously filed Motion to Set Aside Entry of Default**, Defendants request that the Court Grant Defendants' Motion to Set Aside Entry of Default and deny the motion for default judgment and allow Defendants to proceed to try the case on its merits and achieve an equitable result.

**RESPECTFULLY SUBMITTED** THIS 4th day of August 2023.

BY _____
Terrance D. Dunmire

1
2  ORIGINAL of the foregoing E-filed
3  this 4th day of August, 2023 with:
4  United States District Court, District of Arizona
5  Copy of the forgoing mailed
6  this 3rd day of August 2023 to:
7  HONORABLE DIANE J. HUMETEWA
   United States District Court Sandra Day O'Connor US Courthouse. Suite 625
8  401 West Washington Street, SPC 81
   Phoenix, Arizona 85003
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28