# EXHIBIT G





24 October 2022

George Chebat
Enara Law PLLC
7631 E Greenway Road, Suite B-2
Scottsdale, AZ 85260
Tel: 602-687-2010
email: George@EnaraLaw.com

**RE: Valentino Dimitrov Vs. Stavatti Entities re: Investment Repayment: Demand for Repayment on $1 Million Investor Note**

Dear Mr. Chebat,

This letter is in response to the referenced Demand for Repayment on $1 Million Investor Note sent on 10 October 2022 and received by Stavatti registered agents on 13 October 2022.

Stavatti Aerospace Ltd ("Stavatti") is committed to the repayment of the loan of $1 Million ($1,000,000.00) provided to Stavatti by Velentino Dimitrov. It is our firm intention to have that loan repaid in-full as soon as possible within the next 15 to 90 days. Stavatti is immediately endeavoring to secure the additional funds necessary to repay this loan in full and is committed to its complete and total repayment as soon as possible. This loan will be repaid through either the retirement of the loan with proceeds secured from our next fundraising round currently being undertaken and coordinated by DelMorgan & Co and/or alternative investor, lender or strategic partner or through the earnings associated with new products Stavatti is now introducing for commercial sale, including but not limited to, Proprietary "Green Foam" Fire Retardant.

The $1 Million loan provided by Mr. Dimitrov as an Angel Investor/Lender was received on 1 March 2022 by Stavatti to serve as "seed capital" for the purpose of paying initial fees associated with DelMorgan & Co ("DelMorgan"), an investment banking firm engaged by Stavatti. The purpose of the seed capital was also to address outstanding expenses associated with Stavatti's 2020 acquisition of our headquarters and prototyping center located at 9400 Porter Road, Niagara Falls, NY as well as to serve as working capital. The total engagement fee associated with DelMorgan was $100,000 payable in four monthly installments of $25,000. Stavatti engaged DelMorgan on 21 February 2022 with the first payment being made to them on 22 February 2022 through prior investor funds not associated with Mr. Dimitrov's loan. Stavatti made three subsequent payments of $25,000 to DelMorgan on March 23rd, April 22nd and May 23rd. These three payments totaling $75,000 were drawn from the proceeds of the Dimitrov loan.

From the date of engagement, Stavatti coordinated with DelMorgan to develop a comprehensive presentation and package for potential investors, including both a one page "Stavatti Teaser" and a 54 page "Stavatti Investor Presentation." While Stavatti's first presentation regarding the SM-29 project as shared with DelMorgan the morning of 24 December 2021 focused upon the Ukraine Air Force as a launch customer, only two days after engaging DelMorgan Ukraine was invaded on 24 February 2022. This invasion led to a fundamental restructuring of the Stavatti business plan and focus whereby the primary launch customer for the SM-29 upgrade was realigned from Ukraine to India. This decision was made as it was unclear at the time if Ukraine had any remaining MiG-29s to upgrade as we received information citing that the majority of the Ukrainian Air Force had been destroyed within the first few days of the war.

Between March and April of 2022 Stavatti worked with DelMorgan to develop a new SM-29 business plan that was not reliant upon Ukraine Air Force sales for success. This document and its various iterations was completed, reviewed, approved and ready for presentation to Investors on 22 June 2022. Whereas Stavatti had expected DelMorgan to have a presentation ready for circulation by 22 March 2022, the war

in Ukraine and conflicting narratives regarding the availability of MiG-29 aircraft suitable for upgrade severely impacted how DelMorgan structured their investment offering. While DelMorgan was preparing the offering documents, between April 20th and May 6th Stavatti submitted "Advisory Opinion" requests to the State Department-Directorate of Defense Trade Controls (DDTC). Totaling ten submissions of DS-7786 Advisory Opinion Forms with supporting technical data, Stavatti requested Advisory Opinions regarding the export suitability of Stavatti aircraft and aircraft upgrades including the SM-27, SM-28, SM-29 and SM-31 to allied nations including Israel, Japan, Australia, Poland, Ukraine, UAE and Taiwan. On May 10th I received a phone call from DDTC stating that Stavatti's Advisory Opinions have been reviewed and we should immediately submit DSP-5 Export License Applications in support of our request for approval to export Stavatti aircraft to the end-users and nations specified in the Advisory Opinions.

During that same day both Stavatti VP Brian Colvin and myself were in Washington D.C. engaged in meetings at the Ukrainian Embassy with Major General Borys Kremenetskyi, Defense Attache, Embassy of Ukraine in the United States of America. These meetings were to coordinate both the potential sale of items on Stavatti purchase orders from Ukraine (specifically purchase orders 220328-003 and 220328-004) as well as the upgrade of Ukrainian Air Force MiG-29s and the future potential sale and delivery of the SM-28 and SM-31. This meeting ultimately resulted in General Kremenetskyi identifying himself as the party responsible for coordinating US DoD Foreign Military Financing (FMF) for Ukrainian defense acquisitions with US defense contractors. We also agreed that Stavatti would coordinate FMF with General Kremenetskyi once we received export licenses for our products from the DDTC.

