1  **ROSS P. MEYER (028473)**
   Ross@EnaraLaw.com
2  **MORGAN E. SILVA (039166)**
   Morgan@EnaraLaw.com
3  **Enara Law PLLC**
   7631 East Greenway Road, Suite B-2
4  Scottsdale, Arizona 85260
   Telephone: (602) 687-2010
5  Filings@EnaraLaw.com
6  *Attorneys for Plaintiff*

7              UNITED STATES DISTRICT COURT

8                   DISTRICT OF ARIZONA

9  | Valentino Dimitrov, individually, and on | Case No. 2:23-CV-00226-PHX-DJH |
10 | behalf of all others similarly situated; | |

11 |            Plaintiff, | **MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS STAVATTI AEROSPACE LTD., A WYOMING CORPORATION, CHRISTOPHER BESKAR, AND BRIAN COLVIN** |
12 |        vs. | |
13 | Stavatti Aerospace, Ltd., a Minnesota | |
14 | corporation; et al. | |
15 |            Defendants. | |

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff, Valentino Dimitrov, files this Motion for Summary Judgment pursuant to Rule 56, Fed. R. Civ. P against Defendants Stavatti Aerospace Ltd., a Wyoming corporation, Christopher Beskar, and Brian Colvin (Doc. 68). This Motion is supported by the following Memorandum of Points and Authorities and the directly cited to exhibits referenced herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

On February 27, 2022, Mr. Dimitrov signed a Promissory Note with Stavatti Aerospace Ltd., a Wyoming corporation ("Stavatti Aerospace") memorializing his loan of $1,000,000 to Stavatti Aerospace (the "Principal"), and also required Stavatti Aerospace to repay the Principal by May 1, 2022 and pay Mr. Dimitrov a $5,000,000.00 return (the "Guaranteed Return") by February 26, 2026 (the "Promissory Note"). *See* Promissory Note (Feb. 27, 2022), attached as **Exhibit 68-1**. Defendant Brian Colvin ("Mr. Colvin") provided the Promissory Note to Mr. Dimitrov, which was signed by Defendant Chris Beskar ("Mr. Beskar") in his capacity as CEO of Stavatti Aerospace. Ex. 68-1, at 3; *see also* Plaintiff's Request for Admissions to Brian Colvin ("RFA") (Dec. 12, 2024), attached as **Exhibit 68-2**, at 7[1], Nos. 1 and 3[2]. Mr. Dimitrov provided $1,000,000 to Stavatti Aerospace in accordance with the Promissory Note. *See* Ex. 68-2, at 9, No. 13; *see also* Deposition of Christopher Beskar (Jan. 24, 2025), attached as **Exhibit 68-3**, at 25:18-22, 28:16-20, 35:21-36:2, and 42:8-12. After Stavatti Aerospace deposited the funds, Mr. Beskar and/or Mr. Colvin used the funds to pay an investment banking firm, DelMorgan & Co., to pay other outstanding expenses, and as working capital. *See* Ex. 68-2, at 9, No.

---

[1] For convenience of the Court, Plaintiff's exhibit citations reference the page number of the document as stamped by the Court on the top of each page upon filing.

[2] On February 5, 2025, this Court deemed Mr. Colvin's Requests for Admissions admitted. *See*, Doc. 60, at 1.

15; *see also* Ex. 68-3, at 37:19-38:2, 40:10-16. Stavatti Aerospace failed to repay Mr. Dimitrov on May 1, 2022 and has not done so to date. *See* Stavatti Aerospace's Responses to Plaintiff's First Set of RFA's (Aug. 8, 2024), attached hereto as **Exhibit 68-4**, at 6, No. 9.

Unbeknownst to Mr. Dimitrov, in February 2022, Stavatti Aerospace actually consisted of a number of companies, not limited to the nine identified in the Complaint, none of which have the ability to repay the Promissory Note. *See infra*, at 7:23-8:8. Only Stavatti Ukraine has employees, Stavatti Aerospace owns a commercial property in New York, and some of the Stavatti entities own limited assets in the form of "intellectual property" and some machinery. *See infra*, at 8:8-18. The companies do not have any meaningful revenue, other than Stavatti Aerospace, which leases a commercial property to tenants. Essentially, the group of companies is a commercial landlord for one property pretending to be an aerospace company, like "Lockheed Martin and Boeing," to abscond with Mr. Dimitrov's million dollars. *See* Stavatti Aerospace's Stavatti Approach Website, attached hereto as **Exhibit 68-5**, at 2; *see also* Ex. 68-3, at 3:23-25.

