# EXHIBIT 68-8



THIS MORTGAGE HAS BEEN APPROVED BY THE BAR ASSOCIATION OF ERIE COUNTY.
IT IS RECOMMENDED THAT ANY PERSON NAMED IN THIS
MORTGAGE CONSULT HIS/HER ATTORNEY BEFORE SIGNING.

BAR ASSOCIATION OF ERIE COUNTY

# MORTGAGE

1. **WORDS USED OFTEN IN THIS DOCUMENT.**
   (A) **"Mortgage"** – This document which is dated ___7 September 2021___ will be called the "Mortgage."
   (B) **"Borrower"** – ___Stavatti Aerospace, Ltd___
   sometimes will be called the "Borrower" and sometimes simply "I" or "me." Borrower's address is the Property Address unless otherwise stated in this paragraph. ___9400 Porter Road, Niagara Falls, NY, 14304___
   (C) **"Note Holder"** – ___Dr. David Kim___
   or anyone who takes this Mortgage by transfer will be called "Note Holder." Note Holder's address is _____
   (D) **"Note"** – The note signed by Borrower and dated ___7 September 2021___ will be called the "Note."
   The Note shows that I owe Note Holder ___Six Hundred and Fifty Thousand___ Dollars (U.S. $ ___650,000.00___ ) plus interest. I have promised to pay this debt in full by ___6 December 2021 as may be extended as set forth in the Note.___
   (E) **"Property"** – The property that is described below in this section entitled "Description of the Property" will be called the "Property."

2. **BORROWER'S TRANSFER TO NOTE HOLDER OF RIGHTS IN THE PROPERTY.**
   I hereby mortgage the Property to Note Holder subject to the terms of this Mortgage. By signing this Mortgage I am giving Note Holder the rights contained in this Mortgage and also the rights that the law gives to Note Holders who hold mortgages on real property. I am doing this to protect Note Holder from possible losses that might result if I fail to:
   (A) Pay all the amounts that I owe Note Holder under the Note;
   (B) Pay, with interest, any amounts that Note Holder may advance under this Mortgage to protect the value of the Property and Note Holder's rights in the Property; and
   (C) Keep my other promises and agreements under this Mortgage and associated loan documents.

3. **DESCRIPTION OF THE PROPERTY.**
   I give Note Holder rights in the Property described in A through I below:
   (A) The Property address is ___9400 Porter Road, Niagara Falls, NY, 14304___ "Property Address".
   This Property is in ___Niagara___ County. It has the following legal description:

   See Schedule A

**ORIGINAL RECORDED**

SEP 17 2021

JOSEPH A. JASTRZEMSKI
NIAGARA COUNTY CLERK

2021519729

Joseph A. Jastrzemski, Niagara County Clerk

**2021-19531**
09/17/2021  12:42:06 PM
6 Pages
MORTGAGE

Clerk: TH

This Property is or will be:
☐ principally improved by a one or two family residence.
☐ improved by three to six residential dwelling units each with their own separate cooking facilities.
☒ vacant land or improved by a commercial building with no residential dwelling units.
☐ other: _____

This Mortgage:
☐ is a purchase money mortgage. This Mortgage is given to secure part of the purchase price of the Property and is intended to be recorded at the same time as the deed to the Borrowers.

- **(E)** All timber, mineral, oil and gas rights and profits, water rights and stock that I own and that are part of the Property.
- **(F)** All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property.
- **(G)** All fixtures that are now or in the future will be on the Property.
- **(H)** All of the rights and property described in Subparagraph B through G of this Paragraph that I acquire in the future; and
- **(I)** All replacements of or additions to the Property described in Subparagraphs B through H of this Paragraph.

4. **BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY.**

   I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Note Holder; and (C) there are no outstanding claims or charges against the Property except for those which are of public record. I give a warranty of title to the Note Holder. I will be responsible to Note Holder for any losses which Note Holder suffers because someone other than myself has some rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

5. **BORROWER'S PROMISE TO PAY.**

   I will pay to Note Holder, on time, principal and interest due under the Note and any prepayment and other charges under the Note.

6. **BORROWER TO EXHIBIT TAX RECEIPTS.**

   Upon request, I will present to the Note Holder within ten (10) days after written notice paid current tax bills and water assessments affecting the Property.

7. **APPLICATION OF BORROWER'S PAYMENTS.**

   Note Holder will apply my payments as provided in the Note.

8. **BORROWER'S OBLIGATION TO PAY TAXES, CHARGES, ASSESSMENTS AND CLAIMS.**

   I will pay, when due, all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. Unless previously recognized by Borrower and Note Holder in writing, if Note Holder determines that any part of the Property is subject to a superior lien, Note Holder may give Borrower notice identifying the superior lien. Borrower shall pay or satisfy the lien within thirty (30) days of the giving of notice and if this is not done it shall be considered a default under the terms of the Note and Mortgage.

