# EXHIBIT 68-18



```
              IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF ARIZONA

  Valentino Dimitrov,                )
  individually and on behalf of      )
  all others similarly situated,     )
                                     )
                 Plaintiffs,         )
                                     )Case No.:
              vs.                    )2:23-CV- 00226-PHX-DJH
                                     )
  Stavatti Aerospace, Ltd, a         )
  Minnesota corporation;             )
  Stavatti Aerospace, Ltd, a         )
  Wyoming corporation; Stavatti      )
  Corporation, a Minnesota           )   DEPOSITION OF
  corporation; Stavatti              )    BRIAN COLVIN
  Immobiliare, Ltd, a Wyoming        )
  corporation; Stavatti              )
  Industries, Ltd, a Wyoming         )   March 6, 2025
  Corporation; Stavatti Niagara,     )     9:07 a.m.
  Ltd, a New York corporation;       )
  Stavatti Super Fulcrum, Ltd, a     )
  Wyoming corporation; Stavatti      )
  Ukraine, a Ukrainian business      )
  entity; Stavatti Heavy             )
  Industries, Ltd, a Hawaii          )
  Corporation; Christopher           )
  Beskar and Maja Beskar,            )
  husband and wife; Brian Colvin     )
  and Corrina Colvin, husband        )
  and wife; John Simon and Jean      )
  Simon, husband and wife;           )
  William Mcewen and Patricia        )
  Mcewen, husband and wife; Rudy     )
  Chacon and Jane Doe Chacon,        )
  husband and wife; and DOES 1       )
  through 10, inclusive,             )
                                     )
                 Defendants.         )
                                     )


  REPORTED BY:
  JOVANNA ROMAN, RPR                  PREPARED FOR:
  Certified Reporter                  ASCII/CONDENSED COPY
  Certificate No. 50725               (COPY)
```



**Griffin Group International**
**888.529.9990 | 602.264.2230**

```
 1   the discussion surrounding the loan with the board of
 2   directors?
 3        A.   Yes.
 4        Q.   And, to your knowledge, was there anyone else in
 5   the company that was assisting in soliciting funds?
 6        A.   That was insisting on soliciting funds?
 7        Q.   That was assisting.
 8        A.   Oh, assisting.
 9        Q.   That was also bringing in individuals to lend
10   money.
11        A.   Carl Hunking.
12        Q.   Can you spell that last name.
13        A.   I can try.  H-U-N-K-I-N-G I think.
14        Q.   Do you recall what Carl's position was with the
15   company?
16        A.   No.
17        Q.   Was he on the board of directors?
18        A.   No.
19        Q.   Was he an employee of Stavatti?
20        A.   I don't know.  I don't recall.
21        Q.   Were you ever paid a finder's fee for bringing in
22   a loan to the company?
23        A.   Ten percent was earmarked for that, yes.
24        Q.   Ten percent would go directly to you?
25        A.   Yes, but I put it towards the Stavatti UAVS to
```



