# EXHIBIT D
## Affidavit of Christopher Beskar

# AFFIDAVIT OF CHRISTOPHER R. BESKAR

STATE OF CALIFORNIA)

COUNTY OF SAN BERNARDINO)

Christopher R. Beskar hereby deposes and states under penalty of perjury as follows:

1. I am a defendant in the case of Dimitrov vs. Stavatti et al. 23-CV-00226 and submit this affidavit to support the Stavatti Aerospace Ltd response to Plaintiff's motion for summary judgment.

2. Plaintiff has offered an email from Brian Colvin to me dated February 15, 2022 and my supposed response as evidence that I knew what terms were being presented to Plaintiff for his Promissory Note. I testified at my deposition that I did not recall that email or my response but found it most out of the ordinary and not the way I do business. A more complete response to the implication that those emails somehow prove I was aware of the terms of the Promissory Note is as follows.

Our Company is actually registered not only with the SEC through the filing of Form D but also with multiple states who we have paid registration fees to. In each state in the Union, within 15 days of our initial stock sale in a particular state we must file with the state and pay a fee. For conducting our offering in Colorado we must pay a fee of $50 while in New Jersey our fee was $750. The fee amounts vary by State and we have registered in a wide variety of states including Arizona, Arkansas, California, Colorado, Florida, Hawaii, Illinois, Iowa, Missouri, New Jersey, New York, Ohio, Oregon, Pennsylvania, Tennessee, Texas and Wisconsin. We have investors from each state and for every state we have an investor, we must register with the NASAA, an organization that provides the registration mechanism for all of the various states in the Union. This is something we are handling internally (I am conducting the filings) and we are in full compliance with SEC regulations and state "Blue Sky Laws" in support of the Regulation D Rule 506(b) offering.

I mention the forgoing because it ties directly into the Brian Colvin situation and the "original agreement" he refers to in his email Brian was first introduced to Stavatti by a mutual friend, Kjell Eriksson. Kjell has many projects of his own and he had engaged Brian as one of his principal fundraising providers. As I am friends with Kjell and had belief in his projects, his relationship with Brian helped to validate Brian's credibility in my mind and I was of the belief that he would be a good businessman to work with. What I did not realize is that Brian had been attempting to assist Kjell in fundraising for projects for years without significant success. In any case, I had forwarded Kjell a copy of our SM-29 Super Fulcrum Regulation D Rule 506 Private Placement Memorandum in January 2020. The PPM was dated January 24th and I sent to Kjell prior to circulating it to other investors as Kjell had been a long time potential investor for Stavatti. I have attached a copy of that original PPM as a PDF.

For this particular offering we were raising $5 Million. Interestingly enough we have ear-marked $5 Million out of our current $50 Million raise specifically to fund the SM-29 prototype/demonstrator effort, which is essentially the same program we are fundraising for in the attached PPM. The PPM was never subscribed to and we did not register it, however, we were testing the waters to determine if there was investor interest in the offering as well as the MiG-29 upgrade program. This was all after Stavatti already had received a Letter of Interest from the Ukrainian Air Force regarding their interest in the upgrade of their MiG-29s by Stavatti. To solidify a contract with Ukraine they desired that we prepare a demonstrator aircraft that demonstrated the proposed upgrade that they could inspect prior to executing a contract for the upgrade of their aircraft. The purpose of this $5 Million raise was to provide Stavatti the resources to perform that upgrade and be awarded the contract from Ukraine. A summary of the proposed Ukrainian Contract is found on page 15 of the attached SM-29E Super Fulcrum PPM.

Kjell had apparently shared the SM-29 Super Fulcrum PPM with Brian during one of Brian's in-person meetings with Kjell. Brian subsequently called me on the phone and indicated his interest in helping to raise investment capital for this offering. He subsequently visited with me in person at my home prior to

1

which he executed the attached Non-Disclosure Agreement dated 31 January 2020. Please note that the signature found in all of the Promissory Notes that Brian constructed is identical to the digital signature I placed on the first NDA signed with Brian dated 31 January 2020. I just noted that as I looked at the document today.

The "original agreement" really refers to Brian Colvin's participation in our proposed SM-29 Super Fulcrum upgrade program fundraising efforts. The initial effort was to raise $5 Million per our proposed Regulation D offering. Over subsequent years that offering ultimately evolved into a $35 Million offering and did incorporate the services of DelMorgan & Co which did not result in any material fundraising. Focusing upon Brian, it was his assertion that in order to best represent Stavatti in his fundraising initiatives he would have to become a member of our executive/leadership/management team which resulted in him being appointed to the positions that he eventually assumed. The challenge is that Brian over-promoted his capabilities and sought a very high position within the Stavatti organization, ultimately even presenting himself as the "President" of the company.

