Nino Abate, Esq. (SBN 017098)
**THE LAW OFFICE OF NINO ABATE, PLC**
300 W. Clarendon Ave., Suite 130
Phoenix, Arizona 85013
(480) 314-3304
*Attorney for Defendants Brian and Corrina Colvin*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valentino Dimitrov, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Stavatti Aerospace, Ltd, a Minnesota corporation; Stavatti Aerospace, Ltd, a Wyoming corporation; Stavatti Corporation, a Minnesota corporation; Stavatti Immobiliare, Ltd, a Wyoming corporation; Stavatti Industries, Ltd, a Wyoming corporation; Stavatti Niagara, Ltd, a New York corporation; Stavatti Super Fulcrum, Ltd, a Wyoming corporation; Stavatti Ukraine, a Ukrainian business entity; Stavatti Heavy Industries Ltd, a Hawaii corporation; Christopher Beskar and Maja Beskar, husband and wife; Brian Colvin and Corrina Colvin, husband and wife; John Simon and Jean Simon, husband and wife; William Mcewen and Patricia Mcewen, husband and wife; Rudy Chacon and Jane Doe Chacon, husband and wife; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-CV-00226-DJH<br><br>**DEFENDANT COLVINS RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendants Brian ("Colvin") and Corrina Colvin, by and through undersigned attorney, hereby respectfully submits their Response to Plaintiff's Motion for Summary Judgment (Doc.

74). This Response is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

As set forth below, because there are material facts in dispute Plaintiff is not entitled to Summary Judgment against the Colvin Defendants.

**I.   FACUTUAL BACKGROUND**

In 2018, Colvin started an unmanned drone business. *See* Colvin's Affidavit attached as 74-1, at ¶ 2.

On or about February 2020, he met Defendant Christopher Beskar ("Beskar"), the CEO and Founder of Defendants Stavatti Aerospace, including Stavatti Aerospace Ltd, a Wyoming C corporation (collectively, "Stavatti"). Ex. 74-1, at ¶ 2; Ex. 74-2. They quickly discovered their mutual interest in the unmanned drone industry and eventually decided to do business together. *Id.*

In April of 2020, Beskar officially appointed Colvin as the Vice President for Unpiloted Autonomous Systems (UAS) and Director of Stavatti UAS for Stavatti. Ex. 74-1, at ¶ 4. On March 29, 2021, pursuant to Colvin's agreement with Beskar, he formed Stavatti UAVS, Inc., a Nevada corporation ("Stavatti UAVS"), which was owned by Colvin but was affiliated with Stavatti's UAS division. Ex. 74-1, at ¶ 5. As Vice President of Stavatti's UAS division, Colvin's duties were limited to operating and growing Stavatti UAS. Ex. 74-1, at ¶ 6. Colvin received no compensation for being the Vice President of Stavatti's UAS division. *Id.* Instead, the agreement with Beskar was to split the profits from Stavatti UAS business, if any. *Id.*

After forming Stavatti UAS, Colvin obtained his certification as a Protocol Officer, a United States State Department designation that allowed him to engage with the State Department and the diplomatic delegations from other countries, to promote and solicit contracts for Stavatti UAS. Ex. 74-1, at ¶ 7. Colvin traveled periodically to Washington, D.C., to meet with potential buyers of Stavatti UAS's planned military-grade drone products. *Id.*

In or about November 2021, Beskar asked Colvin to help secure funding for Stavatti's MiG-29 upgrade program ("MIG Program"), which was a program to purchase and upgrade military aircraft for Allied Countries. Ex. 74-1, at ¶ 8. This was outside of Colvin's normal

1  scope of duties as Vice President of Stavatti's UAS division, but he understood that Beskar was
2  making a big push for the program, so Colvin agreed to do what he could. Colvin eventually
3  recruited DelMorgan Group LLC ("DelMorgan"), an investment banking firm with offices in
4  Santa Monica, California, who said they could raise $130 million through a private placement
5  offering. Ex. 74-1, at ¶ 8.; Ex. 74-3.

6        Beskar also wanted to find private lenders who would make bridge loans to Stavatti while
7  DelMorgan was doing its capital raise. Colvin told Beskar that Rudy Chacon ("Chacon"), a
8  friend of his who had a lot of good contacts, had offered to assist with finding suitable private
9  lenders for the bridge loans. Ex. 74-1, at ¶ 9.  On or around January 2022, Colvin informed
10 Beskar that Chacon had identified Plaintiff as a suitable private lender who could provide a
11 bridge loan to Stavatti. Ex. 74-1, at ¶ 10.  Chacon told Colvin that Chacon was a multi-
12 millionaire and a sophisticated businessman. *Id.*

