**Ross P. Meyer (028473)**
Ross@EnaraLaw.com
**Morgan E. Silva (039166)**
Morgan@EnaraLaw.com
**Enara Law PLLC**
7631 East Greenway Road, Suite B-2
Scottsdale, Arizona 85260
Telephone: (602) 687-2010
Filings@EnaraLaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Valentino Dimitrov, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br>vs.<br><br>Stavatti Aerospace, Ltd, a Minnesota corporation; et al.<br><br>Defendants. | Case No.: 2:23-CV-00226-PHX-DJH<br><br>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST STAVATTI AEROSPACE LTD., A WYOMING CORPORATION AND CHRISTOPHER BESKAR** |

1

Plaintiff Valentino Dimitrov ("Mr. Dimitrov") hereby submits his Reply in Support of his Motion for Summary Judgment against Stavatti Aerospace Ltd., a Wyoming Corporation, ("Stavatti Aerospace") and Christopher Beskar ("Mr. Beskar") (Doc. 68), supported by the entire record and the following Memorandum of Points and Authorities.

I.  **FACTUAL BACKGROUND**

On July 29, 2025, Mr. Dimitrov filed his Motion for Summary Judgment (the "Motion") against Stavatti Aerospace and Mr. Beskar on his breach of contract and RICO claims[1] for the Promissory Note he signed, for which Mr. Dimitrov loaned $1 million to Stavatti Aerospace. (Doc. 68-1, at 2-3); (Doc. 68-2, at 9, No. 13); (Doc. 68-3, at 25:18-22, 28:16-20, 35:21-36:2, and 42:8-12). Mr. Dimitrov's Motion requested summary judgment against Stavatti Aerospace and Mr. Beskar for controlling and conducting Stavatti Aerospace with a pattern of racketeering for: 1) participating in a scheme or artifice to defraud; 2) the intentional or reckless selling of unregistered securities; and 3) the intentional or reckless selling of fraudulent securities (Doc. 68, at 6:1-6).

On September 5, 2025, Stavatti Aerospace and Mr. Beskar filed their Response in Opposition to the Motion (the "Response"), largely attempting to argue that they cannot be held liable for racketeering when they allegedly did not know of Mr. Dimitrov, that Mr. Colvin was not acting within his scope as an agent, and Mr. Beskar's signature on the Promissory Note was improperly used. (Doc. 72, at 9-12).[2]

---

[1] In the Response, Stavatti Aerospace and Mr. Beskar attempt to argue that Mr. Dimitrov no longer believes the Stavatti Entities are a "network of fraudsters" because he only filed the Motion against one Stavatti Entity and Mr. Beskar. However, the mere fact that Mr. Dimitrov did not bring the Motion against all Stavatti Entities and more individual entities has no effect on Mr. Dimitrov's full intention to pursue the RICO claims against additional defendants at trial.

[2] Similar to the Motion, for convenience of the Court, Plaintiff's citations reference the page number of the document as stamped by the Court on the top of each page upon filing, with the exception of reference to Stavatti Aerospace and Mr. Beskar's Doc. 72-2. Doc. 72-2 is a consolidated transcript of Mr. Beskar's deposition, therefore all references to this

## II. LEGAL ARGUMENT

### a. Legal Standard

When a moving party on a motion for summary judgment "carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. . . . If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *See Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (internal citation omitted).

### b. Stavatti and Mr. Beskar Intentionally or Recklessly Sold Unregistered Securities

In the Response, Stavatti Aerospace and Mr. Beskar attempt to argue they did not violate any RICO or securities statues because they did not know of the terms of and did not participate in the creation of the Promissory Note until after Mr. Colvin orchestrated it. (Doc. 72, at 9:21-24). However, neither of these arguments provide a valid defense for Stavatti Aerospace or Mr. Beskar.

In Arizona, the intentional or reckless sale of an unregistered security is an offense that can show a pattern of racketeering. *See* A.R.S. § 13-2301(4). Generally, an action is reckless when "a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *See* A.R.S. § 13-105(9)(c).

Most importantly, Stavatti Aerospace and Mr. Beskar's arguments that they did not know of and were not involved in the creation of the Promissory Note are false. (Doc. 72,

---

transcript refer to the page number as listed on the deposition transcript top right-hand corner.

