**Ross P. Meyer (028473)**
Ross@EnaraLaw.com
**Morgan E. Silva (039166)**
Morgan@EnaraLaw.com
**Enara Law PLLC**
7631 East Greenway Road, Suite B-2
Scottsdale, Arizona 85260
Telephone: (602) 687-2010
Filings@EnaraLaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Valentino Dimitrov, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br>vs.<br><br>Stavatti Aerospace, Ltd, a Minnesota corporation; et al.<br><br>Defendants. | Case No.: 2:23-CV-00226-PHX-DJH<br><br>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST BRIAN COLVIN** |

Plaintiff Valentino Dimitrov ("Mr. Dimitrov") hereby submits his Reply in Support of his Motion for Summary Judgment against Brian Colvin ("Mr. Colvin") (Doc. 68), supported by the entire record and the following Memorandum of Points and Authorities.

## I.     FACTUAL BACKGROUND

On July 29, 2025, Mr. Dimitrov filed his Motion for Summary Judgment (the "Motion") against Stavatti Aerospace, Ltd. ("Stavatti Aerospace"), Christopher Beskar ("Mr. Beskar") and Mr. Colvin on his RICO claim based on the Promissory Note he signed, for which Mr. Dimitrov loaned $1 million to Stavatti Aerospace (the "Principal"). (Doc. 68-1, at 2-3); (Doc. 68-2, at 9, No. 13); (Doc. 68-3, at 25:18-22, 28:16-20, 35:21-36:2, and 42:8-12). Mr. Dimitrov's Motion requested summary judgment against Mr. Colvin for conducting his duties for Stavatti Aerospace with a pattern of racketeering for: 1) participating in a scheme or artifice to defraud; 2) the intentional or reckless selling of unregistered securities; and 3) the intentional or reckless selling of fraudulent securities (Doc. 68, at 6:1-6).

On September 8, 2025, Mr. Colvin filed his Response in Opposition to the Motion (the "Response"), largely attempting to argue that he cannot be held liable for racketeering when he did not "know, understand, or believe that any of the information relating to Stavatti, the MIG Program, or the Bridge Loan was false or misleading" and based on Mr. Colvin's reasonable care he "'could not have known' of any untrue statements or misleading omissions." (Doc. 74, at 4:24-25 and 5:8-9).

## II.    LEGAL ARGUMENT

### a. Legal Standard

When a moving party on a motion for summary judgment "carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. . . . If the nonmoving party fails to produce enough evidence to create a genuine issue of

2

material fact, the moving party wins the motion for summary judgment." *See Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (internal citation omitted).

### b. Mr. Colvin Did Not Exercise Reasonable Care

Mr. Colvin attempts to argue that A.R.S. § 44-2001 applies because he "did not know, understand, or believe that any of the information relating to Stavatti, the MIG Program, or the Bridge Loan was false or misleading." (Doc. 74, at 4:20-25). Mr. Colvin correctly recites A.R.S. § 44-2001, which states:

> A person against whom an action for a violation of § 44-1991 is brought is not liable under subsection A of this section if the person sustains the burden of proof that the person did not know and in the exercise of reasonable care could not have known of the untrue statement or misleading omission.

*See* A.R.S. § 44-2001(B).

In his Reply, Mr. Colvin attempts to argue that he cannot be liable for violating A.R.S. §§ 44-1842 or 44-1843 because: (1) he "believed in good faith at the time that the Bridge Loan wasn't a security and therefore was not subject to state or federal securities law;" (2) he gave Defendant Rudy Chacon "the PPM to use when soliciting private lenders for the bridge loans, including Plaintiff;" and (3) the PPM "contained all of the normal and customary disclosures that are made in private placement memoranda." (Doc. 74, at 4:26-5:4). However, each of the arguments raised by Mr. Colvin show he did not exercise reasonable care when raising funds for Stavatti.

### c. A Reasonable Company Officer Would Have Understood the Promissory Note as a Security

As part of his employment in the letter of representation executed by Mr. Beskar, Mr. Colvin was granted "full authorization to represent Stavatti worldwide" for tasks including but not limited to "[t]he introduction and representation of Stavatti to strategic partners, investors and governments," and to assist Stavatti in the "arrangement of

funding/financing." (Doc. 68-6, at 2); (Doc. 68-3, at 31:22-32:5). In fact, in his deposition, Mr. Beskar stated, "We made [Mr. Colvin] a vice president so he could represent Stavatti to investors." (Doc. 68-3, at 31:22-25). Mr. Beskar also stated, "[Mr. Colvin] had the authority to solicit funds . . . ." (Doc. 68-3, at 32:11); (Doc. 68-3, at 26:10-11) ("Brian Colvin was brought in as a person to help fundraise for Stavatti"). Mr. Colvin also knew one of his duties was to raise capital for Stavatti Aerospace as indicated by the letter of representation presented to him and additional evidence on the record. (Doc. 68-6, at 2); (Doc. 68-2, 8, at No. 21).[1] In fact, Mr. Colvin admits that he was paid a finder's fee for bringing loans into Stavatti Aerospace. (Doc. 68-18, at 3:21-25).