Upon returning from Washington, D.C. I prepared and submitted a DSP-5 export license application for Stavatti's export of the SM-29 Super Fulcrum upgrade to DDTC. Shortly upon submission I was informed by DDTC analysts that more technical information was required to process that application, specifically technical information regarding the SM-29 aircraft with Stavatti Conformal Fuel Tanks (CFTs) presented in a manner similar to the technical briefings provided by Stavatti for our SM-27, SM-28 and SM-29 aircraft. This request resulted in a late May to early August combined engineering development and technical writing effort to produce a technical briefing of the SM-29 upgrade that would enable Stavatti to receive an export license for this product.

During this entire process, DelMorgan completed their Teaser and Investor Presentation and began presenting these materials to their network of potential investors/investment firms officially on Monday 27 June 2022. Since that date DelMorgan has continued to engage potential investors for the purpose of securing $35 Million toward our SM-29 upgrade program and overall business plan again involving the SM-28, SM-29 and SM-31. Each Friday at 2 PM Pacific Time Stavatti has been having a Zoom call with DelMorgan Managing Directors to remain regularly updated regarding their progress and Stavatti shareholders/investors are invited to participate in that regular Zoom call to learn the status of our fundraising initiatives. To that end Stavatti team members, including myself, are meeting with Syed Kazmi of DelMorgan in a face-to-face meeting this Wednesday the 26th at 10 AM Pacific Time.

On September 9th Stavatti completed preparation of all materials necessary to submit a comprehensive DSP-5 export license application for the SM-29 Super Fulcrum upgrade to Ukraine. The DSP-5 was submitted for this project on that date and is currently In-Review with DDTC. This export license application is for a total contract value of $2.32 Billion in SM-29 Super Fulcrum upgrades. Additionally between September 9th and October 16th Stavatti submitted a total of 7 DSP-5 export license applications for SM-29 or SM-27, SM-28 and SM-31 aircraft to US and NATO allies. These DSP-5 export license applications have a total combined value of over $9 Billion in orders. Supported by customers who have significant interest in both Stavatti and the recapitalization of their air force. Stavatti is now waiting to receive our approved export licenses. Upon receiving approved export licenses for sales to Ukraine, those licenses will be submitted along with an FMF application to secure FMF funding from the DoD to result in the production and delivery of products from Stavatti to Ukraine and of course the generation of cashflow for Stavatti and a subsequent repayment of outstanding debts as well as the provision of a return to all Stavatti investors, lenders and shareholders. It is our understanding that DSP-5s are processed within 49 days of submission, however, due to the complexity associated with specific applications there may be additional delays, especially due to the current war in Ukraine and ever evolving US National Defense Policy regarding Ukraine

<mark>Since receiving the investment from Mr. Dimitrov on March 1st it has been Stavatti's sincere desire and</mark>

intent to repay Mr. Dimitrov in-full and provide his return on investment as rapidly as possible. When Mr. Colvin presented our investment opportunity to Mr. Dimitrov, it was my understanding that Stavatti VP Brian Colvin presented to him our SM-29E Super Fulcrum Confidential Private Placement Memorandum (SM-29 PPM) dated January 2022. I believe Mr. Dimitrov acknowledges that he received and reviewed the SM-29 PPM as it is included and referenced as Exhibit B in your October 10th letter. At that time, Stavatti was offering investment opportunities in Stavatti/the SM-29 program, primarily through the SM-29 PPM and it was both the general policy of the company and Stavatti to offer our opportunity only as an equity investment to qualified and accredited investors through the structure offered by the PPM. While I did not, and have not yet, had the opportunity to meet with Mr. Dimitrov in person, nor engage in a phone call, zoom call, text or email exchange with Mr. Dimitrov, it is my understanding that he was familiar with the SM-29 PPM as well as Stavatti prior to considering any investment or loan to Stavatti. It is also my understanding that Mr. Dimitrov elected to participate in an alternative "Promissory Note" investment structure (Exhibit A of the October 10th Letter) which was offered in consideration of the SM-29 program to serve as seed capital for that program. This Promissory Note structure was considered by Stavatti to be a deviation from our PPM but due to the Collateral Clause which offers the conversion of the loan to the ownership of 1 Million shares of Stavatti Preferred Stock, was deemed acceptable but only within the context of the original PPM which serves as both a business plan and investment disclosure to any potential lender or investor.

While Stavatti has endeavored to raise additional capital to capitalize our $10 Million SM-29 Business Plan as rapidly as possible, Stavatti is not in control of the time required to raise equity or debt capital, especially in the current economic and investment landscape. Per the "Risk Factors" that are clearly outlined Beginning on page 84 of the SM-29 PPM, "An investment in Stavatti is speculative and involves a high degree of financial risk. If you invest in Stavatti, you may loose all of your money as associated with this investment." Furthermore it is clearly stated in great detail that there are specific risk factors including an "Absence of Immediate Revenue" (page 71), "Possible Alternations in the Market for Military and Civil Aircraft" (Page 72) and "Need for Additional Funding and Funding Risk" (Page 75) that could significantly impact Stavatti's ability to provide a Return on Investment to any investor or lender. As the SM-29 PPM was directly connected and related to the investment opportunity presented to Mr. Dimitrov it and it's clearly presented risk factors applied to the Promissory Note Structure that Mr. Dimitrov invested under.