The actions of Stavatti Aerospace were conducted by individuals, Mr. Beskar, as CEO, and Mr. Colvin as the Vice President for Unpiloted Autonomous Systems ("UAS") and Director of Stavatti UAS for Stavatti Aerospace, who was granted "full authorization to represent Stavatti worldwide" for tasks including but not limited to "[t]he introduction and representation of Stavatti to strategic partners, investors and governments," and to assist Stavatti in the "arrangement of funding/financing." *See* Letter from Mr. Beskar to Mr. Colvin (Apr. 8, 2020), attached as **Exhibit 68-6**, at 2. Both individuals had the authority to act as Stavatti Aerospace's agents. *See* Ex. 68-3, at 26:9-11, 30:10-11, 31:22-25, and 32:11-19; *see also* Kennedy Loan Funding Financing Request (Jan. 17, 2025), attached as **Exhibit 68-7**, at 9; *see also* Mortgage signed by Mr. Beskar (Sept. 7, 2021),

attached as **Exhibit 68-8**, at 5; *see also* Promissory Note (Sept. 7, 2021) between Stavatti Aerospace and David Kim, attached as **Exhibit 68-9**, at 2 (Sept. 7, 2021); *see also* Tax Returns (2021, 2022, and 2023), attached as **Exhibit 68-10**, at 2-4; *see also* Loan Agreement between Stavatti Aerospace and Robert Sugarman (Jan. 16, 2020), attached as **Exhibit 68-11**, at 2. At all times during this transaction, Mr. Beskar and Mr. Colvin conducted and controlled the actions of Stavatti Aerospace.

## II.    **LEGAL ARGUMENT**

### a.  **Legal Standard**

Summary judgment is appropriate when the moving party shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

### b.  **Stavatti Aerospace Breached the Promissory Note by Failing to Repay Mr. Dimitrov's Principal by May 1, 2022**

Mr. Dimitrov seeks summary judgment against Stavatti Aerospace for breach of the Promissory Note by failing to repay Mr. Dimitrov's Principal by May 1, 2022. To prevail on a breach of contract claim, "the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia Villas LLC*, 232 Ariz. 92, 621, ¶ 16 (Ariz. 2013). "A valid contract requires an offer, acceptance of the offer, consideration, and the intent of both parties to be bound by the agreement." *Murphy v. Woomer*, 250 Ariz. 256, 261, ¶ 16 (Ariz. App. 2020).

On February 27, 2022, Mr. Dimitrov signed the Promissory Note and provided $1,000,000 in cash to Stavatti Aerospace. Ex. 68-1, at 2-3. Stavatti Aerospace also signed the contract, accepted Mr. Dimitrov's $1,000,000, and directed the use of these monies.

*See* Ex. 68-3, at 35:1-7, 37:13-16, and 37:19-38:2 (Mr. Beskar admitting to the Promissory Note and the use of the funds); *see also* Ex. 68-3, at 28:16-20, 29:5-9, and 41:12-17 (Admitting Mr. Dimitrov provided $1,000,000 and the need to repay Mr. Dimitrov); *see also* Ex. 68-3, at 42:11-12 ("in the aggregate between Stavatti and Brian, Valentino Dimitrov invested a million dollars."); *see also* Ex. 68-3, at 37:23-38:2 (monies used for benefit of Stavatti and to pay off debts).

On May 1, 2022, Stavatti Aerospace failed to repay Mr. Dimitrov any monies, but certainly did not repay him $1,000,000 as called for in the Promissory Note. *See* Letter from Christopher Beskar to George Chebat (Oct. 24, 2022), attached hereto as **Exhibit 68-12**, at 2 and 7. Stavatti Aerospace has failed to repay Mr. Dimitrov any monies to date. *See* Ex. 68-4, at 6, No. 9 (admitting no payments on the Promissory Note have been paid). As such, Mr. Dimitrov has been damaged in an amount of $1,000,000, plus pre-judgment interest, in the amount of $210,821.92. *See* A.R.S. § 44-1201 (permitting pre-judgment interest as of date of demand for payment) (interest is calculated from October 10, 2022 to August 1, 2025). Therefore, Mr. Dimitrov respectfully requests that this Court enter judgment in an amount of $1,210,812.92, against Defendants for breaching the Promissory Note and award Mr. Dimitrov his attorneys' fees and costs pursuant to A.R.S. § 12-341 and 12-341.01.[3]

### c. **RICO Violation of A.R.S. § 13-2301(D)(4)[4]**

---

[3] In the event that this litigation is still pending on February 27, 2026 and Stavatti Aerospace fails to repay Mr. Dimitrov's Guaranteed Return by that date, Mr. Dimitrov intends to amend his complaint to add an additional Breach of Contract claim for the amount of the unpaid Guaranteed Return, in the amount of $5,000,000.00. This cause of action will not begin to accrue until the payment date, February 27, 2026.

[4] In his Complaint (Doc. 1), Plaintiff cited both the federal RICO statute,18 U.S.C. §§ 1961–1968, and Arizona's corresponding statute, A.R.S. § 13-2314.04 in his RICO claim against the Defendants. Upon further investigation and review of the facts and legal standards, Plaintiff brings this Motion on the RICO claim solely under Arizona law.