9. **BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.**
   - **(A)** I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Note Holder requires coverage. The insurance must be in the amounts and for the periods of time required by Note Holder. Note Holder may not require me to obtain hazard insurance in an amount greater than the replacement value of the improvements of the Property. In no event shall the coverage be less than the amount of this Mortgage when first recorded. I may choose the insurance company, but my choice is subject to Note Holder's approval. Note Holder may not refuse my choice unless the refusal is reasonable.
   - **(B)** All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Note Holder. The form of all policies and renewals must be acceptable to Note Holder. Note Holder will have the right to hold the policies and renewals.
   - **(C)** If there is a loss or damage to the Property, I will promptly notify the insurance company and Note Holder. If I do not promptly prove to the insurance company that the loss or damage occurred, then Note Holder may do so. The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (i) it is not economically feasible to make the repairs or restoration; or (ii) the use of the proceeds for that purpose would lessen the protection given to Note Holder by this Mortgage; or (iii) Note Holder and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Note Holder's protection under this Mortgage, then the proceeds will be used to reduce the amount that I owe to Note Holder under the Note and under this Mortgage. Any decision as to whether or not it is economically possible to make repairs or restorations to the Property shall be made solely by the Note Holder, whose decision shall be conclusive. I hereby assign all rights I have under any insurance policy, together with my entitlement to any insurance proceeds thereunder, to the Note Holder, upon foreclosure of this Mortgage. Each insurance company is hereby authorized and directed to make payment for any loss directly to the Note Holder instead of to me and the Note Holder jointly. Unless Note Holder and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the payments referred to in the Note or this Mortgage or change the amount of such installments. If any of the proceeds remain after the amount that I owe to Note Holder has been paid in full, the remaining proceeds will be paid to me.

10. **BORROWER'S OBLIGATION TO MAINTAIN PROPERTY.**

    I will keep the Property in good repair. I will not myself and will not allow others to destroy, damage or substantially change the Property without Note Holder's prior written consent and I will not (i) allow the Property to deteriorate or (ii) use or store hazardous substances at the Property except as permitted by law. I will not change the use of the Property or seek a rezoning of the Property.

12. **AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY.**
    (A) A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Note Holder my right: (i) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (ii) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Note Holder.
    (B) If all of the Property is taken, the proceeds will be used to reduce the amount that I owe to Note Holder under the Note and under this Mortgage. If any of the proceeds remain after the amount that I owe to Note Holder has been paid in full, the remaining proceeds will be paid to me. Unless Note Holder and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Note Holder will be reduced only by the amount of proceeds multiplied by the following fraction: (i) the total amount of the sums secured immediately before the taking, divided by (ii) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.
    (C) If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Note Holder stating that a governmental authority has offered to make a payment or to settle a claim for damages, Note Holder has the authority to accept payment and to settle a claim for damages and collect the proceeds. Note Holder may then use the proceeds to repair or restore the Property or reduce the sums secured. The thirty (30) day period will begin when the notice is given.
    (D) If any proceeds are used to reduce the amount of principal which I owe to Note Holder under the Note, that use will not delay the due date or change the amount of any installment payment due under the Note or this Mortgage. However, Note Holder and I may agree in writing to those delays or changes.

13. **NOTICES REQUIRED UNDER THIS MORTGAGE.**
    Any notice that must be given to me under this Mortgage and for purposes of service of process in any foreclosure proceeding will be given as provided in the Loan Agreement.

    **LAW THAT GOVERNS THIS MORTGAGE.**
    This Mortgage is governed by New York State Law.

14. 
    **BORROWER'S COPY.**
    I acknowledge receipt of one conformed copy of the Note and of this Mortgage.

15. 

16. **AGREEMENTS ABOUT NOTE HOLDER S RIGHT IF THE PROPERTY IS SOLD OR TRANSFERRED.**
    Note Holder may require immediate payment in full of all sums secured by this Mortgage if either the legal or equitable title of the Property is transferred without Note Holder s prior written permission. Note Holder also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. If the Note Holder requires immediate payment in full under this paragraph, Note Holder shall give Borrower a notice which states this requirement. The notice shall provide a period of not less than fifteen (15) days from the date the notice is mailed or delivered to me within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to make the required payment during that period, Note Holder may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