1   further the development of the company, to help make the
2   company fruitful.
3       Q.   Are you a registered broker-dealer with the SEC?
4       A.   No.  I was not personally.  I didn't do anything
5   wrong.  I wasn't personally profiting from this.  It was
6   for the development of the UAVS program.
7       Q.   Did Mr. Beskar ever have discussions with the
8   individuals you presented prior to their execution of the
9   promissory note?
10      A.   No.  He didn't want the conversation.  He just
11  wanted to get the projects going and get the money
12  allocated to get the projects going because the war had --
13  basically things has elevated in Ukraine and we needed to
14  get the MIG project going.
15      Q.   So it wasn't standard practice for you to
16  introduce Mr. Beskar to any potential lender?
17      A.   No.  I was never required, never asked, no.
18  Mr. Beskar asked me on a trip back from Nevada when we were
19  trying to re -- resolve and develop funds to pay off debt
20  and to get launched, he asked me to get whatever we needed
21  to do, whatever we could pull together we needed to get it
22  going because the war was evolving.  Things were evolving
23  in Ukraine and we needed to act and get going so he cleared
24  the -- I made up the, as I said, made the note.  He -- and
25  the deck that he approved and asked me to go get money.

```
 1      A.    Yes.
 2      Q.    Do you recall around the time that that was?
 3      A.    I do not.
 4      Q.    Do you recall the amount that you deposited?
 5      A.    900,000 -- 900,000 was deposited I recall.
 6      Q.    And Mr. Dimitrov's loan was for a total of
 7   $1 million; correct?
 8      A.    Correct.  900,000 went to Stavatti Aerospace and
 9   100,000 went to the drone division to buy drone equipment.
10      Q.    Was that a part of the 10 percent fee that you
11   were allocated if you brought in lenders?
12      A.    Yes.
13            MR. ABATE:  Form.
14            THE WITNESS:  Actually as my employment
15   agreement as we agreed when I raise capital, ten percent
16   did not come to me.  It went to funding the drone division
17   and furthering the development of the -- of the drone
18   technology and drone division to be able to get contracts.
19   BY MS. SILVA:
20      Q.    Did you have access or signatory authority to any
21   Stavatti bank account?
22      A.    No.  Mr. Beskar gave me the account and I went and
23   deposited it there.
24      Q.    I'm going to share my screen and we're going to
25   enter Exhibit C.  Can you read this okay, Mr. Colvin?
```



```
                                                                  87
 1                          EXAMINATION
 2   BY MS. SILVA:
 3       Q.   I just have one follow-up real quick.
 4       A.   Okay.
 5       Q.   Mr. Colvin, in your time at Stavatti, did you ever
 6   see the company manufacture an aircraft?
 7       A.   No.
 8            MS. SILVA:  Okay.  Thank you.  Nothing
 9   further.
10            MR. DUNMIRE:  I do have one follow-up
11   question on that point.
12
13                          EXAMINATION
14   BY MR. DUNMIRE:
15       Q.   So, Brian, do you -- from your knowledge of the
16   intellectual property owned by Stavatti, that with the
17   appropriate funding they would be -- have the ability to
18   create airplanes and build airplanes?
19       A.   Absolutely, yes.
20       Q.   And that's -- that was the whole reason for being
21   at this company; correct?
22       A.   Correct.
23       Q.   All intellectual property of the planes that it
24   had designs for and then intellectual property rights to
25   and so forth?
```

```
 1  STATE OF ARIZONA        )
                            ) ss.
 2  COUNTY OF MARICOPA      )

 3          BE IT KNOWN that the foregoing proceedings were
    taken before me; that the witness before testifying was
 4  duly sworn by me to testify to the whole truth; that the
    foregoing pages are a full, true, and accurate record of
 5  the proceedings, all done to the best of my skill and
    ability; that the proceedings were taken down by me in
 6  shorthand and thereafter reduced to print under my
    direction.
 7
            I CERTIFY that I am in no way related to any of
 8  the parties hereto, nor am I in any way interested in the
    outcome hereof.
 9

10          [ ]  Review and signature was requested; any
    changes made by the witness will be attached to the
11  original transcript.
            [X]  Review and signature was waived/not
12  requested.
            [ ]  Review and signature not required.
13
            I CERTIFY that I have complied with the ethical
14  obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206
    J(1)(g)(1) and (2).
15          Dated at Phoenix, Arizona, this 2nd day of April,
    2025.
16

17
                       _____/s/Jovanna Roman_____
18                          JOVANNA ROMAN, RPR
                             Certified Reporter
19                         Arizona CR No. 50725

20            *        *        *        *        *

21          I CERTIFY that GRIFFIN GROUP INTERNATIONAL, has
    complied with the ethical obligations set forth in ACJA
22  7-206 (J)(1)(g)(1) through (6).

23
                       _____/s/Pamela A. Griffin_____
24                        GRIFFIN GROUP INTERNATIONAL
                            Registered Reporting Firm
25                          Arizona RRF No. R1005
```



**Griffin Group International**
888.529.9990 | 602.264.2230