On April 8, 2020 Brian was issued a "Letter of Representation" whereby he was appointed as the Vice President For Unpiloted Autonomous Systems (UAS) and Director of Stavatti UAS for Stavatti Aerospace Ltd. This was based upon Brian's assertion that he was currently engaged in the Unpiloted Aircraft Business through multiple companies that he represented that he owned including MARS, a UAV descent parachute systems provider. Brian's focus, in addition to fundraising for Stavatti aircraft projects, was to be the senior executive focused upon drones and UAVs for Stavatti an area where I had personally very little interest.

The April 8, 2020 LOR is really not so much an "Agreement" as it was a letter of Representation and no financial terms, compensatory or otherwise, are outlined in the LOR.

Following the issuance of the LOR in April 2020, Brian engaged in many attempts to secure funding for Stavatti but did not emphasize the SM-29E Super Fulcrum Regulation D offering which was our primary mechanism for fundraising at the time. Ultimately Stavatti engaged DelMorgan & Co in 2022 for the express purpose of fundraising for the SM-29E Super Fulcrum program, presumably through a Regulation D offering (as we had presented that offering to them as an exhibit/sample of what to present) but they utterly failed in any fundraising initiatives for Stavatti.

Ultimately Brian Colvin represented Stavatti officially over a term of nearly three years from April 2020 until December 2022. During that time Brian structured a number of different potential offers and presentations to lenders and investors, but they did not focus primarily upon our Regulation D offering structure, which was quite bothersome. There was an emphasis upon Loans and Profit Share and Buy/Sell Programs which are largely out of the focus of Stavatti which has concentrated since our inception on raising funding through Equity Offerings. This is of course why Dimitrov was presented with the SM-29 Super Fulcrum PPM which Brian perverted into a very unfavorable loan structure. A copy of such a deal structure that never went forward dated 12 July 2021 is attached as a PDF. This is one of many samples of proposed agreements and offers from Brian that were never funded or materialized and quite frankly were not appropriate for our kind of business.

Regarding the so called "Original Agreement formed in April 2021" I have attached a document dated 17 April 2021 that both Brian and I executed which was proposed to Stavatti to raise funding for both Stavatti UAVS ltd and Stavatti Aerospace. This was to raise $10 Billion in capital using a Buy/Sell program. This was considered by me to be highly speculative but at the time we gave Brian the benefit of the doubt to explore this mechanism of project funding. Ultimately no business or funding materialized as a result of this proposed structure and like many structures offered by Brian, they were all terminated when Brian was dismissed in December 2022, if not earlier.

It is because of the kind of strange funding structures as presented in the 17 April 2021 Term Sheet that Stavatti focuses upon Regulation D and similar Equity Offerings and not Loans or Buy/Sell programs.

I have more information that I can share upon request, but as you can see from the documents presented on 8 April 2020 and 17 April 2021 Brian Colvin was attempting to steer Stavatti into a direction completely different from the original intent of our initial relationship which was to provide a MiG-29 upgrade

2

for the Ukrainian as well as other allied air forces that still operate the MiG-29 as a front-line fighter outside of Russia.

Interestingly enough there remains a need to upgrade MiG-29s in both the Ukrainian Air Force as well as other "allied" Air Forces worldwide and Stavatti is continuing to actively explore those opportunities as a business case and opportunity. We are not pursuing loans or buy/sell opportunities but instead, as I emphasized before, Regulation D Rule 506 offerings which are in full compliance with the SEC and state regulatory authorities.

Regarding the final matter of me responding to an email with the phrase "Looks good to me" I do not thing that is plausible, possible or even conceivable. I am far to verbose...and long winded. I think that message probably came from somewhere other than my officially endorsed email account. Regardless, even if I had responded "Looks good to me" I would have expected to receive for my approval the various documents that his email suggested should be forthcoming. No such documents were ever presented to me including the Promissory Note which I did not see until well after it was orchestrated by Brian Colvin. If it had been presented to me I would not have authorized it and certainly did not authorize Brian Colvin to use my facsimile signature on it.

3. Colvin had not been authorized to take fees when raising money for the Company and was not authorized to take the fee he took for Plaintiff's investment.