13       On February 10, 2022, Beskar retained DelMorgan. Ex. 74-1, at ¶ 11; Ex 74-5. Also, on
14 February 10, 2022, Beskar and Colvin signed the "Stavatti Term Sheet for Asset Backed Loan"
15 for a proposed bridge loan to Stavatti ("Term Sheet"). *Id*; Ex 74-4. The Term Sheet expressly
16 provides that the "terms and conditions under which any loan would be provided are subject to
17 change, and this Term Sheet does not constitute an offer to purchase or sell securities." *Id.*

18       On or about February 28, 2022, Chacon obtained a signed "Stavatti Aerospace, Ltd
19 Promissory Note" ("Note") from Plaintiff for a bridge loan to Stavatti in the amount of $1
20 million ("Bridge Loan"). Ex. 74-1, at ¶ 12; 74-6. Contrary to Beskar's allegation, Colvin did not
21 "cut and paste" his signature on the Note. Ex. 74-1, at ¶ 13. Instead, Beskar emailed Colvin with
22 a promissory note that included Beskar's signature, with the instructions to use the signed
23 promissory note to "revise as needed" for any potential private lender. *Id.* Moreover, contrary to
24 Beskar's false allegations, a copy of the Note in its final form was emailed to Beskar for
25 approval, which he approved, before Plaintiff signed it. *Id.*

26       In April 2022, Plaintiff funded his Bridge Loan in the amount of $1 million to Stavatti.
27 Ex. 74-1, at ¶ 14.  At the time Plaintiff funded the Bridge Note, Colvin called Beskar to advise
28 him that the money was deposited in Stavatti's bank account and that $100,000, as agreed, was

deposited into the bank account of Stavatti UAVS to fund its operations. *Id.* Beskar replied by thanking Colvin for a great job. *Id.* In March, Colvin sent Beskar an update regarding his efforts to find bridge loan lenders. Ex. 74-7.

In June 2022, Beskar offered to promote Colvin to President of Stavatti Aerospace. Beskar emailed Colvin his new business cards. Ex. 74-1, at ¶ 15; Ex. 74-8 and 9. By August 2022, Beskar issued a formal Letter of Representation, confirming that he had made Colvin the "Deputy" President of Stavatti Aerospace Ltd, a Wyoming corporation. Ex. 74-1, at ¶ 15; Ex. 74-10. Even though his title had changed, Colvin's primary duties continued to be operating and growing Stavatti UAS. Ex. 74-1, at ¶ 15.

Not long after his promotion, DelMorgan notified Stavatti that due to the Ukraine war, investors were afraid to be seen as "funding a war" and therefore, DelMorgan declined to pursue the private placement for the MIG Program. Ex. 74-1, at ¶ 16. Over the following months, while Colvin continued to work on securing UAS contracts with Allied Countries and support the company's success in other ways, Beskar had left Colvin with a mess to clean up; namely, dealing with the private lender's Stavatti was unable to timely repay, including the Plaintiff. Ex. 74-1, at ¶ 17. On or about December 12, 2022, not long after he received Plaintiff's demand letter, Colvin submitted his letter of resignation to Beskar and separated from Stavatti. Ex. 74-1, at ¶ 18-19.

## II. LEGAL ARGUMENT

Pursuant to A.R.S. § 44-2001,

> A person against whom an action for a violation of § 44-1991 is brought is not liable under subsection A of this section if the person sustains the burden of proof that the person did not know and in the exercise of reasonable care could not have known of the untrue statement or misleading omission.

Here, Colvin did not know, understand, or believe that any of the information relating to Stavatti, the MIG Program, or the Bridge Loan was false or misleading. See Ex. 74-1, at ¶ 21-33. Colvin believed in good faith at the time that the Bridge Loan wasn't a security and therefore was not subject to state or federal securities law; rather, he understood that Plaintiff was making a private business loan to Stavatti. But even if the Bridge Loan is a security under

1 Arizona law, Colvin gave Chacon the PPM to use when soliciting private lenders for the bridge
2 loans, including Plaintiff. The PPM, which was apparently prepared by a securities attorney,
3 contained all of the normal and customary disclosures that are made in private placement
4 memoranda. The PPM is a comprehensive disclosure document that advises any potential
5 investors or lenders of the potential risks. Accordingly, Colvin reasonably believed and
6 understood that none of the information provided about Stavatti and the MIG Program was false
7 or misleading.

Also, there is sufficient evidence that despite Colvin's reasonable care, he did not know and "could not have known" of any untrue statement or misleading omission.  Plaintiff alleges that even if Colvin had no actual knowledge of Stavatti's fraudulent scheme, he knew that "no aircraft was ever built during his employment" and therefore he "knew or should have known the scheme was fraudulent and he avoided learning the truth." Plaintiff's accusation misrepresents the relevant facts and circumstances.