1  at 9:21-24). On February 10, 2022, both Mr. Beskar and Mr. Colvin signed a Term Sheet
2  for an Asset Backed Loan (the "Term Sheet"), which clearly identifies Mr. Dimitrov as a
3  lender that "would provide an asset backed loan to Stavatti Aerospace." (Doc. 74-4, at 2-
4  3). Mr. Dimitrov never signed the Term Sheet, but shortly thereafter signed the Promissory
5  Note. (Doc. 74-4, at 3).

6        On February 15, 2022, five days after Mr. Beskar and Mr. Colvin signed the Term
7  Sheet, Mr. Colvin sent an email to Mr. Beskar outlining the structure of impending funding
8  and agreements to be generated around that time, including the proposal that a "5x
9  PROMISSORY NOTE to Investors" be generated. (Doc. 68-13, at 2). Mr. Beskar
10 approved the proposal stating, "Thank you. This looks good to me." (Doc. 68-14, at 2).
11 While this on its own can demonstrate the recklessness of the Promissory Note that was
12 entered between Stavatti Aerospace and Mr. Dimitrov, during Mr. Beskar's deposition
13 and in his Affidavit, he attempts to argue that the email is "irregular," and he would not
14 have sent such a short email. (Doc. 72-4, at 4); (Doc. 68-3, at 33:5-8, 10-11, 13-18 and
15 21-22). However, Mr. Beskar has failed to provide any evidence that such an email did
16 not come from him. Therefore, Mr. Beskar has not created a genuine dispute of a material
17 fact sufficient to deny Mr. Dimitrov's Motion. *See Nissan*, 210 F.3d at 1103.

18       Mr. Colvin's role at Stavatti Aerospace explicitly included raising funds. (Doc. 74-
19 2, at 2). It is clear from the Letter of Representation provided to Mr. Colvin and separately
20 from Mr. Beskar's deposition that this fact is not disputed. (Doc. 74-2, at 2); (Doc. 68-3,
21 at 31:22-32:8). Mr. Beskar knew of Mr. Colvin soliciting funds for Stavatti Aerospace,
22 specifically from Mr. Dimitrov, as evidenced by the Term Sheet. (Doc. 74-4, at 2-3). After
23 signing the Term Sheet, Mr. Colvin provided the terms of the Promissory Note to Mr.
24 Beskar for approval. (Doc. 68-13, at 2). Additionally, Mr. Beskar admits that he knew Mr.
25 Colvin was not raising funds as required, however, he did not revoke Mr. Colvin's

authorization to raise funds or terminate him until after the events in question and instead made him Vice President of Stavatti Aerospace. (Doc. 72, at ¶¶ 34-35). Stavatti Aerospace and Mr. Beskar admit, "[t]he history of Brian Colvin's efforts to raise funds for the Company was problematic as he regularly would propose transactions which did not fit the corporate structure which focused on raising funds via proper Reg D offerings. Chris Beskar was able over the years to steer him back into line but unfortunately was kept out of the loop by Brian." (Doc. 72, at ¶ 38). Any reasonable person would have revoked Mr. Beskar's authority to raise funds when he first circumvented company policy. Instead, Stavatti Aerospace and Mr. Beskar had knowledge of Mr. Colvin's alleged circumvention, and allowed him to continue with his conduct, disregarding substantial risks that Stavatti Aerospace could held liable for, including liability related to the sale of securities. *See* A.R.S. § 13-105(9)(c); (Doc. 68-14, at 2).

At the very least, if this Court does not find that Mr. Beskar intentionally sold unregistered securities, it is clear from the evidence that Stavatti Aerospace and Mr. Beskar recklessly sold unregistered securities.

### c. Mr. Colvin was Acting as Stavatti's Agent

Stavatti Aerospace and Mr. Beskar attempt to argue that Mr. Colvin was not an agent of Stavatti Aerospace based on an apparent authority agency theory. (Doc. 72, at 10-12). This is not accurate, and Mr. Colvin was clearly acting as Stavatti's agent.

#### i. Mr. Colvin was Stavatti's Express Agent

Agency is a relationship "that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *See* Restatement (Third) of Agency § 1.01 (2006). Agency relationships can derive from actual or apparent authority. *Designer Skin, LLC v. S&L Vitamins, Inc.*, 560 F.

Supp.2d 811, 825-26 (D. Ariz. 2008); *see also Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 28, 161 P.3d 1253, 1261 (Ariz. App. 2007); *see also* Restatement (Third) of Agency §§ 2.01, 2.03 (2006). Actual authority will be established when the principal "enters into an 'express contract of agency' with an agent or when the circumstances imply such [a]contract or the ratification thereof.'" *See Patterson v. Home Depot, USA, Inc.*, 684 F.Supp.2d 1170, 1181 (D. Ariz. 2010); *see also Corral v. Fidelity Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (Ariz. App. 1981).