In Arizona, a security includes "any note, . . . investment contract, . . . or . . . guarantee of . . . any of the foregoing." *See* A.R.S. § 44-1801. Mr. Colvin, as the individual responsible for raising funds and creating notes with returns and guaranteed profits, while also receiving a profit from such funds, had a duty to understand the laws of securities. Mr. Colvin cannot now claim that he had no idea that the Promissory Note was a security to escape liability. *See Eastern Vanguard Forex, Ltd., v. Arizona Corp. Com'n*, 206 Ariz. 399, 414, ¶ 50, 79 P.3d 86 (Ariz. App. 2003) (stating that "the legislative directive that Arizona's securities laws be interpreted liberally to protect the investing public requires that controlling persons [under A.R.S. § 44-1999(B)] not be allowed to avoid liability for security violations merely by proving lack of involvement with, or knowledge of, the specific violation(s)."); (Doc. 68-13, at 2). Mr. Colvin should have exercised reasonable care to determine whether the notes he was creating and providing to individuals, such as Mr. Dimitrov, were securities, and if they were, met the requirements for ensuring compliance with federal and state securities laws. *See* A.R.S. § 44-2001(B). Therefore, Mr. Dimitrov respectfully requests this Court find that Mr. Colvin's argument, that he did

---

[1] On February 5, 2025, this Court deemed Mr. Colvin's Requests for Admissions admitted. (Doc. 60, at 1).

not know the Promissory Note was a security, is not a basis to escape the requirements and duties under securities laws.

### d. The PPM is Irrelevant as Mr. Dimitrov was Never Given a Copy

Mr. Colvin continually attempts to argue that the PPM did not contain untrue statements and instead stated that Stavatti Aerospace was in the process of manufacturing an aircraft or any other upgrades of an existing aircraft, and it merely represented that "Stavatti had a *program* or plan to manufacture an aircraft," therefore he did not know of any false or misleading statements. (Doc. 74, at 5:25-6:2) (emphasis in original).

However, Mr. Colvin's whole argument based on the PPM is irrelevant. Mr. Dimitrov was never given the PPM to review prior to his execution of the Promissory Note. (Doc.72-1, at 5:16-21). In fact, during his deposition, Mr. Dimitrov stated, "I never looked at [the PPM]" prior to executing the loan. (Doc. 72-1, at 5:16-19). Mr. Dimitrov never had a chance to review the alleged accurate information that Mr. Colvin's saying was in the PPM about Stavatti Aerospace. (Doc.72-1, at 5:16-21). Furthermore, he was never given an opportunity to compare it against the Stavatti Aerospace website. (Doc.72-1, at 5:16-21). Mr. Dimitrov was not given the ability to review the PPM to see whether Stavatti Aerospace represented in the PPM that they were or were not in the process of manufacturing an aircraft. Therefore, Mr. Dimitrov respectfully requests this Court disregard all of Mr. Colvin's arguments related to the PPM as there is no basis to find that Mr. Dimitrov was provided a copy of the PPM.

### e. Mr. Colvin Reasonably Could have Known of the Website's False Statements

While Mr. Beskar was the one in charge of managing the Stavatti Aerospace website, Mr. Colvin could have reasonably known about the false statements contained therein. *See* A.R.S. § 44-2001(B). In his deposition, Mr. Dimitrov admits that he relied on

5

Stavatti Aerospace's website as a determination for signing the Promissory Note. (Doc. 68-19, at 3:24-4:7).

The website, to this day, contains many representations that Stavatti is a "real" aerospace company. (Doc. 68-5, at 2-6). In particular, the website stated, and still states, "Stavatti generates revenues and net shareholder earnings through the design and production of major fixed wing aircraft and aerospace vehicles, like Lockheed Martin and Boeing." (Doc. 68-5, at 2); (Doc. 68-20, at 2). The website details business models, core values, and organizational information, as well as the employees and teams that work at Stavatti. (Doc. 68-5, at 2-6). There are also references to the business operations, importantly portraying Stavatti as a "defense articles producer." (Doc. 68-5, at 4). However, in reality, Stavatti Aerospace has never manufactured an aircraft, and it does not have any employees. (Doc. 68-3, at 4:23-25 and 39:6-10) (showing that Stavatti Aerospace did not have any employees based on the definition that "an employee is somebody who's a wage earner at the organization"); (Doc. 68-18, at 6:5-7) (stating that Mr. Colvin had not seen Stavatti manufacture an aircraft during his employment); (Doc. 68-21, at 3:17-38:2 and 5:19-24) (showing that while a deposit may have been made for an aircraft or there were talks on large purchase agreements, none of the opportunities have ever manifested, and therefore no aircraft has been manufactured by Stavatti Aerospace).