As noted, Mr. Dimitrov did not invest directly into the SM-29 PPM. Stavatti officially "retired" the SM-29 PPM dated January 2022 and ceased its circulation as an active investment opportunity subsequent to the engagement of DelMorgan. The DelMorgan Engagement Agreement clearly outlined a 12 month engagement term with Exclusivity such that "no other advisor is or will be authorized by (the company) during the term of (the) Agreement to perform services on the Company's behalf of the type described hereunder." That being the case, once Stavatti entered into our engagement with DelMorgan, we ceased working with a wide variety of other potential investors, brokers and fundraisers instead steering them to DelMorgan or continuing to work with them under a pre-arranged "grandfather" clause with DelMorgan which enabled Stavatti to continue engaging specific potential investors prior to entering into the agreement with DelMorgan. This included other investment banking firms such as USCGP as well as specific alternative investors. That said, by the end of June 2022, DelMorgan became our principal investment banking/equity investment coordinator and our SM-29 PPM dated January 2022 was fully expired.

While Stavatti has continued engaging potential investors, our primary focus has been upon "directing" any potential investor interested in either our $35 Million or larger $180 Million investment opportunity directly to DelMorgan to engage in a coordinated presentation and closure through their FINRA registered services. Simultaneously we have focused heavily upon securing export licenses such that we may secure both FMF and contract order financing and develop, produce and deliver our chosen products with or without Investment as introduced and coordinated by DelMorgan.

While we are all very frustrated by the delays and are extremely upset by the amount of time we have engaged with DelMorgan that has not yet resulted in the funding of our $35 Million investment opportunity, we have two factors that remain active. The first factor is the 12 month term of the DelMorgan engagement. DelMorgan will continue their efforts until 21 February 2023. The second factor is the pending DSP-5 export licenses which Stavatti expects will be issued within the coming days or weeks. One holds the promise of securing the capital for our $35 Million Business Plan while the second provides a mechanism for revenue generation as presented in our January SM-29 PPM. In general our business plan,

Each of the Stavatti business plans and programs cited above are designed to allow Stavatti to immediately activate the vendors whose past support has helped position the company for success. While each program has a different probability for realization and timing, at the top side, as pointed out above, some are in the final stages of the paperwork to begin, and many will be the result of cultivation of excellent relationships with the customers.

Stavatti has an extremely clear vision that embraces both a significant long-range strategic plan as well as an immediate solution for revenue generation. In the very near term, Stavatti is developing new products today for rapid sale and cashflow. Those products range from the "Green Foam" that may be sold in high volumes to existing aerial firefighting services (Coulson, CalFire, etc.) to our SM-26 Sleek sportplane which requires $1.5 Million to prototype after which Stavatti can begin accepting purchase orders for this high performance "Ferrari of the Sky."

Stavatti is a pioneering company. In addition to our own design aircraft, we are developing our own advanced powerplants, alloys, avionics, sensors, artificial intelligence, batteries and systems to ensure that we are independent of non-US sourced components and materials. This focus will ultimately result in the spin-off of technologies for commercialization throughout many other industries not the least of which is the consumer marketplace.

Often compared to an Apple Computer, a Boeing, a Lockheed or a new Fairchild or Hughes Aircraft, Stavatti thanks our current investors and lenders for being on the ground floor of an amazing new company that is inspirational, innovative and at the right place at the right time. Now is definitely our time and as we secure our export licenses, DoD support for both our own programs as well as the funding of our allied customer acquisitions. Stavatti has a clear and definite pathway to not only secure additional development capital for both immediate and long range strategic needs as well as generate revenue and achieve net cashflow while producing and delivering products that our customers want and need.

==Stavatti remains committed to the repayment of the loan from Mr. Dimitrov as soon are funds are available to do so. Stavatti has "earmarked" over $2 Million of the next tranche of capital secured/raised, be it $3 Million to $30 Million, to immediately pay-off all outstanding debts, including that of Mr. Dimitrov. While we are not in direct control of our time-line due to the very nature of fundraising and the review of DSP-5 export licenses, it is our commitment to have Mr. Dimitrov fully repaid within the next 15 to 90 days.==

Additionally Stavatti encourages Mr. Dimitrov to consider the Stock Option presented to him in the Promissory Note. In any case, it is Stavatti's desire to work with Mr. Dimitrov and all stakeholders to ensure that their participation in Stavatti as Angel Investors is ultimately a positive and rewarding experience. We are at a time of war and Stavatti is working with our investment banking advisors to ensure that we can meet all of our obligations and fully develop our company and our potential as rapidly as possible within today's challenging environment.

Best Regards,

Christopher R. Beskar
President & CEO
Stavatti Aerospace Ltd
Tel: 651-238-5369
email: chris.beskar@stavatti.com