Mr. Dimitrov seeks summary judgment against Stavatti Aerospace, Mr. Beskar, and Mr. Colvin for their control and conduction of an enterprise, Stavatti Aerospace, with a pattern of racketeering in violation of A.R.S. § 13-2301(D)(4). Mr. Dimitrov asserts that Stavatti Aerospace, Mr. Beskar and Mr. Colvin committed a pattern of racketeering for participation in an artifice or scheme to defraud, the intentional selling of unregistered securities, and the intentional or reckless selling of fraudulent securities. In Arizona, "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by violation of § 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including the reasonable attorney fees for trial and appellate representation." A.R.S. § 13-2314.04. In Arizona, racketeering is defined as:

> any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred and, if the act occurred in a state or country other than this state, that would be chargeable or indictable under the laws of this state if the act had occurred in this state, and that would be punishable by imprisonment for more than one year under the laws of this state and, if that occurred in a state or country other than this state, under the laws of the state or country in which the act occurred, regardless of whether the act is charged or indicated, and that act involves either:
>
> (b) Any of the following acts if committed for financial gain: . . .
>> (xviii) Intentional or reckless fraud in the purchase or sale of securities.
>> (xix) Intentional or reckless sale of unregistered securities or real property securities.
>> (xx) A scheme or artifice to defraud.

A.R.S. § 13-2301(4); *see also State ex re. Corbin v. Pickrell*, 136 Ariz. 589, 594-95, 667 P.2d 1304, 1309-10 (Ariz. 1983). Under A.R.S. § 13-2312, a person commits 1) illegal control of an enterprise if such person, through racketeering or its proceeds, acquires or

maintains, by investment or otherwise, control of any enterprise; and 2) illegal conduction of an enterprise and conducts such enterprise's affairs through racketeering or participates directly or indirectly in the conduct of any enterprise that the person knows is being conduct through racketeering. A.R.S. § 13-2312(A)-(B).

A pattern of racketeering is defined as at least two acts of racketeering, including but not limited to the intentional or reckless sale of unregistered securities or real property securities and a scheme or artifice to defraud that meet the following: (i) the last act of racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering; (ii) the acts of racketeering that are alleged as the basis of the claim were related to each or to a common external organizing principal, including the affairs of an enterprise; and (iii) the acts of racketeering that are alleged as the basis of the claim were continuous or exhibited the threat of being continuous. A.R.S. § 13-2314.04 (T)(3)(a). Acts of racketeering are "related if they have the same or similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics." A.R.S. § 13-2314.04 (T)(3)(ii). A pattern of racketeering can also be shown by a single act of racketeering based on intentional or reckless fraud in the purchase or sale of securities. A.R.S. § 13-2314.04 (T)(3)(b). Here, as detailed below, Stavatti Aerospace, Mr. Beskar, and Mr. Colvin's actions meet the standard of a RICO violation under Arizona law. Stavatti Aerospace was an enterprise that was conducted or controlled, largely by Mr. Beskar and Mr. Colvin, through racketeering, including knowing and intentional participation in an artifice or scheme to defraud, intentionally selling unregistered securities, and intentionally or recklessly selling fraudulent securities.

### i. Stavatti Aerospace is an Enterprise under the RICO Statute

An enterprise is defined as any corporation, partnership, association, labor union or other legal entity or any group of persons associated in fact although not a legal entity.

A.R.S. §12-301(D)(2). Stavatti Aerospace is a Wyoming corporation, which oversees multiple Stavatti entities. *See* Ex. 68-3, at 42:16-43:2 ("And – and what you could say about, and generally speaking, with all of the Stavatti business activities, we shifted basically everything . . .. We moved it all into Stavatti Aerospace. Stavatti Aerospace of Wyoming, formed in 2019, is really our core business that we concentrate on. Everything else is – is either a generally inactive or dormant business, or it was set up for a specific purpose . . . ."); *see also* Ex. 68-3, at 8:1-3, 11:24-12:5, and 13:9-16 (describing Stavatti Immobiliare, Stavatti Niagara, and Stavatti Super Fulcrum as wholly owned subsidiaries of Stavatti Aerospace); *see also* Ex. 68-3, at 16:14-17:2 (showing Stavatti Aerospace provided funds to Stavatti Ukraine, approximately $250,000.00, for business operations, travel expenses, marketing, and government relations, etc.). These Stavatti entities do not have funds, do not have employees, do not have operating activities, and do not have assets. *See* Ex. 68-3, at 19:15-22 ("The primary asset holder is Stavatti Aerospace. . . . So the only companies in Stavatti, in the Stavatti Enterprises that have assets, are probably Stavatti Ukraine and Stavatti Aerospace of Wyoming."); *see also* Ex. 68-3, at 5:12-13 (describing Stavatti Corporation as "really just a royalty rights holder"); *see also* Ex. 68-3, at 6:16-24, 8:22-23, 10:15-16, and 15:16-18 (showing that most of the Stavatti entities do not have employees or contractors, other than Mr. Beskar as CEO, aside from Stavatti Ukraine); *see also* Ex. 68-3, at 3:10-12, 7:24-25, 9:7-11, 14:17-20 (showing that the Stavatti entities have little to no operating activities and are inactive companies), and Ex. 68-3, at 18:4-6, 18:13-14, 18:18-24, 19:3-14 (showing that only Stavatti Ukraine, Stavatti Corporation, and Stavatti Industries received revenue, at times, in no more than $500,000.00 annually). Here, it is clear the other Stavatti entities are a corporation, partnership, consisting of a group of persons that act with a similar purpose and is therefore an enterprise.