17. **NOTE HOLDER S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENT.**
    (A) If I fail to keep any promise or agreement made in this Mortgage within any applicable cure period, including the promises to pay when due the amounts I owe to Note Holder, or if I default in any of the conditions and covenants of the Note, Mortgage or any other mortgage which is a lien against the Property within any applicable cure period, then the Note Holder may demand the full amount of the indebtedness then due by requiring payment in full. If Note Holder so declares, Note Holder may (i) bring a lawsuit on the Note to seek enforcement of the debt, or (ii) bring a foreclosure action and sell the Property in one or more parcels to enforce the debt or (iii) seek any other remedy provided by law. If applicable, Note Holder may seek a deficiency judgment against me should the Property not bring sufficient funds at foreclosure sale to satisfy the debt due to Note Holder. If applicable, Note Holder shall also have the right to sell the Property pursuant to Article 14 of the New York Real Property Actions and Proceedings Law.
    (B) If I am in default, I agree to pay all costs and disbursements incurred by Note Holder, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. These costs and disbursements may include, but are not limited to, appraisals, broker s price opinions, property inspections and property maintenance, in addition to customary foreclosure disbursements. I also agree to pay reasonable attorney s fees.
    (C) If I fail to pay all taxes, assessments and any other charges and fines that may be imposed on the Property or any required insurance premiums when due, Note Holder may in its discretion require the establishment of a tax and insurance escrow funded by the Borrower in a manner reasonably acceptable to Note Holder.

18. **RECEIVER.**
    In any lawsuit for foreclosure and sale, Note Holder will have the right to have a Receiver appointed by a Court without first giving notice to me and without regard to the value of the Property.

19. **WRITTEN STATEMENT.**
    Within ten (10) days of the mailing or delivery of written request, I will furnish to Note Holder a written statement duly acknowledged of the amount then secured by this Mortgage and whether any offsets against the amount secured by this Mortgage or any defenses to the enforcement of the Note and/or this Mortgage exist.

20. **ASSIGNMENT OF LEASES AND RENTALS.**
    In the event of default, I hereby assign to the Note Holder all existing and future leases, rents, issues and profits

21. **AGREEMENTS ABOUT NEW YORK LIEN LAW.**
    I will receive all amounts lent to me by Note Holder subject to the trust fund provisions of Section 13 of the New York Lien Law.

22. **OBLIGATIONS OF PERSONS UNDER THIS MORTGAGE.**
    If more than one person signs this Mortgage, each person is fully and personally obligated to keep all the promises made in this Mortgage.

23. **FURTHER ASSURANCES.**
    Upon request of the Note Holder, I will execute, acknowledge and deliver to Note Holder any supplemental instrument Note Holder may reasonably request in order to accomplish the intended purpose of this Mortgage.

By signing below, I accept and agree to the promises and agreements contained in Paragraph 1 through 22 of this Mortgage and in any rider(s) signed by me and recorded with it.

_____[signature]_____ Borrower
Stavatti Aerospace Ltd
CEO

_____[signature: Christopher Robin Beskar]_____ Borrower

_____ Borrower

_____ Borrower

USE WHEN EXECUTED WITHIN THE STATE OF NEW YORK

STATE OF NEW YORK       :
                        SS:
COUNTY OF_____     :

On the_____ day of_____ in the year_____ before me, the undersigned a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

STATE OF NEW YORK       :
                        SS:
COUNTY OF_____     :

On the_____ day of_____ in the year_____ before me, the undersigned a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

USE WHEN EXECUTED OUTSIDE OF NEW YORK STATE

STATE OF  CALIFORNIA :
                        SS:
COUNTY OF  LOS ANGELES :

On the  07  day of  September  in the year  2021  before me, the undersigned, personally appeared  Christopher Robin Beskar  , personally known to me or proved to me on the basis of satisfactory evidence to the be individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the  Los Angeles, CA  .
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken.)

Exhibit A

## LEGAL DESCRIPTION OF PROPERTY

**ALL THAT TRACT OR PARCEL OF LAND**, situate in the Town of Niagara, County of Niagara and State of New York, being part of Lot 2, Township 13, Range 9 of the Holland Land Company's Survey, bounded and described as follows:

**BEGINNING** at the point of intersection of the northeast line of Porter Road with the west line of Lot 2; thence northerly along the west line of Lot 2, a distance of 526.83 feet to the northwest corner of lands acquired by the United States of America by Judgment recorded in Liber 674 of Deeds at page 492; thence easterly at an interior angle of 90° 00' 03" along the north line of said United States of America lands, a distance of 858.37 feet to a point; thence southerly at an interior angle of 89° 59' 57", a distance of 563.00 feet to an angle point; thence easterly at an exterior angle of 89° 59' 57", a distance of 191.63 feet to an angle point; thence southerly at an interior angle of 89° 59' 57", a distance of 359.90 feet to a point in the northeast line of Porter Road; thence northwesterly along the northeast line of Porter Road along an arc to the right having a radius of 2,815 feet, a distance of 219.73 feet, the chord bearing of which is North 71° 37' 11" West, a chord distance of 219.68 feet to a point; thence northwesterly along the northeast line of Porter Road, a distance of 902.68 feet to the point or place of beginning.