4. Stavatti Aerospace Ltd holds regular Board of Directors meetings once per month each month and has done so on a regular monthly basis since the formation of the company in December 2019. These Board of Directors meetings are held by teleconference often using the Dialpad Meetings teleconference service. Stavatti also holds a regular "Thursday Telecon" that is hosted by myself personally to which company directors, officers, advisors, agents, representatives and even guests, including shareholders at times, are invited and attend on a weekly basis. The Thursday telecon is held via dial-in teleconference, also using the Dialpad Meeting service. The Thursday Telecon is a one to two hour conference call held regularly at 11 AM Pacific Time each Thursday since the formation of the company in December 2019. Both the regular Board of Directors meetings and Thursday Telecons are recorded by audio recording as well as documented through minutes and a transcript as written and prepared by the Corporate Secretary Jeff Gongoll and Director David Wilcock.

At no time between January 2022 and April 2022 were the details of the proposed Dimitrov loan shared with the Stavatti Board of Directors or attendees of the Thursday Telecon. There is no record of Dimitrov as a lender nor is there a record of proposed terms. The matter was not introduced or presented to the Board or to the Stavatti Team participating in the call. Documentation of this omission of information can be found by reviewing the recordings and written records of the teleconferences of that period. Stavatti regularly discusses any and all potential investors and lenders as well as proposed terms for any loan or equity investment. Stavatti not only has procedures, but historical records and meeting minutes which indicate which programs are official Stavatti cannon. The Dimitrov relationship was never formally introduced to the Board of Directors at regular meetings prior to or during the execution of the loan nor was the loan terms or structure approved by the Board of Directors.

Stavatti Aerospace Ltd is a legally organized Wyoming C corporation that is conducting business in New York as a registered Foreign Corporation. Moreover, Stavatti is registered with the State Department-Directorate of Defense Trade Controls (DDTC) as a manufacturer, exporter and broker of US Munitions List Items. Stavatti is registered with the Defense Technical Information Center and has an executed DD Form 2345 Militarily Critical Technical Data Agreement. Stavatti has a CAGE code and is registered with SAM. Stavatti has entered into "Controlled Unclassified Information" agreements with the US Navy (in support of our Participation as a Prime Contractor and bidder in the USN Undergraduate Jet Training Systems Program-UJTS) as well as with the USAF (in support and bidder in the USAF Next Generation Air Refueling System-NGAS).

Stavatti is not a "Fake Company" and it has been tremendously offensive and defamatory to have Stavatti identified as a Fraudulent Organization, a Ponzi Scheme and a Scam. Stavatti is a legitimate company and like many other new aerospace companies (including JetZero, Boom, Aerion, Hermeus, Eclipse, Exosonic and Cirrus) is reliant upon raising investment capital to develop, prototype, flight test

certify and begin production of new design aircraft. Many of these companies raised tens of millions of dollars to develop their aircraft. Eclipse aircraft raised a total of $220 Million in private investment to develop, certify and begin production of its Eclipse 500 business jet.

The design and development of a new aircraft of any type is inherently complex and costly. Stavatti is well aware of these complexities and requires all potential investors to review and understand the Risk Factors inherent to participating in the business of new aircraft development and production. It is a sophisticated business and suitable for participation only by sophisticated investors. In order to operated within the Defense Industry Stavatti is required to have certain registrations which we have attained. Companies that are fraudulent are unable to qualify for the kinds of certifications that Stavatti has received.

What Stavatti is doing with respect to capital fundraising in support of new aircraft development is not unusual for our kind of business and there is an established historical precedent whereby new aircraft companies similar to Stavatti will raise investment capital to develop new aircraft. While the rate of success of such companies does vary, certain new aircraft companies do achieve a level of success. A good case study is Cirrus Design which required investor support but ultimately achieved the production of the SR20 and SR22 General Aviation aircraft which have become the most successful and best selling new personal aircraft over the past 20 years surpassing the deliveries and sales of Cessna, Piper, Beechcraft and other historical industry leaders.

From the Stavatti perspective, the Dimitrov allegations have done significant harm to Stavatti and our ability to both conduct investment fundraising and even sales. The allegations have inhibited Stavatti's ability to advance our company and ultimately repay the Dimitrov loan. The unfounded allegations have impacted Stavatti in such a manner that we may have lost business as well as the support of specific investors who would have otherwise invested in Stavatti had it not been for the inaccurate public allegations cited in the Dimitrov suit.

FURTHER AFFIANT SAYETH NOT
DATED this 5th day of September 2025

By: _____
Christopher Beskar

4