Beskar is an accomplished engineer and entrepreneur who has obtained patents for his designs related to the SM-26, SM-27, and SM-36 aircraft (Patent Nos. D760638, D887949, D1003804). The MIG Program that Stavatti was promoting was a plan to purchase MiG-29 Fulcrum Multi-Role Fighter aircraft and upgrade them to the "Super Fulcrum" configuration, allowing them "to remain a potent and competitive air defense asset through 2040." This was part of Stavatti's mission, which focused on the modernization of MiG-29, MiG-29A, MiG-29S, MiG 29SE/SM/SMT, and MiG-29M Tactical Aircraft. This was not a "scam" or a "fraudulent scheme" to defraud anyone.  Instead, if DelMorgan's capital raise had gone as expected, Stavatti's MIG Program and the well-designed business plan for the Super Fulcrum would have become a reality.

Nothing in the information Colvin provided to Chacon, or that Chacon provided to Plaintiff, regarding the MIG Program or the Bridge Loan, was false or misleading. Nothing in the PPM represented that Stavatti was currently manufacturing any aircraft, including the Super Fulcrum, or that it was manufacturing any other upgrades to any existing military aircraft. What

it did represent was that Stavatti had a *program* or plan to manufacture an aircraft, in particular, the Super Fulcrum.

Therefore, despite exercising reasonable care, Colvin did not and could not have known of any "untrue statement or misleading omission" because there was none. Every representation that Colvin could have possibly made to Plaintiff was devoid of any material misstatement of fact. Moreover, the PPM fully advised Plaintiff about Stavatti, and the risks associated with the MIG Program. It also informed Plaintiff that Stavatti was not currently manufacturing the Super Fulcrum or any other aircraft. Therefore, Plaintiff could not have made the Bridge Loan because it believed Stavatti was currently rolling planes off an assembly line because there was nothing that came from Colvin that would have made him think that.

## III.   CONCLUSION

Colvin was not part of a fraudulent scheme to defraud Plaintiff. Colvin originally joined forces with Beskar and Stavatti in the Spring of 2020 to grow the drone or "Unpiloted Autonomous Systems" he had been focused on since 2018. It wasn't until April of 2021 that Beskar approached him with the MIG Program and solicited his help. Colvin had no experience with aircraft manufacturing, and that was not his role as Vice President of Stavatti's Unpiloted Autonomous Systems (UAS). Nevertheless, because of Beskar's urging, he agreed to help, recruiting DelMorgan and Chacon to assist. Colvin always acted in good faith, and at all relevant times, Colvin had no knowledge that any false or misleading information was being used to raise money, either by Stavatti or Chacon, to secure the Bridge Loan from Plaintiff. Moreover, since there were no material misrepresentations contained in the PPM or in any other document from Stavatti that Chacon may have provided to Plaintiff, Colvin could not have known of any false or misleading information that Colvin could be said to have provided to Plaintiff.

Therefore, whether the facts here satisfy A.R.S. § 44-2001 is a question of fact that cannot be summarily adjudicated by this Court. The same goes for Plaintiff's claims against Colvin for violation of A.R.S. § 13-2301(D)(4). Plaintiff cannot prove Colvin is liable for "intentional selling of unregistered securities, and the intentional or reckless selling of

fraudulent securities." The facts are obviously disputed and therefore are not subject to Summary Judgment.

Finally, as set forth in Colvin's Affidavit, Beskar and the Stavatti Defendants are now trying to avoid liability by conveniently claiming that Colvin was a "rogue employee" and Beskar was unaware of what Colvin was doing. These claims are demonstrably false. Colvin did not use "a fraudulent facsimile of the Company president's signature lifted from a blank form non-disclosure agreement," and he did not take "an undisclosed and unauthorized fee of $100,000." These false allegations are disappointing and desperate. Colvin never believed that Beskar or Stavatti ever intended to defraud anyone, but it has become increasingly apparent that Beskar is a liar and is not afraid to lie, even under oath, when he wants to avoid accountability and liability for his own mistakes and misdeeds.

Accordingly, the Colvin Defendants request that the Court deny Plaintiff's Motion for Summary Judgment against them.

RESPECTFULLY SUBMITTED this 8th day of September, 2025.

**THE LAW OFFICE OF NINO ABATE, PLC**

By: /s/ Nino Abate
Nino Abate

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal along with copies transmitted to all parties and counsel of record via the CM/ECF system.

By: /s/ Nino Abate

# TABLE OF CONTENTS

1. Colvin Affidavit

2. Letter of Representation dated April 8, 2020

3. Stavatti PPM

4. Executed Term Sheet for Asset Back Loan

5. Executed DelMorgan Engagement Letter

6. Executed Promissory Note

7. March 31, 2022 Email to Beskar

8. June 2, 2022 Email from Beskar

9. June 4, 2022, Letter to Plaintiff

10. Letter of Representation dated August 29, 2022

11. All Exhibits Plaintiff's Motion for Summary Judgment and Defendant Beskar's Response