The cases cited by Stavatti Aerospace and Mr. Beskar to refute Mr. Colvin's agency are irrelevant to their arguments. In fact, *Shelby* approves prior precedent that a principal will be "held liable for the frauds, deceits, concealments, misrepresentations, negligence and other malfeasances and omissions of duty to his agent in the course of his employment, although the principal did not authorize or justify or participate in, or, indeed, know of, such misconduct, or even if he forbade the acts or disapproved of them." *See Shelby v. Zayre Corp.*, 474 So.2d 1069, 1070-71 (citing *Dist. 20, United Mine Workers of Am. v. Sams*, 287 Ala. 312, 319, 251 So.2d 613, 619 (Ala. 1971)). Similarly in *Miller*, the court states that apparent authority does not "require knowledge by the employer that the employee is committing a fraud. To the contrary, the employee's apparent authority is completely independent of the employer's participation in or knowledge of the employee's fraudulent representation." *See Miller v. Mason-McDuffie Co. of S. Cal.*, 153 Ariz. 585, 591-92, 739 P.2d 806, 812-13 (Ariz. 1987) (internal citations omitted).

In *Lois*, the defendant was required to make an investigation as to an agent's authority based on specific circumstances that would "cause a reasonable man . . . to inquire fully into the authority of the person actually making the guarantee to bind defendant." *See Lois Grunow Mem. Clinic v. Davis*, 49 Ariz. 277, 289, 66 P.2d 238, 243-44 (1937). As set out in *Lois*, the plaintiff had a requirement to make an investigation as

to the agent's authority to bind a contract for a position at a medical clinic where: 1) the plaintiff had extensive correspondence with the agent and even made a visit to Phoenix to investigate the situation; 2) plaintiff knew the clinic was a charitable institution with a purpose of a voluntary clinic of physicians; 3) plaintiff knew the agent did not intend to guarantee incomes to members of the clinic; 4) plaintiff knew that it was not the defendants intention to operate a hospital manned by a staff of paid assistants and physicians; and 5) plaintiff knew the agent had grave doubts of his legal right to make such a guaranty and refused to do so until he consulted with a legal advisor of the defendant. *See Lois*, 49 Ariz. at 289. In the instant case, the circumstances are completely different from *Lois* because there were no circumstances that signified to Mr. Dimitrov that he should investigate Mr. Colvin's authority as an agent.

In his Affidavit, Mr. Beskar attempts to argue that Mr. Colvin was not an agent because his Letter of Representation was not an "Agreement." (Doc. 72-4, at 3). At all times, Mr. Colvin was acting as an express agent of Stavatti. Mr. Colvin was designated in his employment with Stavatti to fundraise for the company in a signed writing by Mr. Beskar. (Doc. 74-2, at 2). When appointed as the "Vice President For Unpiloted Autonomous Systems (UAS) and Director of Stavatti UAS for Stavatti Aerospace Ltd," Mr. Colvin was granted "full authorization to represent Stavatti worldwide" for tasks including but not limited to "[t]he introduction and representation of Stavatti to strategic partners, investors and governments" and to assist Stavatti in the "arrangement of funding/financing." (Doc. 74-2, at 2). In his dealings with Mr. Dimitrov, Mr. Colvin was acting as Stavatti's Aerospace's agent within his designated authorized representation to raise funds. (Doc. 74-2, at 2). Furthermore, all of Mr. Colvin's acts were accepted and ratified by Stavatti Aerospace and Mr. Beskar when Mr. Dimitrov's Principal was not returned to him and used for Stavatti Aerospace's benefit. *See Patterson*, 684 F.Supp.2d

at 1181; *see also Corral*, 129 Ariz. at 326; (Doc. 68-2, at 9, No. 15); (Doc. 68-3, at 37:19-38:2, 40:10-16). Therefore, Mr. Dimitrov requests this Court find that Mr. Colvin was acting as an express agent of Stavatti Aerospace during the transaction with Mr. Dimitrov, and Stavatti Aerospace became bound to the Promissory Note when they ratified Mr. Colvin's conduct and accepted Mr. Dimitrov's funds for their benefit.