However, Mr. Colvin attempts to argue that he provided PPM's to investors, which only indicated a "*program* or plan to manufacture an aircraft." (Doc. 74, at 5:25-6:2) (emphasis in original). Mr. Colvin had a duty as an officer of Stavatti Aerospace and as an active individual in raising funds for Stavatti Aerospace to ensure that Stavatti Aerospace was not making misleading statements on any platform, including the website. (Doc. 68-6, at 2); (Doc. 68-2, 8, at No. 21). As a public facing website, it is highly common

6

and reasonable for potential investors to view the website, even if they were given the PPM, prior to providing any loans. (Doc. 68-5, at 2); (Doc. 68-20, at 2). Mr. Colvin did not exercise reasonable care, and he could have discovered Stavatti Aerospace's false statements if he had viewed the website. Therefore, Mr. Dimitrov respectfully requests this Court find that Mr. Colvin did not exercise reasonable care to recover false statements or omissions by Stavatti Aerospace.

### f. Mr. Colvin Cannot Delegate his Duty of Care to Stavatti Aerospace on an Unrelated Third-Party

As an agent, Mr. Colvin, had a duty of good faith, duty of loyalty, and duty of care to Stavatti Aerospace. *In re Sky Harbor Hotel Props.*, 246 Ariz. 531, 533, ¶ 7, 443 P.2d 21, 23 (Ariz. 2019) ("Partnerships, joint ventures, and corporations are all owed fiduciary duties by those empowered to act on behalf of such businesses.") (internal citations omitted). A duty of care depends on "whether a corporate office or director 'use[d] that amount of care which ordinarily careful and prudent men would use in similar circumstances.'" *See Polsky v. Ramnani*, 2018 WL 5917903, at * 3 (C.D. Dist. Cal. June 4, 2018). "[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *See Meyer v. Holley*, 537 U.S. 280, 290, 123 S.Ct. 824, 831, 154 L.Ed.2d 753 (2003) (citing *Gen. Building Contractors Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 396, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)); *see also Holley v. Crank*, 258 F.3d 1127, 1131-32 (9th Cir. 2001) (referring to an owner's or officer's duties not to discriminate under the Fair Housing Act of 1968 as non-delegable).

In the instant case, it was Mr. Colvin's responsibility to raise funds for Stavatti Aerospace. (Doc. 68-6, at 2); (Doc. 68-2, 8, at No. 21). Part of that duty is ensuring potential investors are provided materials with true and accurate information. Mr. Colvin attempts to place blame on Mr. Chacon for not providing the PPM to Mr. Dimitrov. (Doc.

74, at 5:1-2). Mr. Colvin argues that he gave Mr. Chacon the PPM to give to potential investors. (Doc. 74, at 5:1-2). However, Mr. Colvin had the non-delegable duty of care to Stavatti Aerospace to ensure the PPM was being distributed to investors and securities laws were being complied with. *Holley*, 258 F.3d at 1131-32. Mr. Colvin failed to do so and instead relied on an unrelated third-party to provide the information to Mr. Dimitrov. (Doc. 74, at 5:1-2). Therefore, Mr. Dimitrov respectfully requests this Court find that it was Mr. Colvin's responsibility to ensure Mr. Dimitrov was given the PPM.

### III.     Mr. Colvin Acted Recklessly

In Arizona, the intentional or reckless sale of an unregistered security is an offense that can show a pattern of racketeering. *See* A.R.S. § 13-2301(4). Generally, an action is reckless when "a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *See* A.R.S. § 13-105(9)(c).