### ii. Stavatti Aerospace Intentionally Sold Unregistered Securities

Stavatti Aerospace, Mr. Colvin, and Mr. Beskar engaged in the selling of unregistered securities to Mr. Dimitrov and their conduct in doing so was either intentional or reckless as a matter of law. In Arizona, a security includes "any note, . . . investment contract, . . . or . . . guarantee of . . . any of the foregoing." A.R.S. § 44-1801.

In Arizona, the intentional or reckless sale of an unregistered security is an offense that can show a pattern of racketeering. *See* A.R.S. § 13-2301(4). Under A.R.S. § 44-1841(A), securities cannot be sold unless they have been registered, except for securities exempted under §§ 44-1843 or 44-1843.01, or securities sold in exempt transactions under § 44-1844. *See State v. Tober*, 173 Ariz. 211, 213, 841 P.2d 206, 208 (Ariz. 1992). A security for purposes of § 44-1841(A) is defined broadly. *See MacCallum v. Perkinson*, 185 Ariz. 179, 913 P.2d 1097, 1103 (Ariz. App. 1996). It is clear from the statute the definition of a "security" includes "any note" as a security. A.R.S. § 44-1801. Therefore, the Promissory Note is a security for purposes of Arizona's registration statute.

On February 15, 2022, Mr. Colvin sent an email to Mr. Beskar outlining the structure of impending funding and agreements to be generated around that time, including the proposal that a "5x PROMISSORY NOTE to Investors" be generated. *See* Email from Mr. Colvin to Mr. Beskar (Feb 15, 2022), attached as **Exhibit 68-13**, at 2. Mr. Colvin provided the Promissory Note for Plaintiff to sign, which listed a principal sum of one million dollars to be repaid on or before May 1, 2022 and a 500% return to be paid within forty-eight (48) months. *See* Ex. 68-2, at 7, at No. 1. Mr. Beskar approved the proposal stating, "Thank you. This looks good to me." *See* Email from Mr. Beskar to Mr. Colvin (Feb. 15, 2022), attached as **Exhibit 68-14**, at 2. While this on its own can demonstrate the recklessness of the security that was entered between Stavatti Aerospace and Mr. Dimitrov, during Mr. Beskar's deposition, he further explained:

> If I received that e-mail today from Brian, he would have gotten a five-paragraph dissertation on 10 x will not work. So the probability that I responded in that matter is close to zero. . . . I -- I have -- I don't remember responding in that manner. . . . Furthermore, I think an email like that with a proposed statement of that would have been sent not just by me. It would've been copied to our board of directors and other key people, including Bill Mcewen and Bill Mcewen's feedback probably would have been you know: You've got to the change these terms, Brian. . . . I don't recall replying in that manner, and it's irregular.

*See* Ex. 68-3, at 33:5-8, 10-11, 13-18 and 21-22. To date, the Defendants have not provided any evidence that the February 15, 2022 email did not come from Mr. Beskar approving the reckless terms, that Stavatti Aerospace would not meet.

Mr. Dimitrov provided the funds to Mr. Chacon, who delivered the funds to Mr. Colvin. *See* Defendant Rudy Chacon's Responses to Plaintiff's First Set of RFA's (Jan. 13, 2025), attached as **Exhibit 68-15**, at 2-3, No. 1. At that time, Mr. Colvin deposited the funds into Stavatti Aerospace's bank accounts. *See* Deposition of Rudy Chacon (Jan. 21, 2025), attached as **Exhibit 68-16**, at 3:23-4:10 (showing Mr. Chacon was with Mr. Colvin when the funds provided by Mr. Dimitrov were deposited into Stavatti Aerospace and Stavatti UAVS' bank accounts); *see also* Stavatti Aerospace Bank Statements for Account Ending in 7316 (Nov. 2021 through May 2022), attached as **Exhibit 68-17**, at 3. Additionally, Stavatti Aerospace did not register the sale of any security until on or around November 2024, when Stavatti Aerospace registered a Rule 506D Regulation (B) offering with the Securities and Exchange Commission. *See* Ex. 68-3, at 21:13-22:13. Therefore, Mr. Dimitrov requests this Court find that Stavatti Aerospace, Mr. Beskar and Mr. Colvin intentionally sold an unregistered security, the Promissory Note, to Mr. Dimitrov[5].