### j. Stavatti Aerospace and Mr. Beskar Ratified the Unlawful Conduct of Mr. Colvin

Under A.R.S. § 13-2314.04, a natural person will be held liable for damages for racketeering based on the conduct of another when "the fact finder finds by a preponderance of the evidence that the natural person authorized, requested, commanded, ratified or recklessly tolerated the unlawful conduct of the other." *See* A.R.S. § 13-2314.04(L). Similarly, an enterprise will be held liable for damages where a director or high managerial agent "performed, authorized, requested, commanded, ratified or recklessly tolerated the unlawful conduct of the agent." *See* A.R.S. § 13-2314.04(L).

As stated above, Stavatti Aerospace and Mr. Beskar ratified all of Mr. Colvin's actions raising funds for Stavatti Aerospace. In fact, Mr. Beskar admits that he knew that Mr. Colvin was not following the required process for raising funds on the day that Mr. Dimitrov's investment was made. (Doc. 72-2, at 116:18-20). Instead of returning the funds, Mr. Beskar accepted the funds into Stavatti Aerospace's bank account, failed to return the funds to Mr. Dimitrov, and thereby ratified or recklessly tolerated Mr. Colvin's unlawful conduct. *See* A.R.S. § 13-2314.04(L); (Doc. 68-2, at 112:16-20); (Doc. 68-3, at 35:1-7, 37:13-16, and 37:19-38:2) (Mr. Beskar admitting to the Promissory Note and the use of the funds). Similarly, Stavatti Aerospace ratified or recklessly tolerated the unlawful conduct of Mr. Colvin when they accepted Mr. Dimitrov's investment and used it to benefit the company. *See* A.R.S. § 13-2314.04(L); (Doc. 68-2, at 112:16-20).

Therefore, Mr. Dimitrov respectfully requests this Court find that Mr. Beskar and Stavatti Aerospace are liable for the damages of the racketeering conduct when they both ratified or recklessly tolerated Mr. Colvin's unlawful conduct.

### d. **Mr. Dimitrov is the Real Party in Interest to the Promissory Note**

Under Federal common law, and accepted by the Ninth Circuit, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." *GECCMC 2005-C1 Plummer Street Office LP. v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012); *see also Bosse v. Corwell Collier and Macmillan*, 565 F.2d 602, 613 (9th Cir. 1977) ("Under Arizona law, 'as a general rule only the parties and privies to a contract may enforce it'"). To prove intended beneficiary status, a third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *GECCMC*, 671 F.3d at 1033 ("The contract need not name a beneficiary specifically or individually in the contract; instead, it can specify a 'class clearly intended by the parties to benefit from the contract.'"). "The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue . . . ." *Id.*

Mr. Dimitrov is a party to the Promissory Note as is clearly shown on the signature page, therefore making him among the injured. (Doc. 68-1, at 3). As a party to the Promissory Note, Mr. Dimitrov has standing to enforce the terms of the contract and receive damages. *GECCMC*, 671 F.3d at 1033; *see also Bosse*, 565 F.2d at 613. In fact, as a party to the contract, Mr. Dimitrov may be the only one that can enforce the terms of the Promissory Note and receive damages as there is no express or implied intention of the parties for the Promissory Note to benefit a third party. *GECCMC*, 671 F.3d at 1033. As the real party in interest, any judgment made by this Court must be made in Mr.

Dimitrov's name. Therefore, Mr. Dimitrov respectfully requests this Court find that any judgment this Court orders be made in his name.

### e. The Defendant's Irrelevant Arguments

Stavatti Aerospace and Mr. Beskar include numerous irrelevant arguments that this Court should disregard as they do not create genuine disputes of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Stavatti Aerospace and Mr. Beskar attempt to argue that the lack of shareholder litigation or Securities and Exchange Commission complaints somehow establishes that capital was raised in accordance with the Law. (Doc. 72, at ¶ 40). However, Stavatti Aerospace and Mr. Beskar fail to cite a case or statute with this proposition.

Stavatti Aerospace and Mr. Beskar also attempt to argue that Mr. Dimitrov is not entitled to the return profit listed on the Promissory Note. (Doc. 72, at 12:22-26). However, that is not an issue in the Motion. In the Motion, Mr. Dimitrov is seeking a return on his principal plus prejudgment interest in an amount of $1,210,812.92 for his breach of contract claim as well as attorneys' fees and costs. (Doc. 68, at 5:12-18). In a footnote, Mr. Dimitrov states "In the event that this litigation is still pending on February 27, 2026 and Stavatti Aerospace fails to repay Mr. Dimitrov's Guaranteed Return by that date, Mr. Dimitrov intends to amend his complaint to add an additional Breach of Contract claim for the amount of the unpaid Guaranteed Return, in the amount of $5,000,000.00. This cause of action will not begin to accrue until the payment date, February 27, 2026." (Doc. 68, at n. 3). Therefore, this Court does not need to determine whether Mr. Dimitrov is entitled to the profit or any circumstances related to that question at this time.