Mr. Colvin's argument that he exercised reasonable care and could not have known of any false or misleading statements of Stavatti Aerospace is false. At all times, Mr. Colvin acted recklessly. Mr. Colvin acted recklessly when he engaged a third-party to provide material documents to Mr. Dimitrov. (Doc. 74, at 5:1-2); *see* A.R.S. § 13-105(9)(c). By doing so, Mr. Colvin ran the substantial and unjustifiable risk that any necessary disclosures required by securities law would not be provided to Mr. Dimitrov. *See* A.R.S. § 13-105(9)(c). As an officer of Stavatti Aerospace, Mr. Colvin was required to ensure the PPM was delivered to Mr. Dimitrov, especially since his role was a fundraiser for Stavatti Aerospace and he was spearheading the Promissory Notes. *See*

A.R.S. § 13-105(9)(c). Therefore, Mr. Dimitrov respectfully requests that this Court find that Mr. Colvin was involved in the reckless sale of securities.

### IV. There is no Genuine Issue of Material Fact

Mr. Colvin has not introduced any evidence to demonstrate a genuine issue of material fact. *See Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (internal citation omitted). In fact, all Mr. Colvin establishes in his Response is that he was not as involved with the investors he was soliciting for funds as a reasonable officer would have been. (Doc. 68-6, at 2); (Doc. 68-2, 8, at No. 21). Mr. Colvin did not do his due diligence to discover any false or misleading statements on Stavatti Aerospace's website. In fact, Mr. Colvin does not address Mr. Dimitrov's arguments related to the false statements on Stavatti Aerospace's website at all. (Doc. 74). Further, Mr. Colvin could not have been bothered to ensure any and all material documents, including the PPM, were actually given to Mr. Dimitrov prior to execution of the Promissory Note. When "the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *See Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (internal citation omitted).

Mr. Colvin has failed to provide evidence of genuine issue of a material fact for Mr. Dimitrov's A.R.S. § 13-2314.04(A) claim. The evidence is clear. Mr. Colvin knowingly and intentionally participated in a scheme or artifice to defraud when he created and provided Mr. Dimitrov with a Promissory Note including a guaranteed Principal return and profit, which he knew or should have known Stavatti Aerospace would not be able to repay. (Doc. 68-13, at 2); (Doc. 68-2, at, No. 1); (Doc. 68-18, at 6:5-7) (stating that Mr. Colvin had not seen Stavatti manufacture an aircraft during his employment); (Doc. 68-10, at 2-4) (showing that Stavatti Aerospace received no income other than from rent,

with the exception of 2022, where Stavatti Aerospace received a minimal amount of $5,100.00 from receipts or sales). Mr. Colvin did so when he failed to uncover the false representations or omissions on the Stavatti Aerospace website. (Doc. 68, at 14:17-15-17). Mr. Colvin intentionally or recklessly sold unregistered securities when he provided the Promissory Note, which he created, to Mr. Dimitrov because he knew or should have known that the Promissory Note was a security, which was not a registered security, as required by state and federal securities laws. (Doc. 68-3, at 21:13-22:13); (Doc. 68-13, at 2); *see* A.R.S. § 44-1801; *see also State v. Tober*, 173 Ariz. 211, 213, 841 P.2d 206, 208 (Ariz. 1992). Mr. Colvin intentionally or recklessly sold fraudulent securities to Mr. Dimitrov using the Promissory Note, by facilitating and refusing to uncover Stavatti Aerospace's false statements and omissions. (Doc. 68, at 14:17-15-17). As such, Mr. Colvin has engaged in racketeering pursuant to A.R.S. § 13-2314.04.

Therefore, Mr. Dimitrov respectfully requests this Court find that Mr. Colvin is liable for racketeering and grant Mr. Dimitrov's Motion.

### V.  CONCLUSION

For the foregoing reasons, Mr. Dimitrov respectfully requests the Court grant summary judgment on against Mr. Colvin on his A.R.S. § 13-2314.04 claim. Mr. Dimitrov seeks an award of his Principal with pre-judgment interest and treble damages, and reasonable attorneys' fees and costs pursuant to A.R.S. § 13-2314.04(A).

**DATED** this 23rd day of September 2025.

`

                    **ENARA LAW PLLC**

                    By: */s/ Ross. P. Meyer*
                        Ross P. Meyer
                        Morgan E. Silva
                        Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September 2025, a copy of the foregoing was transmitted electronically to the CM/ECF filing system for filing and transmittal along with copies transmitted to all counsel of record, if any, and any *Pro Se* Parties, via the CM/ECF system.

Terrance D. Dunmire, Esq
**Law Offices Of Terrance D Dunmire**
8701 E. Vista Bonita Drive, Suite 220
Scottsdale, Arizona 85255
Telephone: (602) 264-1300
tdunmire@parkwestpartners.com

Nino Abate, Esq
**Law Offices Of Nino Abate, PLC**
300 W. Clarendon Ave., Suite 130
Phoenix, Arizona 85013
Telephone: (480) 314-3304
nino@abatelaw.com

By: *Virginia Olivas-Snyder*