---

[5] Mr. Dimitrov also asserts that Mr. Colvin and Mr. Beskar violated A.R.S. § 44-1842 for receiving a ten (10) percent finder's fee, in the amount of $100,000.00, of Mr. Dimitrov's Principal as an unregistered broker dealer. *See* Deposition of Brian Colvin (Mar. 6, 2025), attached hereto as **Exhibit 68-18**, at 3:21-4:2 and 5:8-12. During Mr. Colvin's deposition, he admitted that he received a finder's fee for Mr. Dimitrov's loan and also admitted that

### iii.   Stavatti Aerospace is an Enterprise with a Scheme or Artifice to Defraud

The uncontroverted evidence demonstrates as a matter of law, Stavatti Aerospace, Mr. Beskar, and Mr. Colvin were engaged in illegal activities utilizing a scheme or artifice to defraud Mr. Dimitrov. A scheme or artifice to defraud "includes a scheme or artifice to deprive a person of the intangible right of honest services." A.R.S. § 13-2310(E). To prove the predicate offense of a scheme or artifice to defraud for a RICO claim, a party must also prove that 1) the defendant knowingly and intentionally participated in the scheme or artifice; and 2) it was a scheme for obtaining money or property by means of "false or false pretenses, representations or promises." *See* A.R.S. § 13-2301(4)(xx); *see also State v. Haas*, 138 Ariz. 413, 419, 675 P.2d 673, 679 (Ariz. 1983). A person who knowingly obtains a benefit by means of "false or fraudulent pretenses, representations, promises or material omissions" for purposes of a scheme or artifice to defraud is guilty of a class 2 felony. *See* A.R.S. § 13-2310(A). Stavatti Aerospace, an enterprise, through Mr. Beskar and Mr. Colvin, knowingly and intentionally, created and conducted an artifice or scheme of a sham aerospace company to convince laypeople, such as Mr. Dimitrov, to provide funds for unfunded and non-operating entities.

### a.   Stavatti Aerospace, Mr. Beskar, and Mr. Colvin Knowingly and Intentionally Participated in the Scheme or Artifice to Defraud

A scheme or artifice can be defined as a "plan, device, or trick, to perpetuate a fraud. *See State v. Haas*, 138 Ariz. 413, 422, 675 P.2d 673, 683 (Ariz. 1983) (citing *State v. Stewart*, 118 Ariz. 281, 283, 576 P.2d 140, 142 (Ariz. App. 1978) (internal citation

---

he was not a registered broker-dealer with the Securities and Exchange Commission. *See* Ex. 68-18, at 3:21-4:2; *see also* Ex. 68-3, at 27:22-28:2. Mr. Colvin has not produced any evidence that he has a securities license issued in any jurisdiction within the United States. Mr. Beskar also testified that he was not a registered broker-dealer. *See* Ex. 68-3, at 27:22-28:4.

omitted)). An act is fraudulent when it is "reasonably calculated to *deceive* persons of ordinary prudence and comprehension." *Id.*, at 423 (quoting *U.S. v. Netterville*, 553 F.2d 903, 909 (5th Cir. 1977) (internal citation omitted)). The "fraudulent aspect of the scheme to 'defraud' is measured by a nontechnical standard" to encompass conduct lacking in "fundamental honesty [and] fair play . . . in the general and business life of members of society." *Id.*, at 424 (quoting *Blachly v. U.S.*, 380 F.2d 665, 671 (5th Cir. 1967)). A conclusion by the jury that even if a "defendant had no actual knowledge of the fraud," but "was aware of the high probability that the scheme was fraudulent and deliberately shut his eyes to avoid learning the truth" justifies the "ultimate inference of knowing participation." *Id.*, at, 420.

In *Haas*, the defendant was convicted of five counts involving a fraudulent scheme and artifice based on his role as a real estate agent or broker for entities purchasing properties. *See Haas*, 138 Ariz. at 416-17. Haas would send offers that were "fairly uniform in nature," except the offers did not contain a security device for a deferred balance on the purchase price, such as a mortgage or other security device giving the seller a lien on the property being sold, and instead used terms with no specific meaning and not commonly used in the real estate industry. *Id.*, at 417. For example, the offer provided that the deferred balance would be secured by a "money assignment," which "consisted of an assignment from buyer to seller of the buyer's interest in unsecured promissory notes made by [third party] or its employees to the buyer." *Id.*, at 417. These notes were a sham and did not represent a valid indebtedness because the payor had never received consideration for the execution of the note. *See id*. The Arizona Supreme Court ultimately held the evidence supported a finding that Haas willfully and knowingly participated in the scheme because he knew of the language in the offer, he knew the language used to describe the security devices did not reserve a lien in favor of the seller, and he was aware

that real estate brokers and agents were not taught the meaning of the terms he used because he taught at real estate schools. *Id.*, at 419-20.