### f. Waived Defenses

"When a party moves for final summary judgment on an issue, the nonmoving party must raise in their opposition all arguments or defenses which would preclude

judgment in the moving party's favor or else the nonmoving party abandons the argument or defense." *See NWHW Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 2023 WL 9375862, at * 12 (D. Cal. Dec. 22, 2023); *see also Stuart v. Insurance Co. of North American*, 152 Ariz. 78, 84 (Ariz. App. 1986) (finding that Appellant's failure to address the issue of acceptance of a premium check in their response to the motion for summary judgment resulted in abandonment of count three of their complaint); ("While we stress here the burden of the moving party, the court will not normally look with indulgence upon a party who has presented neither evidentiary materials in opposition nor any reason for his failure to do so. . . . A party cannot sit idly by on the presentation of a motion for summary judgment which may well resolve the entire case and fail to urge his defense.") (internal citation omitted). Stavatti Aerospace and Mr. Beskar continually attempt to shift the blame to Mr. Colvin and argue they cannot be held liable for acts they did not know about. However, throughout the Response, Stavatti Aerospace and Mr. Beskar fail to argue why they themselves are not liable for their own misrepresentations. (Doc. 68-3, at 3:23-25); (Doc. 68-5, at 2-6); (Doc. 68-20, at 2); (Doc. 68-3, at 4:23-25 and 39:6-10). The Stavatti Aerospace website, maintained by Mr. Beskar, has multiple misrepresentations as stated in the Motion. (Doc. 68, at 14:18-15:17). Stavatti Aerospace and Mr. Beskar do not defend against these misrepresentations and have provided no genuine dispute of material fact showing that the statements were not false. Therefore, Stavatti Aerospace and Mr. Beskar have waived any defenses to these arguments.

### g. Mr. Beskar's Affidavit

"[A] party cannot avoid summary judgment by creating 'an issue of fact by an affidavit contradicting [its] prior depositions. *See Equal Emp't Opportunity Com'n v. Swisspot Fueling, Inc.*, 916 F. Supp.2d 1005, 1018 (D. Ariz. 2013). Mr. Beskar attempts to argue that Stavatti Aerospace is "not only registered with the SEC through the filing of

Form D but also with multiple states." (Doc. 72-4, at 2). However, regardless of the truth of this statement at the present, Mr. Beskar clearly stated in his deposition that Stavatti Aerospace was not registered with the SEC until November 2024, over two (2) years after Mr. Dimitrov's loan (Doc. 68-3, at 21:13-22:13). Therefore, Mr. Beskar's affidavit must be disregarded as a sham affidavit.

### III. CONCLUSION

For the foregoing reasons, Mr. Dimitrov respectfully requests the Court grant summary judgment on his Breach of Contract and A.R.S. § 13-2314.04 claims and enter a judgment against Stavatti Aerospace, Mr. Beskar, and Mr. Colvin for the Principal of the Promissory Note and treble damages pursuant to A.R.S. § 13-2314.04(A). Mr. Dimitrov also seeks an award of his reasonable attorneys' fees pursuant to A.R.S. §§ 12-341, 12-341.01, 13-2314.04 and pre-judgment interest pursuant to A.R.S. § 44-1201.

**DATED** this 22nd day of September 2025.

ENARA LAW PLLC

By: */s/ Ross. P. Meyer*
    Ross P. Meyer
    Morgan E. Silva
    Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September 2025, a copy of the foregoing was transmitted electronically to the CM/ECF filing system for filing and transmittal along with copies transmitted to all counsel of record, if any, and any *Pro Se* Parties, via the CM/ECF system.

Terrance D. Dunmire, Esq
**Law Offices Of Terrance D Dunmire**
8701 E. Vista Bonita Drive, Suite 220
Scottsdale, Arizona 85255
Telephone: (602) 264-1300
tdunmire@parkwestpartners.com

Nino Abate, Esq
**Law Offices Of Nino Abate, PLC**
300 W. Clarendon Ave., Suite 130
Phoenix, Arizona 85013
Telephone: (480) 314-3304
nino@abatelaw.com

By: *Virginia Olivas-Snyder*