Stavatti Aerospace, Mr. Beskar, and Mr. Colvin controlled and conducted the scheme or artifice to defraud laypeople, including Mr. Dimitrov, into providing funds for an enterprise that was not an aerospace company, but a sham enterprise. As the CEO of Stavatti Aerospace, and CEO of the other Stavatti Defendant's, Mr. Beskar singlehandedly created the Stavatti entities and the Stavatti website, which includes false pretenses, representations, promises, or omissions to induce laypeople into investing in Stavatti Aerospace. *See* Ex. 68-3, at 23:13-24:25. In fact, the only companies within the Stavatti entities that have assets are Stavatti Aerospace, Stavatti Ukraine and Stavatti Corporation, which mainly consists of intellectual property, machinery, equipment, and electronics. *See* Ex. 68-3, at 19:18-22 and 20:5-11. The other companies have no assets or operations. *See supra*, at 8:7-18 (showing that a majority of the Stavatti entities do not have assets or operations, and the few Stavatti entities that do have assets have very few and are limited in operations and revenue). Similarly, Mr. Colvin was hired as the Vice President in part to raise funds for Stavatti Aerospace. *See* Ex. 68-6, at 2. Mr. Colvin also drafted and presented the Promissory Note to potential investors on behalf of Stavatti Aerospace, with the approval of Mr. Beskar. *See* Exs. 68-13, at 2, and 68-14, at 2. Even if Mr. Colvin had no actual knowledge of the fraudulent scheme perpetuated by Stavatti Aerospace and Mr. Beskar, no aircraft was ever built during his employment, therefore Mr. Colvin knew or should have known the scheme was fraudulent and he avoided learning the truth. *Haas*, 138 Ariz. at 420.

   b. **Stavatti Aerospace, Mr. Beskar and Mr. Colvin's Scheme was for the Purpose of Obtaining Money by means of False Pretenses, Representations, Promises, or Omissions**

The Arizona Supreme Court has held that when Arizona adopted the RICO statute from the federal statute, it also intended to adopt prior interpretations of the federal statute, which established that fraudulent representations can be made by concealment and half-truths. *See Haas*, 138 Ariz. at 422. The Arizona Supreme Court also held it was "legitimate to assume that the legislature intended a broad proscription of fraud" because "when the statute became law in 1976 it was, from the beginning, thought to be a law which 'encompasses a very broad range of fraudulent activities.'" *Id.* (quoting *State v. Moses*, 123 Ariz. 296, 298, 599 P.2d 252, 254 (Ariz. App. 1979)). Further, the Supreme Court found that based on an analysis of dictionary definitions and synonyms, "the plain, ordinary meaning of 'fraudulent pretense' encompasses intentional misleading by hiding or concealing the truth." *Id*. Therefore, Stavatti may be found to be knowingly and intentionally participating in a scheme or artifice to defraud by means of fraudulent pretenses or fraudulent representations if they "knowingly led [Mr. Dimitrov] to believe a state of facts which is not true. . . accomplished either by active misrepresentations, or omitting material facts which [Stavatti] knew were being misunderstood, or by stating half-truths, or by any combination of these methods." *Id*.

In their scheme to defraud, Stavatti Aerospace, Mr. Beskar, and Mr. Colvin obtained money through false pretenses, representations, promises, or omissions. Prior to signing the Promissory Note, Mr. Dimitrov was given the Stavatti website to review. *See Deposition of Valentino Dimitrov* (Jan. 22, 2025), attached as **Exhibit 68-19**, at 3:24-4:7. The website contained many representations that Stavatti is a "real" aerospace company. *See* Ex. 68-5, at 2-6. In particular, the website stated, and still states, "Stavatti generates revenues and net shareholder earnings through the design and production of major fixed wing aircraft and aerospace vehicles, like Lockheed Martin and Boeing." *See* Ex. 68-5, at 2, *compare to* Website Screenshot (July 29, 2025), attached as **Exhibit 68-20**, at 2. The

website includes a page entitled "Stavatti Approach" which details business models, core values, and organization information. *See* Ex. 68-5, at 2-6. Throughout the page, there is reference to the business operations, importantly portraying Stavatti as a "defense articles producer." *See* Ex. 68-5, at 4. The page also details the employees and teams that work at Stavatti. *See* Ex. 68-5, at 4-5. However, in reality, Stavatti Aerospace has never manufactured an aircraft and it does not have any employees. *See* Ex. 68-3, at 4:23-25 and 39:6-10 (showing that Stavatti Aerospace did not have any employees based on the definition that "an employee is somebody who's a wage earner at the organization"); *see also* Ex 68-18,  at 6:5-7 (stating that Mr. Colvin had not seen Stavatti manufacture an aircraft during his employment); *see also* Deposition of John Simon (Jan. 21, 2025), attached as **Exhibit 68-21**, at 3:17-38:2 and 5:19-24 (showing that while a deposit may have been made for an aircraft or there were talks on large purchase agreements, none of the opportunities have ever manifested, and therefore no aircraft has been manufactured by Stavatti Aerospace). Aside from being a false representation, Stavatti Aerospace, Mr. Beskar, and Mr. Colvin omitted to tell Mr. Dimitrov that Stavatti Aerospace had never manufactured an aircraft. *See* Declaration of V. Dimitrov, attached as **Exhibit 68-22,** at 3, ¶ 4.

Furthermore, Stavatti Aerospace falsely promised to Mr. Dimitrov that his Principal would be repaid by May 1, 2022, when they omitted to tell Mr. Dimitrov that his Principal repayment was contingent on a separate funding of the company. *See* Ex. 68-22, at 3, ¶ 5. Additionally, Stavatti Aerospace never told Mr. Dimitrov they were a struggling company with limited funds, and multiple owed debts, who would not be able to repay the terms of the Promissory Note without the third party funding. *See* Ex. 68-22, at 3, ¶ 6 ; *see also* Ex. 68-17, at 4, 8, 12, 16 and 32 (showing the limited funds Stavatti Aerospace received prior to Mr. Dimitrov's loan and following his loan through the

repayment date of the Principal, May 1, 2022); *see also* Ex. 68-10, at 2-4 (showing that Stavatti Aerospace received no income other than from rent, with the exception of 2022, where Stavatti Aerospace received a minimal amount of $5,100.00 from receipts or sales); *see also* Ex. 68-3, at 37:24-38:2; *see also* Stavatti Aerospace Debt (Dec. 10, 2022), attached hereto as **Exhibit 68-23**, at 2, *see also* Stavatti Bank Account Ending in 1733 (March 2022), attached hereto as **Exhibit 68-24**, at 5-6 (showing Stavatti Aerospace's payments to their debts including, but not limited to, $14,625.00 to Bonadio & Co., $85,211.00 to Mollenberg & Betz, and $118,204.00 to R.P. Oak Hill Building Co. Inc, immediately following Mr. Dimitrov's loan); *see also* Documentation of Personal Loans from Robert Sugarman to Stavatti Aerospace, attached hereto as **Exhibit 68-25**, at 2 (showing that Stavatti Aerospace was relying on Mr. Sugarman, Chief Scientist & Director of Human Factors, 2018 to 2024 to provide funds for basic bills, and therefore needed a way to obtain additional funds). Further, Mr. Beskar admitted that based on the email from Mr. Colvin on February 15, 2022, his accurate response would have been substantially different. *See* Ex. 68-14, at 2 ("Thank you. This looks good to me."); *compare to* Ex. 68-3, at 33:5-8, 10-11, 13-22. The Stavatti Defendants and Mr. Beskar have not provided any evidence that the February 15, 2022 email did not come from Mr. Beskar or that he countered the terms in any way.

By approving the terms of the Promissory Note to be provided to Mr. Dimitrov, Mr. Beskar misrepresented the terms of the Note and Stavatti Aerospace's ability to return Mr. Dimitrov's Principal and Guaranteed Return. In fact, Mr. Beskar's statement that Bill Mcewen, Stavatti Aerospace's Chief Operating Officer, would've stated, "You've got to change these terms, Brian," indicates that the terms of the Promissory Note were far from terms that Stavatti Aerospace could comply with or were reasonable. *See* Ex. 68-3, at 33:17-18. Therefore, Mr. Dimitrov requests this Court find that Stavatti Aerospace, Mr.

Beskar, and Mr. Colvin controlled and conducted Stavatti Aerospace, an enterprise, through an artifice or scheme to defraud with the purpose of obtaining money through false representations, promises, and omissions.

### iv.    Stavatti Aerospace, Mr. Beskar and Mr. Colvin Intentionally or Recklessly Fraudulently Sold Securities

While Stavatti, Mr. Beskar, and Mr. Colvin have not been convicted of securities fraud, their recklessness in the fraudulent selling of a security to Mr. Dimitrov is further evidence of the pattern of racketeering and Mr. Dimitrov is not relying solely on securities fraud as a basis for his RICO claim. In Arizona,

> It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under s 44-1843 and including transactions exempted under § 44-1844, directly or indirectly to do any of the following:
>
> 1. Employ any device, scheme or artifice to defraud.
>
> 2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> 3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44-1991. "The requirement of materiality is satisfied by 'a showing of substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations of a reasonable buyer.'" *Hirsch v. Arizona Corp. Com'n*, 237 Ariz. 456, 464, ¶ 27, 352 P.3d 925, 933 (Ariz. App. 2015) (citing *Trimble v. Am. Sav. Life Ins. Co.*, 152 Ariz. 548, 553, 733 P.2d 1131 (Ariz. App. 1986)) (internal quotations omitted). Although specific disclosures regarding commissions and finders' fees are not per se required, omitted information that would have significance in

a reasonable buyer's deliberations is misleading and thus violates A.R.S. § 44–1991(A)(2); *see also Shorey v. Arizona Corp. Comm'n*, 238 Ariz. 253, 259, 359 P.3d 997, 1003 (Ariz. App. 2015). As stated above, the acts of Stavatti Aerospace, Mr. Beskar and Mr. Colvin in making representations and omitting information prior to Mr. Dimitrov's signing of the Promissory Note, separately committed at the bare minimum reckless securities fraud. *See supra,* at 15:3-17:10 (showing the representations made by Stavatti Aerospace on their website, and the representations made by Stavatti Aerospace, Mr. Beskar and Mr. Colvin made by presenting the Promissory Note to Mr. Dimitrov with terms that could not be repaid). While Stavatti Aerospace, Mr. Beskar and Mr. Colvin made representations that Stavatti Aerospace was an aerospace company, the record shows that the company never produced an aircraft and the company received little to no income, aside from rent, and could not have possibly repaid Mr. Dimitrov's Principal according to the terms of the Promissory Note without the funding from DelMorgan. *See supra*, at 15:17-16:1 and 16:11-21. Mr. Dimitrov was never informed, and it was not written in the Promissory Note, that if Stavatti Aerospace did not receive funding from DelMorgan, then they would not be able to repay the Principal or allocate an extension time for repayment. *See* Ex. 68-22 at 3, ¶ 7; *see also* Ex. 68-1, at 2-3. Stavatti Aerospace knew, or should have known, that Mr. Dimitrov relied on these representations and omissions when issuing his loan, and would not have provided funds if he knew of the finances and operating activities of the company.

<strong>v.    <u>Mr. Dimitrov was Damaged by Stavatti Aerospace,<br>Mr. Beskar, and Mr. Colvin's Control and Conduct<br>of Pattern of Racketeering</u></strong>

Under A.R.S. § 13-2314.04, a party must sustain "reasonably foreseeable injury to his person, business or property" by a violation of A.R.S. § 13-2312 to recover damages. *See* A.R.S. § 13-2314.04(A). A party injured by a pattern of racketeering under A.R.S. §

13-2312 can also seek relief under A.R.S. § 13-2314(A) from individuals conducting an illegal enterprise through racketeering. *See Hannosh v. Segal*, 235 Ariz. 108, 112, 328 P.3d 1049, 1053, ¶ 8 (Ariz. App. 2014). It is clear from the above that Mr. Dimitrov has been injured by Stavatti Aerospace, Mr. Beskar, and Mr. Colvin's control and conduct of a pattern of racketeering in the amount of at least his principal, $1,000,000, including interest of $210,821.92. If Stavatti Aerospace, Mr. Beskar, and Mr. Colvin controlled and conducted a legitimate scheme to produce aircrafts, Mr. Dimitrov would have received his Principal under the terms of the Promissory Note. Under A.R.S. § 13-2314.04(A), Mr. Dimitrov is entitled to treble damages, costs, and his reasonable attorneys' fees for Stavatti Aerospace, Mr. Beskar, and Mr. Colvin's violation of A.R.S. § 13-2312. *See* A.R.S. § 13-2314.04 (A). Therefore, Mr. Dimitrov respectfully requests this Court enter damages against Stavatti Aerospace, Mr. Beskar, and Mr. Colvin for violation of A.R.S. § 13-2314.04(A), including the Principal with pre-judgment interest, treble damages, reasonable attorneys' fees and costs.

### III.    CONCLUSION

For the foregoing reasons, Mr. Dimitrov respectfully requests the Court grant summary judgment on his Breach of Contract and A.R.S. § 13-2314.04 claims and enter a judgment against Stavatti Aerospace, Mr. Beskar, and Mr. Colvin for the Principal of the Promissory Note and treble damages pursuant to A.R.S. § 13-2314.04(A). Mr. Dimitrov also seeks an award of his reasonable attorneys' fees pursuant to A.R.S. §§ 12-341, 12-341.01, 13-2314.04 and pre-judgment interest pursuant to A.R.S. § 44-1201.

**DATED** this 30th day of July 2022.

**ENARA LAW PLLC**


By: */s/ Ross. P. Meyer*
    Ross P. Meyer
    Morgan E. Silva
    Attorneys for Plaintiff

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on the 30th day of July 2025, a copy of the foregoing was

3

transmitted electronically to the CM/ECF filing system for filing and transmittal along

4

with copies transmitted to all parties and counsel of record via the CM/ECF system.

5

By:  *Tammy Spears*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

1.      Promissory Note between Stavatti Aerospace and Valentino Dimitrov.

2.      Plaintiff's Requests for Admission to Defendant Brian Colvin.

3.      Deposition of Defendant Chrisopher Beskar.

4.      Stavatti Aerospace Ltd.'s, a Wyoming Corporation, Responses to Plaintiff First Set of Requests for Admission.

5.      Stavatti Aerospace's Stavatti Approach Website (Jan. 6, 2023).

6.      Letter of Representation from Mr. Beskar to Mr. Colvin.

7.      Kennedy Loan Funding Financing Request.

8.      Mortgage.

9.      Promissory Note between Stavatti Aerospace and David Kim.

10.     Tax Returns (2021, 2022 and 2023).

11.     Loan Agreement between Stavatti Aerospace and Robert Sugarman.

12.     Letter from Mr. Beskar to George Chebat.

13.     Email from Mr. Colvin to Mr. Beskar.

14.     Email from Mr. Beskar to Mr. Colvin

15.     Defendant Rudy Chacon's Responses to Plaintiff's First set of Requests for Admission.

16.    Deposition of Defendant Rudy Chacon.

17.    Stavatti Aerospace Bank Statements for Account Ending in 7316.

18.    Deposition of Defendant Brian Colvin.

19.    Deposition of Plaintiff Valentino Dimitrov.

20.    Deposition of Defendant John Simon.

21.    Stavatti Aerospace's Stavatti Approach Website (July 29, 2025).

22.    Declaration of Valentino Dimitrov.

23.    Stavatti Aerospace Debt.

24.    Stavatti Bank Account Statement Ending in 1733.

25.    Documentation of Personal Loans from Robert Sugarman to Stavatti Aerospace.